## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BARBARA PIPER, as Executrix of the<br>Estate of MICHAEL PIPER, Deceased,<br>on behalf of herself and all others similarly<br>situated, et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-00021-NJR |
| | ) | |
| BAYER CROPSCIENCE LP, BAYER<br>CROPSCIENCE INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JOHN C. SWANSON, individually and on<br>behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:21-cv-00046-NJR |
| | ) | |
| BAYER CROPSCIENCE LP, BAYER<br>CROPSCIENCE INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| CHARLES LEX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:21-cv-000122-NJR |
| | ) | |
| BAYER CROPSCIENCE LP, BAYER<br>CROPSCIENCE INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JONES PLANTING CO. III, on behalf of<br>itself and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 3:21-cv-000173-GCS |

BAYER CROPSCIENCE LP, BAYER          )
CROPSCIENCE INC., et al.             )
                                     )
        Defendants.                  )
                                     )
_____)
                                     )
JASON J. CANJAR D/B/A YEDINAK        )
REGISTERED HOLSTEINS, on behalf of   )
himself and all others similarly situated,  )
                                     )
        Plaintiff,                   )
v.                                   )          Case No. 3:21-cv-000181-NJR
                                     )
BAYER CROPSCIENCE LP, BAYER          )
CROPSCIENCE INC., et al.             )
                                     )
        Defendants.                  )
_____)

---

## BAYER CROPSCIENCE DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

---

Defendants Bayer CropScience Inc. and Bayer CropScience LP (collectively the "Bayer CropScience Defendants") move to transfer the above-captioned cases to the United States District Court for the Eastern District of Missouri, Eastern Division ("Eastern District of Missouri"), pursuant to 28 U.S.C. § 1404(a).  Each named Plaintiff's antitrust claims are governed by a Technology/Stewardship Agreement ("TSA") that granted each of them a limited license to use seed containing Bayer CropScience's patented seed technology.[1]  None of them could have purchased seed containing such technology, regardless of brand, manufacturer, distributor, or retailer, without entering into a TSA.  The TSA requires that "all claims and disputes arising out of and/or connected in any way with this Agreement and the use of the seed or the [Bayer CropScience] technologies" be brought in the Eastern District of Missouri.

"The 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'"  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,  33 (Kennedy, J., concurring)).  Thus, the United States Supreme Court has held that "a proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases."  *Atl. Marine*, 571 U.S. at 59-60 (internal quotations omitted).  The forum-selection clause here is entitled to controlling weight.  It is unquestionably valid, and applies to Plaintiffs' claims.  *See infra* Part I.  And, as discussed *infra* Part II, there are no "extraordinary circumstances" that would justify not giving it full effect; nor can Plaintiffs – who bear the burden – show otherwise.  Finally, the joinder of defendants not subject to the forum-selection clause does not weigh against transfer; rather, the balance of interests at issue, and in particular judicial efficiency, support transfer of the cases in their entirety to the Eastern District of Missouri.  *See infra* Part III.  Nor is there

---

[1]  The direct Bayer party to the TSAs is either Bayer CropScience LP or its affiliate, Monsanto Company.

anything unjust about that result; after all, if Plaintiffs had joined all the same defendants, but complied with their own contractual obligations with respect to venue, the result would be the same as transferring the entire case.

## BACKGROUND

### *The Plaintiffs and Plaintiffs' Allegations*

Plaintiff Barbara Piper brings this case as executrix of her husband Michael Piper's estate.   Barbara Piper is, and Michael Piper was, a citizen of the State of Illinois and a resident of Jefferson County, Illinois.  Consol. Class Action Compl. ("CAC"), ¶ 16.  The remaining Plaintiffs are from all over the country.  The other individual Plaintiffs, John C. Swanson, Charles Lex, and Jason J. Canjar, are citizens of New York, Iowa, and Pennsylvania, respectively.  *Id.*, ¶¶ 17, 18, 21.  Plaintiff Schofields Farms, LLC is a New York corporation with its principal place of business in New York.  *Id.*, ¶ 19.  Plaintiff Jones Planting Co. III is a Mississippi company, with its principal place of business in Mississippi.  *Id.*, ¶ 20.

Plaintiffs allege that fifteen defendants – agriculture manufacturers, wholesalers, and retailers – entered into an anti-competitive conspiracy to stage a group boycott against certain electronic platforms selling Crop Inputs, defined as "seeds and crop protection chemicals (*id.*, ¶ 1), in order to maintain supra-competitive prices (*id.*, ¶¶ 3, 6).  Plaintiffs seek to represent a nationwide class of purchasers who bought Crop Inputs manufactured by four defendants, namely, Bayer CropScience, LP, Corteva Inc., Syngenta Corp., and BASF Corp., from any defendant or any non-defendant retailer.  *Id.*, ¶¶ 2, 98; *see also id.*, ¶¶ 42, 43 (alleging the relevant product market as the Crop Input markets (manufacturing, wholesale and retail sales) and the relevant geographic market as the United States).[2]  Plaintiffs complain that farming has

---

[2] Paragraph 2 of the CAC actually mistakenly alleges that Bayer CropScience Inc. is a Manufacturer Defendant.  As stated below, Bayer CropScience Inc. is not engaged in any commercial business.

become less profitable over time as increases in seed prices have outpaced increases in crop yields. *Id.*, ¶ 4.

### *The Bayer CropScience Defendants*

Bayer CropScience, LP is a limited partnership formed in Delaware with its principal place of business in St. Louis County, Missouri. Ex. A, Decl. of K. Abrams, ¶ 3.[3] Bayer CropScience LP is engaged in the business of producing, distributing, and selling agricultural biotechnology, seed, agricultural chemicals, and other agricultural products. *Id.*, ¶ 4.

Bayer CropScience Inc. is a New York corporation with its principal place of business in St. Louis, Missouri. *Id.*, ¶ 8. Bayer CropScience Inc. is not engaged in any commercial business. *Id.*, ¶ 9. It does not hold any patented biotechnologies, or manufacture, distribute, or sell seeds, crop protection chemistry, or any other crop inputs. *Id.*, ¶¶ 10, 11.

Both Bayer CropScience Defendants are wholly owned, indirect subsidiaries of Bayer AG and affiliates of Monsanto Company. *Id.*, ¶¶ 14, 15. Monsanto Company has contributed assets of its commercial facing agricultural organization to Bayer CropScience LP, including Technology / Stewardship Agreements entered into by Monsanto Company. *Id.*, ¶¶ 16, 30. Monsanto Company and Bayer CropScience Inc. are both limited partners in Bayer CropScience LP. *Id.*, ¶ 17.

Bayer CropScience LP and its affiliates have developed germplasm, i.e., seed. *Id.*, ¶ 5. They have also developed biotechnology, in the form of plant "traits," that involves genetic modification of seeds to make them resistant to certain herbicides and/or pests. *Id.*, ¶ 6. Both the germplasm and the seed biotechnology (collectively, the "Monsanto/Bayer CropScience Technology"), are protected under patents issued by the United States Patent and Trademark

---

[3] The Court may consider the complaint and additional documents submitted by the parties in addressing a transfer motion. *Kadiyala v. Pupke*, No. 16 C 3549, 2017 WL 2350454, at *1 (N.D. Ill. May 30, 2017).

Office.  *Id.*, ¶¶ 19, 20.  Bayer CropScience markets and sells seeds – which combine its germplasm and selected traits – under its own brand names to farmers; it also licenses both its germplasm and traits to seed producers (including other manufacturer defendants) who use them in their own seed, which they then distribute or sell.  *Id.*, ¶ 22.  With respect to the traits, other seed producers may insert the patented genetic traits into their own germplasm, and then then sell it to growers.  *Id.*, ¶ 24.  For instance, Corteva might sell its own corn seed that includes the Bayer CropScience VT Double Pro® trait, which protects against insects.  Seed containing Monsanto/Bayer CropScience Technology – both Bayer CropScience brands and other brands – are available for purchase through approved distributors (including the retailer defendants).  *Id.*, ¶¶ 25-26.  All farmers who plant seed containing Monsanto / Bayer CropScience Technology, whatever the brand and whoever the retailer, are subject to a limited use license and must execute one to be allowed to purchase the seed.  *Id.*, ¶ 20.  That license, typically referred to as a TSA, covers all of Bayer CropScience's patented germplasm and biotechnologies.[4]  *Id.*, ¶ 21.

### *The Non-Bayer Defendants*

The remaining defendants are Corteva, Inc., Cargill Inc., BASF Corp., Syngenta Corp., Pioneer Hi-Bred International, Inc., Winfield Solutions, LLC, Univar Solutions, Inc., Federated Co-operatives Ltd., CHS, Inc., Nutrien Ag Solutions, Inc., Growmark Inc., Simplot AB Retail Sub, Inc., and Tenkoz, Inc. (collectively, the "Non-Bayer Defendants").  As agricultural manufacturers, wholesalers, and retailers, all or nearly all distribute and/or sells seed containing Monsanto / Bayer CropScience Technology, including in many cases Bayer CropScience brands. The Non-Bayer Defendants are headquartered and incorporated in multiple different states and judicial districts.  *See* CAC, ¶¶ 26-39.  Plaintiffs do not allege that any are headquartered in this

---

[4] Federal courts have long upheld use of a limited use license to sell Monsanto/Bayer CropScience Technology.  *See Monsanto Co. v. Bowman*, 657 F.3d 1341 (Fed. Cir. 2011), *aff'd*, 569 U.S. 278 (2013).

District.  In fact, none are.[5]

## *The Forum-Selection Clause*

Each of the named Plaintiffs entered into a TSA with a forum-selection clause.  Mr. Piper entered into a TSA with Monsanto Company to become a licensed farmer in 2009.[6]  Ex. A, ¶ 40 & Att. 12.  Mr. Swanson entered into his TSA in 2001 and Mr. Canjar in 2014.  *Id.*, ¶¶ 32, 42 & Atts. 2 & 14.  Mr. Lex entered his first TSA in July 1998 and signed a new one again last year in September 2020.  *Id.*, ¶ 31 & Att. 1.  Schofield Farms, LLC entered into a TSA with Monsanto Company in 2012 and in 2018 and Jones Planting Co. III did the same in 2010.  *Id.*, ¶¶ 35, 36, 39 & Att. 5, 6, 8, 9, 10, 11; *see also id.*, ¶ 37.[7]

Each of the TSAs includes a materially identical forum-selection clause, appearing in capital letters, with a bolded title indicating that it addresses "**Forum Selection**."  *E.g.*, Ex. B, ¶ 4(d).  The clause provides:

> THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO), FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES … . THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS MONSANTO AND ANY CURRENT OR FUTURE US-BASED WHOLLY-OWNED SUBSIDIARIES OR AFFILIATES OF MONSANTO.

---

[5] Two defendants are headquartered in Illinois, but neither in the Southern District.  Growmark Inc.'s principal place of business is in the Central District of Illinois (https://www.growmark.com/about-us/contact) and Univar's is in the Northern District of Illinois (https://www.univarsolutions.com/contact-us/).

[6] Because Ms. Piper sues as executrix of Mr. Piper's estate, she "'steps into the shoes' of the deceased" and the forum-selection clause in Mr. Piper's TSA applies.  *Vogler v. N. Chicago Refiners & Smelters, Inc.*, No. 95 C 6414, 1997 WL 163999, at *3 (N.D. Ill. Mar. 27, 1997) (applying principle to exhaustion of claims); *see also Burns v. Wilderness Ventures, Inc.*, No. 12 C 4188, 2012 WL 3779069, at *4 (N.D. Ill. Aug. 30, 2012) (applying forum-selection clause signed by deceased and her guardian against executor of estate).  In any case, Ms. Piper also entered into TSAs, one in 2010 and the other in 2019 containing identical or virtually identical forum-selection clauses.

[7] True and correct copies of Plaintiffs' and Mr. Piper's TSAs are attachments to Exhibit A.

*Id.*[8]

# ARGUMENT

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  A defendant properly enforces a forum-selection clause by moving to transfer under § 1404(a).  *Atl. Marine*, 571 U.S. at 52.[9]  A district court deciding such a motion "should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer," with the plaintiff bearing the burden.  *Id.*

Plaintiffs each entered into a valid forum-selection clause with a Bayer CropScience affiliate that requires transfer to the Eastern District of Missouri.  They cannot meet their burden to show that extraordinary circumstances warrant disregarding that forum-selection clause.  Because this case also includes claims against the Non-Bayer Defendants, non-signatories to the forum-selection clause, the Court must additionally decide whether to transfer the entire cases or sever the claims against Bayer CropScience and transfer only those.  Because the relevant private interests, i.e., the interests of the Non-Bayer Defendants, as well as the public interests all strongly weigh in favor of trying Plaintiffs' claims together in the Eastern District of Missouri, the Court should transfer the cases in their entirety.

## I. The Forum-Selection Clause Is Valid And Applies To Plaintiffs' Claims Against Bayer CropScience.

The TSA's forum-selection clause contains all the hallmarks of validity and has, in fact,

---

[8] This memorandum quotes from the 2019 version of the TSA.  The language providing for exclusive venue in the Eastern of District of Missouri in versions from others years is materially identical.  *See* Ex. A, Att. 1-14.

[9] The *Atlantic Marine* analysis applies where, as here, a forum-selection clause designates both a state and a federal court as a proper forum.  Indeed, *Atlantic Marine* involved such a clause.  571 U.S. at 53.

been repeatedly upheld as valid by federal courts.  Its language is expansive, requiring that any claims related to seed containing the Monsanto/Bayer CropScience Technology be brought in the Eastern District of Missouri.

**A.      The Forum-Selection Clause In The TSA Is Valid.**

Here, the validity and enforceability of the forum-selection clause in the TSA is well-settled.  Courts, including the Southern District of Illinois, have routinely enforced the TSA's choice of forum.  *See, e.g.*, *Blades v. Monsanto Co.*, No. 00-cv-4034, 2001 WL 775980, *2-4 (S.D. Ill. Jan. 3, 2001) (finding the forum-selection clause in the TSA valid and enforceable and transferring to the U.S. District Court for the Eastern District of Missouri).[10]  In doing so, they have rejected arguments that the TSA is a contract of adhesion, focusing instead on the legibility and conspicuousness of the forum-selection clause in a short document.  *See, e.g.*, *id.* at *3-4. Plaintiffs and Mr. Piper each voluntarily entered into a TSA for the benefit of having the ability to buy and use seed containing Monsanto /Bayer CropScience Technology.  In doing so, each one submitted to "sole and exclusive … venue" in St. Louis, Missouri (Ex. B, ¶ 4(d)), and thus "agree[d] that the specified jurisdiction is the ***only*** proper venue for a dispute."  *Galaxy Prods. & Servs., Inc. v. AMI Ent'mt Network, Inc.*, No. 12-cv-0595-MJR, 2012 WL 13034901, at *2 (S.D. Ill. Dec. 11, 2012).  The Court should enforce their agreements.

The long line of cases enforcing the TSA follows directly from the strong presumption of the enforceability of forum-selection clauses.  *See M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972); *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006).[11]

---

[10] *See also, e.g.*, *Monsanto Co. v. McFarling*, 302 F.3d 1291, 1294-96 (Fed. Cir. 2002).

[11] In a case like this one asserting jurisdiction under both 28 U.S.C. §§ 1331 and 1332, federal law governs the enforceability of forum-selection clauses.  *Hurford Global, LLC v. ROM Techs., Inc.*, No. 20-cv-484-JPG, 2020 WL 6487514, at *3 (S.D. Ill. Nov. 4, 2020).  Regardless, to the extent that state law could govern instead, Missouri law, as provided for by the TSA's choice-of-law provision, would apply,

"'[T]o overcome this presumption," the party arguing against the validity of a forum-selection clause "must show that the clause is unreasonable under the circumstances," and may do so only in a narrow and defined set of conditions, none of which apply here. *Ayyash v. Horizon Freight Sys., Inc.*, No. 15-cv-10296, 2018 WL 5994755, at *3 (N.D. Ill. Nov. 15, 2018) (citing *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993)).[12] Indeed, a forum-selection clause must be upheld "even if the contract was never negotiated and in effect was dictated by one party to the other party." *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 900 (S.D. Ill. 2012) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991)); *accord Feather v. SSM Health Care*, 216 F. Supp. 3d 934, 941 (S.D. Ill. 2016).

### B.    The Forum-Selection Clause Applies To Both Bayer CropScience Defendants.

Plaintiffs and Mr. Piper signed the TSAs as part of securing a limited use license from Monsanto Company. Each TSA's contractual choice of forum applies not only to Monsanto Company, but also to corporate affiliates like the Bayer CropScience Defendants. For example, in Mr. Lex's TSA, he "specifically agreed[d] that this section covers Monsanto and any current or future U.S.-based wholly owned subsidiaries or affiliate of Monsanto." Ex. B, ¶ 4(d). Regardless, even where a forum-selection clause is not express on this point, it applies equally to corporate affiliates. As the Seventh Circuit has recognized, "[a] forum selection clause with a company would be worth little if it could be avoided by merely pursuing the company's affiliates." *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 652 (7th Cir. 2014); *see*

---

and mirrors the federal presumption in favor of enforceability. *See Feather v. SSM Health Care*, 210 F. Supp. 3d 934, 938-39 (S.D. Ill. 2016); *see also*, Ex. B, ¶ 3(g).

[12] A forum-selection clause is unreasonable only if it is "the result of fraud, undue influence, or overwhelming bargaining power, if the selected forum is so gravely inconvenient that the opposing party will be deprived of its day in court, or if enforcement of the clause contravenes a strong public policy of the forum." *Ayyash*, 2018 WL 5994755, at *3 (citing *Bonny*, 3 F.3d at 160). "The enforcement of forum selection clauses offends no public policy of Illinois." *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 902-03 (S.D. Ill. 2012) (collecting cases).

*also Hurford*, 2020 WL 6487514, at *6 ("[a] party cannot defeat a forum selection by 'suing an affiliate or affiliates of the party to the contract in which the clause appears" (internal quotations omitted); *cf. McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1306 (M.D. Ga. 2003) (applying forum-selection clause in the TSA to a Monsanto successor by merger).[13]

## C. The TSA's Forum-Selection Clause Applies To Plaintiffs' Claims.

The expansive and strongly worded forum-selection clause here applies to "***all*** claims and disputes arising out of or ***connected in any way*** with [the TSA] and/or the use of the seed or the Monsanto technologies." Ex. B, ¶ 4(d) (emphasis added). Federal district courts have interpreted this very language to apply to antitrust claims brought against Bayer CropScience. *See, e.g.*, *Pullen Seeds & Soil v. Monsanto Co.*, No. 06-cv-599, 2007 WL 2071752, at *1 (D. Del. July 18, 2007) (relying on language "connected in any way" to transfer claims alleging "a comprehensive anticompetitive scheme"); *see also Blades*, 2001 WL 775980, at *2-4 (applying TSA's forum-selection clause to antitrust claims); *Massey*, 2000 WL 1146705, at *1-2 (same). Indeed, courts have routinely applied even narrower forum-selection clauses to allegations of price-fixing. *See, e.g.*, *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 857-58 (D. Md. 2013); *CVS Pharm., Inc. v. AstraZeneca Pharms. LP*, No. 19-cv-9999, 2020 WL 4671659, at *3, 7 (S.D.N.Y. Aug. 12, 2020); *Valspar Corp. v. EI DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 933-34 (D. Minn. 2014) (rejecting argument that alleged price-fixing conspiracy was not covered by forum-selection clause because, despite plaintiff "not challeng[ing] the moving Defendants' performance under the agreements" and claim not requiring contract interpretation, clause applied to "transactions contemplated" by agreement). Here, none of the Plaintiffs could

---

[13] Here, the case for enforcing the forum-selection clause is even stronger because the relationship between Monsanto Company and Bayer CropScience LP is closer than simply affiliates. Monsanto Company is a limited partner in Bayer CropScience LP who contributed assets of its commercial facing agricultural organization to Bayer CropScience LP, including the TSAs themselves. Ex. A, ¶¶ 16, 17, 30.

have purchased any seed containing Monsanto/Bayer CropScience Technology, regardless of the manufacturer, distributor, or retailer, without entering into a TSA.  Ex. A, ¶ 20.  Thus, their claims that these very same products were the subject of an alleged price-fixing conspiracy are clearly "connected" to the TSA.  Ex. B, ¶ 4(d).

Plaintiffs' specific allegations only further compel this conclusion.  They allege purchasing soy and corn seed, as well as chemistries specifically designed to be used with Bayer CropScience traited seed.  *See* CAC, ¶¶ 16-21.  For example, Jones Planting Co. III alleges purchasing Engenia, a dicamba herbicide specifically designed for use with the Bayer CropScience Xtend® trait.  *See* CAC, ¶ 20; *see also* Ex. A, ¶ 7.  Plaintiffs additionally allege they suffered antitrust injury as a result of anticompetitive conduct relating to ***all*** Crop Inputs, including seed produced by multiple different manufacturers and sold by multiple retailers that contained Monsanto /Bayer CropScience Technology.  *See* CAC, ¶¶ 96-97.

Plaintiffs, moreover, specifically challenge Bayer CropScience's distribution and licensing practices – e.g., authorized retailers, confidentiality provisions, seed relabeling, and audit /inspection rights – as part of an alleged conspiracy.  *See id.*, ¶¶ 49-52, 69.  Indeed, the CAC directly or indirectly implicates the TSA itself in at least two respects.  First, Plaintiffs allege that Bayer CropScience LP entered into a distribution network with the Wholesaler and Retailer Defendants, all of which are Non-Bayer Defendants, to effectuate the alleged conspiracy.[14]  Yet, this very distribution network that Plaintiffs now attack was agreed to by each

---

[14] *See, e.g.*, *id.*, ¶ 49 ("To maintain that secrecy, Manufacturer Defendants allow only wholesalers, including the Wholesaler Defendants, retailers the manufacturers own or operate, and retailers such as the Retailer Defendants that are licensed 'authorized retailers' to sell the Manufacturer Defendants' Crop Inputs."); ¶ 69 ("Bayer … include[d] mandatory language in their form contracts with authorized retailers that allows them to audit authorized retailers' books and records and … used these provisions to ensure that electronic platforms could not secure branded Crop Inputs by buying from an authorized retailer."); *see also In re Crop Inputs Antitrust Litig.*, Case Pending No. 11, Doc. 1, at p. 2 n.5 ("Plaintiffs in the

and every one of them in the TSA, in which they agreed to acquire seed containing

Monsanto/Bayer CropScience Technology only from authorized seed companies with

technology license, or from a Bayer CropScience authorized dealer. *See, e.g.*, Ex. B, ¶ 1(a).

Second, Plaintiffs allege that the Manufacturer Defendants engage in "seed relabeling," which

they describe as "the practice of taking seeds that have been on the market under a given brand

name for some time and repacking the seeds under a new brand name," e.g., Nutrien selling

Bayer CropScience germplasm under a Nutrien brand name. CAC, ¶ 51. The TSA expressly

subjects any such sale by Nutrien (implicating this alleged anticompetitive practice) to the

forum-selection clause at issue. Plaintiffs' allegations are thus indisputably "connected in

[some] way with … the Monsanto technologies" (Ex. B, ¶ 4(d)), and their claims may be

asserted only in the Eastern District of Missouri. *See Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d

1066, 1070 (11th Cir. 1987), *aff'd and remanded*, 487 U.S. 22 (1988) (forum-selection clause –

which covered "any controversy arising under or in connection with this Agreement" – was

broad enough to warrant transfer of all claims, including antitrust claims).

## II.      Plaintiffs Cannot Meet Their Heavy Burden to Show that Extraordinary Circumstances Justify Disregarding the Valid Forum-Selection Clause.

When a § 1404(a) analysis does not implicate a forum-selection clause, the district court

must weigh both private and public interests to "decide whether, on balance, a transfer would

serve 'the convenience of parties and witnesses,'" i.e., the private interests, "and otherwise

promote 'the interest of justice,'" i.e., the public interests. *Atl. Marine*, 571 U.S. at 62-63.

"When the parties have agreed to a valid forum-selection clause," however, the United States

Supreme Court has instructed that the court should deny a motion to transfer to the agreed forum

"[o]nly under extraordinary circumstances unrelated to the convenience of the parties." *Id.* at 62.

---

related actions allege that the Defendants use contractual agreement between manufacturers, wholesalers, and retailers to prevent farmers from receiving accurate pricing and performance information.").

This heavy presumption in favor of transferring pursuant to valid forum-selection clause supplants the typical analysis in two ways.

First, in deciding a motion to transfer based on a forum-selection clause, "the plaintiff's choice of forum merits no weight." *Id.* at 63; *see also Feather*, 216 F. Supp. 3d at 943. This turns the typical burden on its head. Rather than a defendant needing to show why transfer is warranted, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Atl. Marine*, 571 U.S. at 63; *accord Feather*, 216 F. Supp. 3d at 939, 943.

Second, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Atl. Marine*, 571 U.S. at 64. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64-65 (reversing trial and appellate courts because they "erred in giving weight to arguments about the parties' private interests").

In deciding whether to transfer claims against Bayer CropScience, therefore, "[o]nly public interests matter." *Feather*, 216 F. Supp. 3d at 943; *accord Atl. Marine*, 571 U.S. at 63-66; *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018); *Hurford*, 2020 WL 6487514, at *4. These factors include: "[1] the administrative difficulties flowing from court congestion; [2] the local interest in having localized controversies decided at home; and [3] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 65, 62 n.6 (alteration and internal quotation marks omitted); *see also Research*

*Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).  These public interest "factors are rarely strong enough to override the parties' preselected forum" because "[i]n all but the most unusual cases … 'the interest of justice' is served by holding parties to their bargain."  *Atl. Marine*, 571 U.S. at 66.

Here, "[a]s the party acting in violation of the forum-selection clause," Plaintiffs cannot come close to meeting their "burden of showing that public-interest factors overwhelmingly disfavor a transfer."  *Id.* at 67.  Indeed, two of the factors weigh definitively in favor of transfer, and none points the other way.  Thus, no "extraordinary circumstances" could possibly overcome the "controlling weight" that should be given the parties' agreed-to forum, and the Court should transfer to the Eastern District of Missouri under 28 U.S.C. § 1404(a).

## A.    Transfer Eases Administrative Difficulties Flowing From Court Congestion.

"To the extent that court congestion matters, what is important is the speed with which a case can come to trial and be resolved."  *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007).  Here, a speedier trial is available in the Eastern District of Missouri.  The median time from filing to disposition in the Southern District of Illinois is 13.3 months for civil cases.  *See Sept. 2020 U.S. District Courts – Nat'l Jud. Caseload Profile*, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf, at 49.  Just under 12% of civil cases in this District are at least 3 years old.  *Id.*  In the Eastern District of Missouri, on the other hand, the median time from filing to disposition in civil cases is 5.5 months, and only 4.1% of civil cases are at least 3 years old.  *Id.* at 59.  Thus, rather than provide a compelling public interest to retain the case, issues of court congestion favor transfer.

## B.    Missouri And Illinois Both Have A Local Interest in Deciding The Controversy, But Missouri's Interest is Stronger.

The Bayer CropScience Defendants have their principal places of business in the Eastern

District of Missouri, creating a local interest in having this controversy decided there. *See* Ex. A, ¶¶ 3, 8. While Illinois also has an interest in resolving the dispute of its residents, here only one of the Plaintiffs is an Illinois resident. The other five named Plaintiffs are all citizens of other states. This already attenuated interest of Illinois is even weaker, because all Plaintiffs seek to represent not only themselves, but a putative nationwide class. In a putative nationwide class action, not only is the local interest of the plaintiff's home forum lessened, but the local interest of the forum where the defendant is located is "presumably stronger." *Smith v. British Airways PLC*, No. C07-1370, 2008 WL 11343651, at *3 (W.D. Wash. June 10, 2008).

Moreover, Plaintiffs do not allege that the conspiracy was centralized in the Southern District of Illinois. Indeed, ***none*** of the defendants is headquartered in this judicial district, and none of the manufacturer defendants – whose pricing and distribution polices are challenged – is headquartered in Illinois. *See Knightsbridge Mgmt. v. Zurich Am. Ins. Co.*, No. 3:20-cv-01165-GCS (S.D. Ill. Feb. 11, 2021), slip op. at 12 (transferring case from Southern District because even though some "key events occurred in the State of Illinois, they occurred in the Northern District of Illinois, not this judicial district"). To the extent Plaintiffs allege the location of any conduct by any of the defendants at all, their allegations make clear that some of the alleged conduct at issue would have taken place in the Eastern District of Missouri, such as Bayer's supposedly secret internal task force and the insertion of audit and inspection rights in Bayer's retailer contracts. *See* CAC, ¶¶ 49-52, 58, 69; *see also* Ex. A, ¶ 27.

In short, any absent class members here would be from all over the country, just as Plaintiffs are from all over the country, defendants are from all over the country, and the products at issue were purchased all over the country. *See* Compl., ¶¶ 16-21, 23-39, 43, 98. But, at least some of the alleged acts underlying the alleged conspiracy took place in the Eastern

District of Missouri, whereas none occurred in the Southern District of Illinois. *See id.*, ¶¶ 49-52, 58, 69. This public interest factor, therefore, weighs in favor of transfer.

### C. Both Courts Are Familiar With The Relevant Law.

Plaintiffs' claims are primarily based on federal antitrust law, placing all federal courts in a similar position to apply the law. To the extent that their claims are secondarily based on the antitrust laws of 25 different states, just one of which is Illinois, "federal judges routinely apply the law of a State other than the State in which they sit" and will be presumed to be familiar with other states' laws. *Atl. Marine*, 571 U.S. at 67. Moreover, the TSA's choice-of-law provision likely requires Plaintiffs to assert any state law antitrust claim under Missouri law in any case. Ex. B, ¶ 3(g).

Because two of the public interest factors weigh in favor of transfer and the other is neutral, and further because the Court "must deem the private-interest factors to weigh entirely in favor of the" Eastern District of Missouri, this case does not present the sort of "extraordinary" and "rare[]" exception that would allow disregarding the forum-selection clause. *Atl. Marine*, 571 U.S. at 64-65.

### III. The Court Should Transfer Each Of The Cases In Its Entirety.

Federal district courts within the Seventh Circuit have applied *Atlantic Marine* and transferred entire cases based on forum-selection clauses that applied only to some defendants, but not others, in the interest of judicial efficiency. And, a framework adopted by the Third Circuit in such situations similarly weighs in favor of transferring these cases in their entirety.

### A. The Public Interest In Judicial Efficiency Compels Transfer Of The Entire Case.

Where a forum-selection clause applies only to some defendants, a court should first apply the *Atlantic Marine* analysis to all defendants to whom it applies. As set forth in Part II, *supra*, this analysis requires transfer. The court should then take into account "both the public

and private interest factors to determine whether to transfer all of [the plaintiff's] claims, keep them all …, or sever his claims" and transfer only the severed claims. *Kadiyala v. Pupke*, No. 16 C 3549, 2017 WL 2350454, at *7 (N.D. Ill. May 30, 2017).

The Northern District of Illinois, in applying the second step in *Kadiyala*, recognized that traditional private interest factors have less weight "[i]n this day and age" where documents are mostly virtual, not physical. *Id.* (internal quotation marks omitted). The public interests, in contrast, are especially weighty in multi-defendant cases because "[j]udicial economy favors resolving the controversy in one district as opposed to severing the claims and having two parallel litigations." *Id.* Thus, where both the potential transferor and transferee courts are familiar with the law and each has an interest in the litigation, the public interest inquiry should hinge on "[j]udicial efficiency." *Id.* Indeed, Plaintiffs themselves allege a desire to try all "their common claims in a single forum simultaneously" to promote "efficient adjudication of the controversy." CAC, ¶ 105. Applying that analysis here, "in light of the forum selection clauses between [Plaintiffs and Bayer CropScience] and the desire to efficiently resolve this dispute, … it [is] appropriate to transfer the entire case." *Kadiyala*, 2017 WL 2350454, at *8.[15]

The court's decision in *Kadiyala* aligns with other decisions from Illinois federal district courts recognizing that unnecessarily dividing a "controversy between forums" would "waste judicial resources." *Campbell v. Bayerische Hypo- und Vereinsbank AG*, No. 05 C 6930, 2006 WL 8460651, at *6 (N.D. Ill. June 13, 2006). Keeping all related claims together, in contrast, promotes "efficiency and comports with common sense." *Id.* Courts around the country have held likewise. *See, e.g.*, *CVS Pharm.*, 2020 WL 4671659, at *9 (holding that judicial efficiency warranted transferring antitrust claims against all allegedly conspiring defendants to agreed-to

---

[15] The public interest in transfer is actually stronger here than in *Kadiyala* due to court congestion issues. *See supra* Part II.

forum where forum-selection clause only applied to one defendant ); *cf. Spy Phone Labs LLC v. Google, Inc.*, No. 14-cv-6565, 2015 WL 4773159, at *4 (D.N.J. Aug. 13, 2015) (transferring entire action where some claims were within scope of forum-selection clause and other were not because considerations of judicial economy weighed in favoring of trying all claims together).

Transferring the entire case in a multi-defendant context comports with fairness and common sense.  After all, if a plaintiff had joined all the same defendants, but complied with his own contractual obligations with respect to venue, the result would be the same as transferring the entire case:

> [Plaintiff] cannot escape his resulting contractual obligations under the forum clause simply because he happened to join additional parties who did not sign that contract.  In other words, the point is not … that they did not agree to the contract and should not be bound by it.  Rather, he ***did*** agree to it and ***is*** bound to it for ***his*** suit naming World as a defendant.

*Friedman v. World Transp., Inc.*, 636 F. Supp. 685, 691 (N.D. Ill. 1986).  The *Friedman* court thus rejected the plaintiff's attempt to resist the forum-selection clause because it would bind non-parties; such an argument "ring[s] hollow" where none of the non-contracting defendants "have objected to the proposed transfer."  *Id.*; *see also Brava Salon Specialists, LLC v. Label.M USA, Inc.*, No. 15-cv-631, 2016 WL 632649, at *3 (W.D. Wis. Feb. 17, 2016) (holding that although the forum was only agreed to between plaintiff and one of the defendants, "no party asks the court to sever this case" and "it makes sense to keep all of the claims together").  None of the Non-Bayer Defendants object to transfer.  Plaintiffs, therefore, should not be permitted to challenge the only result that both comports with the forum-selection clause and promotes judicial efficiency, which they purport to advocate.

**B.     A More Complete Consideration Of The Relevant Private Interests Likewise Supports Transferring The Cases In Their Entirety.**

The Third Circuit has created a "framework to determine how forum-selection clauses

affect the § 1404(a) transfer analysis where both contracting and non-contracting parties are found in the same case and where the non-contracting parties' private interests run headlong into the presumption of *Atlantic Marine*." *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 403 (3d Cir. 2017). Like the cases cited above, the framework focuses on giving effect to forum-selection clauses, but engages in a more complete analysis of the non-contracting defendants' private interests in addition to a focus on judicial efficiency.

*Howmedica* instructs the court to consider, in sequence, "(1) the forum-selection clauses, (2) the private and public interests relevant to non-contracting parties, (3) threshold issues related to severance, and (4) which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests." *Id.* at 403-04.[16] "[I]f the Step One and Step Two analyses point different ways, then the court considers severance" in accordance with steps three and four. *Id.* at 403. But, if after applying steps 1 and 2 there is no conflict between the non-contracting parties' private interests respecting transfer and *Atlantic Marine*'s presumption in favor of transfer, then the court need not reach steps 3 and 4. That is precisely the case here. In any case, steps 3 and 4 likewise favor transfer.

### 1. Steps 1 And 2 Both Favor Transfer, Requiring Transfer Of The Entire Case.

Step one in the *Howmedica* analysis "assumes that *Atlantic Marine* applies to parties who agreed to forum-selection clauses" barring extraordinary circumstances. 867 F.3d at 404. Here, no compelling reason exists to depart from the strong interest in enforcing valid forum-selection clauses. *See supra*, Part II. If "an independent analysis of private and public interests relevant to

---

[16] The Fifth Circuit had adopted a similar framework. *See In re Rolls Royce Corp.*, 775 F.3d 671, 674, 681 (5th Cir. 2014) (prescribing a three-step framework: (1) *Atlantic Marine* analysis for contracting parties; (2) consideration of "the private factors of the parties who have ***not*** signed a forum selection agreement as [the court] would under a Rule 21 severance and § 1404 transfer analysis"; (3) evaluation of "whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit"). This brief cites the *Howmedica* factors, but as a practical matter, applying the slightly different Fifth Circuit analysis would produce the same result.

non-contracting parties … point[s] to the same forum," "then the court should allow the case to proceed in that forum." *Howmedica*, 867 F.3d at 404 ("the transfer inquiry ends there"). Here, the private interest of the Non-Bayer Defendants – the only "non-contracting parties" – is in the judicial efficiency that will result from transfer to the Eastern District of Missouri. *Id.* at 403-04. This should end the analysis. But, even if any potentially conflicting private interest factors existed, they would be mitigated by the close proximity of the transferor and transferee courts here. *See Oneyeho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 6 (D.D.C. 2006) (finding that the convenience of the parties was not greatly affected by transfer where the courts at issue were in Maryland and the District of Columbia). Moreover, the Eastern District of Missouri is at least as convenient as the Southern District of Illinois from the perspective of parties and witnesses because, owing to the Bayer CropScience Defendants' presence, likely witnesses and relevant documents are located there. No defendant, on the other hand, is located in the Southern District of Illinois.[17] Because steps one and two here lead to the same forum – the Eastern District of Missouri – the Court should look no further, and transfer these cases in their entirety under § 1404(a).

### 2. No Procedural Or Jurisdictional Issues Prevent Transfer Of The Entire Case, Making Transfer Proper Under Steps 3 and 4 of the *Howmedica* Framework.

Even if the Court reached steps three and four of the *Howmedica* framework, transfer would still be the appropriate result. Step three considers whether severance "will be warranted to preserve federal diversity jurisdiction; to cure personal jurisdiction, venue, or joinder defects;

---

[17] Plaintiffs' private interests do not enter the calculus. Even if they did, however, they do not alter the analysis. The courthouses here are a mere 3 miles apart. As for Plaintiffs' choice of forum, it "bears little weight … in a putative class action." *Glass v. S&M NuTec, LLC*, 456 F. Supp. 2d 498, 504 (S.D.N.Y. 2006). And, any deference to Plaintiffs' choice is further "lessened … where the plaintiff's chosen forum is not the plaintiff's forum or has relatively weak connections with the operative facts giving rise to the litigation." *Meyer v. Newmary Corp.*, No. 3:19-cv-755, 2020 WL 3256263, at *8 (N.D. Ind. June 16, 2020) (internal quotations and citations omitted).

or to allow for subsequent impleader under Federal Rule of Civil Procedure 14." *Howmedica*, 867 F.3d at 404.  Here, severance is not required to cure any procedural defects or preserve subject matter jurisdiction; jurisdiction and venue will be proper as to all parties in both potential fora.  Under step four, a court "exercises its discretion" to select the most appropriate forum, "measur[ing] its decision against two key sets of interests":  (1) "efficiency interests in avoiding duplicative litigation;" and (2) "the non-contracting parties' private interests and any prejudice that a particular transfer decision would cause with respect to those interests." *Id.* at 404-05 (internal citations and quotations omitted).  A court may "retain the case in its entirety, transfer the case in its entirety, or sever certain parties or claims in favor of another forum." *Id.* Applying steps 3 and 4 here, where the Court can advance judicial efficiency by transferring the entire case consistent with *Atlantic Marine*'s directive without raising any procedural defects, and the Non-Bayer Defendants have no strong countervailing interests, "'the same issues' should be litigated in the same forum." *Id.* at 409 (quoting *Sunbelt Corp. v. Noble, Denton, & Assocs., Inc.*, 5 F.3d 28, 33-34 (3d Cir. 1993)).

## CONCLUSION

Each and every one of Plaintiffs, along with Mr. Piper whose estate Plaintiff Piper seeks to represent, signed a TSA establishing the United States District Court for the Eastern District of Missouri as the exclusive venue for this dispute.  Under *Atlantic Marine*, this requires transfer unless they can meet their heavy burden to show "extraordinary circumstances."  They cannot. Further, because judicial efficiency, as well as the non-contracting parties' private interests, favor transfer, the Court should transfer the above-captioned cases in their entirety.

Respectfully submitted,

s/ Erick E. VanDorn
Erick E. VanDorn , #6256805
525 W. Main Street, Suite 300
Belleville, IL  62220
Phone:  (618) 277-4700
Fax:  618-236-3434
evandorn@thompsoncoburn.com

Christopher M. Hohn, #6230989
Sharon B. Rosenberg, #6287232
One US Bank Plaza
St. Louis MO 63101
Phone:  (314) 552-6000
chohn@thompsoncoburn.com
srosenberg@thompsoncoburn.com

*Attorneys for Defendants Bayer
CropScience Inc. and Bayer CropScience
LP*

OF COUNSEL
THOMPSON COBURN LLP

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2021, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will send notification of such filing(s) to all counsel of

record.

s/ Erick E. VanDorn
Erick E. VanDorn, #6256805
THOMPSON COBURN LLP
525 W. Main Street
Suite 300
Belleville, IL  62220
Phone:  (618) 277-4700
Fax:  618-236-3434
evandorn@thompsoncoburn.com