# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| BARBARA PIPER, as Executrix of the<br>Estate of MICHAEL PIPER, Deceased,<br>on behalf of herself and all others similarly<br>situated, et al. | ) )<br>) )<br>) )<br>) ) | |
| Plaintiff, | ) )<br>) ) | |
| v. | ) )<br>) ) | Case No. 3:21-cv-00021-NJR |
| BAYER CROPSCIENCE LP, BAYER<br>CROPSCIENCE INC., et al. | ) )<br>) )<br>) ) | |
| Defendants. | ) )<br>) ) | |
| _____ | ) )<br>) ) | |
| JOHN C. SWANSON, individually and on<br>behalf of all others similarly situated, | ) )<br>) )<br>) ) | |
| Plaintiff,<br>v. | ) )<br>) ) | Case No. 3:21-cv-00046-NJR |
| BAYER CROPSCIENCE LP, BAYER<br>CROPSCIENCE INC., et al. | ) )<br>) )<br>) ) | |
| Defendants. | ) )<br>) ) | |
| _____ | ) )<br>) ) | |
| CHARLES LEX, | ) )<br>) ) | |
| Plaintiff,<br>v. | ) )<br>) ) | Case No. 3:21-cv-000122-NJR |
| BAYER CROPSCIENCE LP, BAYER<br>CROPSCIENCE INC., et al. | ) )<br>) )<br>) ) | |
| Defendants. | ) )<br>) ) | |
| _____ | ) )<br>) ) | |
| JONES PLANTING CO. III, on behalf of<br>itself and all others similarly situated, | ) )<br>) )<br>) ) | |
| Plaintiff,<br>v. | ) )<br>) ) | Case No. 3:21-cv-000173-GCS |

|  |  |
|---|---|
| BAYER CROPSCIENCE LP, BAYER CROPSCIENCE INC., et al. | ) ) ) ) |
| Defendants. | ) ) ) |
| JASON J. CANJAR D/B/A YEDINAK REGISTERED HOLSTEINS, on behalf of himself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) |  Case No. 3:21-cv-000181-NJR |
| BAYER CROPSCIENCE LP, BAYER CROPSCIENCE INC., et al. | ) ) ) |
| Defendants. | ) ) ) |

### <u>DECLARATION OF KEITH R. ABRAMS</u>

I, KEITH R. ABRAMS, hereby declare as follows:

1. I am over the age 21 and if called as a witness I could and would testify competently to the matters set forth in this declaration.

2. I am an Assistant Secretary of Bayer CropScience LP.  In my position, I am familiar with the business and functions of Bayer CropScience LP, Bayer CropScience Inc., and their relationships with other related entities.  All of the statements in this Declaration are, unless otherwise indicated, based upon my personal knowledge, review of corporate and business records, and/or information provided by appropriately knowledgeable persons.  I am informed and believe that the statements contained herein are true and correct.

**Defendant Bayer CropScience LP**

3. Bayer CropScience LP is a limited partnership formed in Delaware and has its principal place of business in St. Louis County, Missouri.

1

4.   Bayer CropScience LP is the primary agricultural business entity for Bayer AG in the United States, and is engaged in the business of producing, distributing, and selling agricultural biotechnology, seeds, agricultural chemicals, and other agricultural products.

5.   Bayer CropScience LP and/or its affiliates have developed germplasm, which is the living tissue from which new plants can be grown, i.e., seed.

6.   Bayer CropScience LP and/or its affiliates have also developed biotechnology, in the form of plant "traits," that involves genetic modification of seeds to make them resistant to certain herbicides and/or pests.

7.   Other manufacturers have developed crop protection inputs that are specifically designed for use with biotechnology developed by Bayer CropScience LP and/or its affiliates.   For example, Engenia is a dicamba herbicide manufactured by BASF Corp. and/or its affiliates designed for use with the Bayer CropScience Xtend® trait.

**Defendant Bayer CropScience Inc.**

8.   Bayer CropScience Inc. is a New York corporation with its principal place of business in St. Louis County, Missouri.

9.   Bayer CropScience Inc. is not engaged in any commercial business.

10. Bayer CropScience Inc. does not hold any patented biotechnologies.

11. Bayer CropScience Inc. does not manufacture, distribute, or sell seeds, chemistry, or other crop inputs.

**Relationship Between Bayer CropScience LP and Bayer CropScience Inc.**

12. Bayer CropScience LP is a legally and factually separate legal entity, distinct from its partners, direct and indirect parent entities, direct and indirect subsidiaries and other related entities.

2

13. Bayer CropScience Inc. is a legally and factually separate legal entity, distinct from its stockholder, direct and indirect parent entities, direct and indirect subsidiaries and other related entities.

14. Bayer CropScience LP and Bayer CropScience Inc. are related through their ultimate common ownership by their indirect parent, Bayer AG.

15. Bayer CropScience LP and Bayer CropScience Inc. are both corporate affiliates of Monsanto Company.

16. Monsanto Company has contributed assets of its commercial facing agricultural organization to Bayer CropScience LP.

17. Monsanto Company and Bayer CropScience Inc. are both limited partners in Bayer CropScience LP.

**Technology / Stewardship Agreements**

18. Bayer CropScience LP and/or its affiliates protect germplasm they develop, among other ways, with Plant Variety Protection Act certificates and patents issued by the United States Patent and Trademark Office.

19. Bayer CropScience LP and/or its affiliates protect seed biotechnology they develop, among other ways, with patents issued by the United States Patent and Trademark Office.

20. Bayer CropScience LP and/or its affiliates allow end-users to purchase and plant seed containing their patented germplasm and/or their patented biotechnology (collectively, "Monsanto/Bayer CropScience Technology") only if the end-users first obtain a limited use license.

21. The limited use license to purchase and plant seed containing Monsanto/Bayer CropScience Technology is contained in what is commonly referred as a

3

Technology/Stewardship Agreement, or TSA.

22. Bayer CropScience LP produces, markets, and distributes seeds – which incorporate a combination of germplasm and selected traits developed by it and/or its affiliates – to farmers under brand names belonging to Bayer CropScience LP and/or its affiliates; Bayer CropScience LP and/or its affiliates also license both the germplasm and traits to other unaffiliated seed producers who use them in their own seed, which they then distribute or sell. With respect to the traits, other unaffiliated seed producers, pursuant to the terms of license agreements, may insert Monsanto/Bayer CropScience Technology into their own germplasm, and then sell their own branded seed to growers.

23. A limited use license, or TSA, is mandatory for a farmer's purchase of any seed containing Monsanto/Bayer CropScience Technology, regardless whether the seed is a Bayer CropScience brand or another brand, and regardless of who the seed is purchased from.

24. Bayer CropScience LP and/or its affiliates require licenses with third-party manufacturers-producers and/or their affiliates to allow them to use Monsanto/Bayer CropScience Technology in their own seed. A standard condition of these licenses is that the licensee must confirm before sale that any end-user has entered into a TSA with Bayer CropScience LP and/or its affiliates and has a corresponding license number.

25. Bayer CropScience LP and/or its affiliates require licenses with distributors and/or their affiliates to allow them to sell Bayer CropScience brand seed to end-users and/or retailers. A standard condition of these licenses is that the distributor must confirm before resale that any end-user has entered into a TSA with Bayer CropScience LP and/or its affiliates and has a corresponding license number. Another standard condition of these licenses is that the distributor sell only to retailers who independently have contracts in place with Bayer

CropScience LP and/or its affiliates.

26. Bayer CropScience LP and/or its affiliates require licenses with retailers to allow them to sell Bayer CropScience brand seed to end-users.  A standard condition of these licenses is that the retailer must confirm before sale that any end-user has entered into a TSA with Bayer CropScience LP and/or its affiliates and has a corresponding license number.

27. The epicenter of Bayer CropScience LP's distribution and license network, including its management of contracts with other manufacturers, wholesalers, and retailers, is in St. Louis County, Missouri.

28. Limited use licenses, i.e., TSAs, to purchase and plant seed containing Monsanto/Bayer CropScience Technology are presently entered into with Bayer CropScience LP.

29. Prior to 2021, TSAs were entered into with Monsanto Company.  From 2019 forward, TSAs described Monsanto Company as either a subsidiary of Bayer AG or a member of the Bayer Group.

30. In 2020, Monsanto Company contributed the TSAs entered into by Monsanto Company to Bayer CropScience LP.

**Plaintiffs' TSAs**

31. On or about July 18, 1998, and again on or about September 11, 2020, Plaintiff Charles Lex entered into a TSA with Monsanto Company.  Mr. Lex was thereafter issued a license number allowing him to purchase seed containing Monsanto/Bayer CropScience Technology.  A true and correct copy of Mr. Lex's most recent signed TSA is attached hereto as Attachment 1.

32. On or about November 11, 2013, Plaintiff Jason Canjar entered into a TSA with Monsanto Company.  Mr. Canjar was thereafter issued a license number allowing him to purchase seed containing Monsanto/Bayer CropScience Technology.  A true and correct copy is

attached hereto as Attachment 2.

33. In 2020, Monsanto Company and/or Bayer Crop Science LP sent Mr. Canjar a letter, titled "Important 2020 Stewardship Information." A copy of the terms of that letter are attached hereto as Attachment 3.

34. Among other information, the 2020 letter to Mr. Canjar advised that "Monsanto is a member of the Bayer Group," and instructed him to "refer to the 2020 versions of the TUG and TSA for the terms and conditions that apply to seed containing Monsanto Technologies … ." Att. 3. The letter also provided a website at which "the updated terms and conditions of the Technology Stewardship Agreement (TSA), can be downloaded," as well as number to call to request a printed copy. *Id.* The updated TSA referred to in the letter, and available via website or, on request, physical copy, was the 2020 TSA, a true and accurate copy of which is attached hereto as Attachment 4.

35. On or about July 19, 2012, Robert Schofield entered into a TSA with Monsanto Company. Although Robert Schofield did not enter a business name on his TSA, he listed a mailing address in Westfield, New York, the same city Plaintiffs allege as the principal place of business of Schofield Farms, LLC. Robert Schofield was thereafter issued a license number allowing him to purchase seed containing Monsanto/Bayer Crop Science Technology. A true and correct copy of Robert Schofield's TSA is attached hereto as Attachment 5.

36. On or about July 3, 2018, Chad Schofield, also of Westfield, New York, entered into a TSA with Monsanto Company on behalf of himself individually and Plaintiff Schofield Farms LLC. Chad Schofield was thereafter issued a license number allowing him, and Schofield Farms LLC, to purchase seed containing Monsanto/Bayer CropScience Technology. A true and correct copy of the signature page of Chad Schofield's TSA is attached hereto as Attachment 6, and a

true and correct copy of the form of the 2018 TSA, which Chad Schofield signed, is attached hereto as Attachment 7.

37. In 2020, Monsanto Company and/or Bayer CropScience LP sent Robert Schofield a letter, titled "Important 2020 Stewardship Information."  A copy of the terms of that letter are attached hereto as Attachment 3.  Monsanto Company and/or Bayer CropScience LP have linked the accounts of Robert Schofield with Chad Schofield and Schofield Farms LLC due to information provided in common.

38. Among other information, the 2020 letter to Robert Schofield advised that "Monsanto is a member of the Bayer Group," and instructed him to "refer to the 2020 versions of the TUG and TSA for the terms and conditions that apply to seed containing Monsanto Technologies … ." Att. 3.  The letter also provided a website at which "the updated terms and conditions of the Technology Stewardship Agreement (TSA), can be downloaded," as well as number to call to request a printed copy.  *Id.*  The updated TSA referred to in the letter, and available via website or, on request, physical copy, was the 2020 TSA, a true and accurate copy of which is attached hereto as Attachment 4.

39. On or about November 25, 2009, February 4, 2010, March 29, 2010, and April 28, 2010, William Thomas Jones, Will Jones, and Bernard Bryan Jones IV, respectively, entered into a TSA with Monsanto Company on behalf of themselves individually and Plaintiff Jones Planting Co. III.  Messrs. Jones were thereafter issued a license number allowing them, and Jones Planting Co. III, to purchase seed containing Monsanto/Bayer CropScience Technology.  True and correct copies are attached hereto as Attachments 8, 9, 10, and 11.

40. On or about December 20, 2009, Michael Piper entered into a TSA with Monsanto Company.  Mr. Piper was thereafter issued a license number allowing him to purchase seed

containing Monsanto/Bayer CropScience Technology.  A true and correct copy is attached hereto as Attachment 12.

41. On or about January 17, 2010, and again on or about June 25, 2019, Plaintiff Barbara Piper entered into a TSA with Monsanto Company.  Ms. Piper was thereafter issued a license number allowing her to purchase seed containing Monsanto/Bayer CropScience Technology.  A true and correct copy of Ms. Piper's most recent signed TSA is attached hereto as Attachment 13.

42. On or about November 7, 2001, Plaintiff John Swanson entered into a Technology/Stewardship Agreement with Monsanto Company.  Mr. Swanson was thereafter issued a license number allowing him to purchase seed containing Monsanto/Bayer CropScience Technology.  A true and correct copy is attached hereto as Attachment 14.

**Terms of the TSAs**

43. Every plaintiff has executed a TSA containing a forum-selection clause pursuant to which the plaintiff agrees to jurisdiction and venue in the Eastern District of Missouri for any action filed in federal court (and to jurisdiction and venue in the Circuity Court of the County of St. Louis, Missouri for any action filed in state court).

44. The forum-selection clause in each TSA appears in all capital letters.

45. For example, in paragraph 4.d the 2019 TSA provides, in part:

> THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO), FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES … .

Att. 1, ¶ 4.d.

8

46. The forum-selection paragraph of the 2019 TSA also provides:

> THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS MONSANTO AND ANY CURRENT OR FUTURE US-BASED WHOLLY-OWNED SUBSIDIARIES OR AFFILIATES OF MONSANTO.

Att. 1, ¶ 4.d.

47. Every plaintiff has also executed a TSA containing a choice-of-law provision selecting Missouri law to apply to the Agreement and the parties' relationships.

48. For example, the 2019 TSA provides:

> **Governing law:**  This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

Att. 1, ¶ 3.g.

49. Every plaintiff has executed a TSA pursuant to which the grower agrees to acquire seed containing Monsanto/Bayer CropScience Technology only from authorized seed companies with technology licenses, or from an authorized dealer.  *E.g.*, Att. 1, ¶ 1.a.

50. Every plaintiff has executed a TSA providing that it shall "remain in effect until either Grower or Monsanto chooses to terminate the Agreement," in accordance with the terms of the TSA for termination.  *E.g.*, Att. 1, ¶ 3.a; *see also id.* ¶ 3.e ("Grower may terminate this Agreement effective immediately by delivering written notice to Monsanto.").

51. None of the Plaintiffs have terminated their TSAs.

* * *

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed in Morris Plains, New Jersey on March 3, 2021.

_____
KEITH R. ABRAMS

9

# Attachment 1

# 2019 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
(Limited Use License)

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Technology Stewardship Agreement you must be the operator/grower for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for whom you obtain Seed, and all individuals and entities having an ownership interest in any entities for whom you obtain Seed, and that Monsanto Company, a subsidiary of Bayer AG, ("Monsanto") or a court has not barred any of

those individuals or entities from obtaining this limited-use license or accessing Seed. Your name must be filled in and must match the signature below. This Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's headquarters in St. Louis, Missouri.  Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

CHARLES  LEX

Dr/Mr/Mrs/Ms    **Grower's Full Legal Name** (First/Middle/Last)                    Sr/Jr/II/III          **Farm Business Name**

1467  334TH  RD

**Grower's Mailing Address** (no P.O. Boxes)                                            **Farm Physical Address** (as listed with the FSA)

WOODWARD                                    IA          50276

**Grower's City**                           **State**    **Zip**          **Farm City**                                    **State**    **Zip**

(515)  438-2883                                                         9749                    OWNER/OPERATOR

**Office Phone** (include area code)         **Fax** (include area code)              **Last Four of Social Security #**    **Role** (Operator, Owner/Operator, Farm Manager, etc.)

(515)  438-2883              CHARLESLEX1@OUTLOOK.COM

**Cell Phone** (include area code)           **Email**

If the above information changes, Grower agrees to promptly update this information via AgCelerate.com or by calling 1-800-768-6387, option 3.

## SEED SUPPLIERS

**Business Name**                                                   **Area Code**    **Phone**

**City**                           **State**    **Zip**

**Business Name**                                                   **Area Code**    **Phone**

**City**                           **State**    **Zip**

This Monsanto Technology/Stewardship Agreement ("Agreement") is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page and any applicable Riders.

This Agreement grants Grower a limited license to use the following technologies in accordance with the terms of this Agreement:

**Canola Products**
Genuity® Roundup Ready® Spring Canola
Genuity® Roundup Ready® Winter Canola
TruFlex™ Canola with Roundup Ready® Technology*
TruFlex™ Canola with Roundup Ready® and LibertyLink® Technologies*
DEKALB® LibertyLink® Canola*

**Corn Products**
Roundup Ready® Corn 2
DroughtGard® Hybrids with Roundup Ready® Corn 2
DroughtGard® Hybrids with VT Double PRO® Corn
VT Double PRO® Corn
VT Double PRO® RIB Complete® Corn Blend
DroughtGard® Hybrids with VT Double PRO® RIB Complete® Corn Blend
Genuity® VT Triple PRO® Corn
Genuity® DroughtGard® Hybrids with VT Triple PRO® Corn

Genuity® VT Triple PRO® RIB Complete® Corn Blend
DroughtGard® Hybrids with VT Triple PRO® RIB Complete® Corn Blend
Trecepta™ Corn
Trecepta™ RIB Complete® Corn Blend
SmartStax® Corn
SmartStax® RIB Complete® Corn Blend
Performance Series™ Sweet Corn

**Cotton Products**
Bollgard II® Cotton
Genuity® Bollgard II® with Roundup Ready® Flex Cotton
Genuity® Roundup Ready® Flex Cotton
Bollgard II® XtendFlex® Cotton
Bollgard® 3 XtendFlex® Cotton
XtendFlex® Cotton

**Soybean Products**
Roundup Ready 2 Xtend® Soybeans
Genuity® Roundup Ready 2 Yield® Soybeans
Vistive® Gold Soybeans with Roundup Ready 2 Yield® Technology

and Monsanto patented germplasm and Monsanto Plant Variety Protection rights and any future seed technologies developed, licensed or owned by Monsanto that are made available to Grower ("Monsanto Technologies"). Seed containing Monsanto

Technologies are referred to herein as "Seed". The licensed U.S. patents and/or Plant Variety Protection (PVP) certificates for Monsanto Technologies can be found at the following web page: www.monsantotechnology.com and/or on the product label.

This Agreement includes an Alfalfa Rider and a Sugarbeet Rider, attached hereto, which is between Grower and Forage Genetics International, LLC ("FGI") and KWS SAAT SE ("KWS"), respectively. The Alfalfa Rider grants Grower a limited license to use Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology. The Sugarbeet Rider grants Grower a limited license to use Roundup Ready® Sugarbeets.

This Agreement also contains Grower's stewardship responsibilities and requirements associated with the use of Seed and Monsanto Technologies. In addition, this Agreement provides that any Cotton-related claims by Grower are subject to binding arbitration, as described in Section 4e below.

*This product has received full approval for planting in the United States and is pending approval in certain export markets. Availability is subject to Monsanto's decision to commercialize, and product brand names may change. For canola products containing the LibertyLink® trait, grower must hold a valid and current BASF Liberty® and Trait Agreement before Grower purchases such products.

### 1. GROWER AGREES:

**a** To acquire Seed only from authorized seed companies in the United States with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of this Agreement, the Technology Use Guide ("TUG") and, if applicable, the appropriate Insect Resistance Management Grower Guide ("IRM Grower Guide"), as each may be unilaterally amended by Monsanto from time to time, which TUG and IRM Grower Guide are incorporated into and are a part of this Agreement, and to read before planting and strictly follow the requirements of the applicable

*[The Agreement continues on the following pages]*

**GROWER SIGNATURE AND DATE REQUIRED** ▶





Name

Date    9/11/2020

seed bag and/or tag; to implement an Insect Resistance Management ("IRM") program, if applicable; and to cooperate and comply with these and any additional IRM/Integrated Pest Management ("IPM") programs Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Agreement, and Grower may lose its limited use license to use these products if Grower fails to comply with this Agreement, including by failing to follow the IRM program required by this Agreement. Monsanto further advises Grower to follow the recommendations and best management practices provided in the TUG, IRM Grower Guide and seed bag and/or tag label. Grower may obtain additional copies of the TUG or IRM Grower Guide or IPM information by contacting Monsanto at 1-800-768-6387 or by going to tug.monsanto.com.

**c** To pay all applicable royalties and technology fees for the use of the Monsanto Technologies and applicable fees due Monsanto that are part of, associated with the Seed purchase price or that are invoiced for the Seed. If Grower fails to pay Monsanto or any wholly owned Monsanto subsidiaries, for costs of Seed, Monsanto Technologies, and/or royalties, Grower agrees to pay Monsanto default late fees at the rate of 18% per annum (or the maximum allowed by law whichever is less) plus reasonable attorneys' fees, court costs and all other costs of collection. Monsanto or any affiliate has the right of set-off.

**d** To use Seed solely for a single planting of a commercial crop in the United States.

**e** Not to transfer any Seed to any other person or entity for planting, and not to export any Seed.

**f** Not to save or clean any crop produced from Seed for planting, and not to supply Seed produced from Seed to anyone for planting. Except to the extent specifically permitted by a valid TSA, the planting of any crop or Seed produced from Seed shall constitute infringement of Monsanto's U.S. patents.

**g** Not to plant and/or clean Seed for seed production unless, and only if, Grower has entered into a valid, written Seed production agreement with a seed company that is licensed by Monsanto to produce Seed (a "Licensee"), which agreement requires Grower to either physically deliver to the Licensee, sell for non-seed purposes or use for non-seed purposes all of the Seed produced; and not to purchase or otherwise obtain from the Licensee any of the Seed produced unless, after physical delivery by Grower to the Licensee, that Seed has been conditioned, packaged and delivered by the Licensee to Grower in the same manner as Seed sold by the Licensee to growers who have not entered into a Seed production agreement.

**h** Not to plant any Seed, or any Seed produced from Seed, for crop breeding, research, or generation of herbicide or other registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. Monsanto makes available separate license agreements to academic institutions for research.

**i** To use on crops containing Monsanto Technology only pesticides labeled for such use and follow current label directions. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROP(S) CONTAINING MONSANTO TECHNOLOGY. MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING MONSANTO TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO MONSANTO TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**j** To accept and continue the obligations of this Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to timely notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Agreement and they must have or obtain their own Monsanto Technology Stewardship Agreement to harvest or use, transfer or sell the harvested crop.

**k** To keep and provide Monsanto and its representatives following Monsanto's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

  1. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and grower/dealer/retailer/applicator records for seed and chemical purchases and applications and all documentation required on the chemistry product label or by government regulation; and

  2. the identity of, and access to, land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**l** To allow Monsanto to obtain Grower's internet service provider records to validate Grower's electronic signature, if applicable.

**m** To promptly notify Monsanto should any Grower Information provided to Monsanto herein change.

**n** To only direct crops or material produced from Seed only to appropriate grain handlers and/or markets to prevent movement to markets where the grain has not yet received regulatory approval for import and to notify such grain handlers that its crop has not yet received that approval. Grower acknowledges that any crop or material produced from Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted, and Grower purchases the Seed with that knowledge.

**2. GROWER RECEIVES:**

**a** A limited use license to purchase and to plant Seed pursuant to the terms of this Agreement in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate, dicamba or glufosinate herbicides over the top of crops as applicable, unless otherwise restricted by law. Monsanto (or the respective licensor) retains ownership of the Monsanto Technologies owned by it, including the gene technologies and varieties. These licenses do not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents (other than the Dow AgroSciences Patent Rights), to use Monsanto Technologies subject to the conditions listed in this Agreement and with respect to alfalfa and/or sugarbeet Seed, the conditions listed in the Alfalfa Rider and/or Sugarbeet Rider. Dow AgroSciences LLC and Agrigenetics, Inc. (collectively "DowAgroSciences") licenses Grower under its applicable U.S. patents (the "Dow AgroSciences Patent Rights") to use Dow AgroSciences' Event TC 1507 and Event DAS 59122-7 to the extent either is present in any SmartStax' Seed obtained by Grower pursuant to this Agreement, with Monsanto being authorized to act on Dow AgroSciences' behalf for this Agreement, subject to the conditions listed in this Agreement.

**c** Enrollment for participation in Roundup Ready PLUS' Crop Management Solutions.

**d** A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop labeled for use on those crops to control volunteer corn with Roundup Ready' 2 Technology in Grower's crops for the 2019 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix for use on glyphosate-tolerant soybean, cotton, or canola crops.

**3. GENERAL TERMS:**

**a Term:** This Agreement will remain in effect until either Grower or Monsanto chooses to terminate the Agreement, as provided below.

**b Modification:** Monsanto may unilaterally revise the terms and conditions of this Agreement, including the TUG, IRM Grower Guide, or seed bag, label and/or tag incorporated herein, from time to time. Grower shall verify the currently effective terms of this Agreement at least annually before February 1 at agcelerate.com. Monsanto will notify Grower of any amended terms, including information regarding new and existing Monsanto Technologies and any additions or deletions to the U.S. patents licensed under this Agreement. If Grower has provided Monsanto an e-mail address in conjunction with this Agreement, Monsanto may send Agreement amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of Monsanto Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Agreement.

**c Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of Monsanto. If Grower's rights or obligations are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights or obligations.

**d Binding Effect:** If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e Termination:** Grower may terminate this Agreement effective immediately by delivering written notice to Monsanto. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. Monsanto may terminate this Agreement for any reason, in whole or in part, by delivering written notice to Grower.

Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Seed for a single commercial crop) as to Seed previously purchased or used by Grower.

If Grower breaches the terms of this Agreement, Monsanto may terminate effective immediately Grower's rights under this Agreement. Grower will not be entitled to obtain a future limited-use license from Monsanto unless Monsanto provides Grower with specific written notice expressly recognizing the breach and termination of this Agreement and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology Stewardship Agreement and Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Agreement and/or to have infringed one or more of the U.S. patents, Grower

*[The Agreement continues on the following pages]*

agrees that, among other things, Monsanto and Dow AgroSciences, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle Monsanto and Dow AgroSciences, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f  Attorneys' Fees:** If Grower is found by any court to have infringed one or more of the U.S. patents covering Monsanto Technologies or otherwise to have breached this Agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) and Dow AgroSciences, as appropriate, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.

**g  Governing Law:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**h  Waiver:** The failure of Monsanto or any owners of patents to exercise one or more of its rights under this Agreement on one or more occasions shall not be deemed a waiver on the part of Monsanto or such patent owner to exercise such right(s) on any subsequent occasion.

**i  Entire Agreement:** This Agreement, along with provisions in the TUG, IRM Grower Guide, and/or on seed bag and/or tag incorporated into this Agreement, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by Monsanto.

## 4. GROWER CLAIMS AND REMEDIES:

**a  Notice requirement:** As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed regarding performance or non- performance of Monsanto Technologies or Seed, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b  Limited Warranty and Disclaimer of Warranties:** Monsanto warrants the Monsanto Technologies licensed hereunder only to the extent specifically set forth on the seed bag and/or tag, and warrants that the Monsanto Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS  ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN MONSANTO OR PARTIES AUTHORIZED BY MONSANTO.

**c  Grower's Exclusive Limited Remedy:** THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**d  Forum Selection for Non-Cotton-Related Claims Made by Grower and All Other Claims:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI (ANY LAWSUIT MUST BE FILED, IF IN FEDERAL COURT IN ST. LOUIS, MO, OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO), FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI. THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON-RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES. THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS MONSANTO AND ANY CURRENT OR FUTURE U.S.-BASED WHOLLY-OWNED SUBSIDIARIES OR AFFILIATES OF MONSANTO.

**e  Binding Arbitration for Cotton-Related Claims Made By Grower:** Any claim, action or dispute made or asserted by a Grower (or any other person or entity claiming an interest in Grower's cotton crop, hereafter "Grower") against Monsanto, or any person or entity involved in the production, development, distribution, and/or sale of the Seed containing any Monsanto Technology ("Seller"), arising out of and/or in connection with this Agreement or the sale or performance of cotton Seed containing Monsanto Technology must be resolved by binding arbitration. The foregoing requirement to arbitrate specifically excludes any claim, action or dispute involving the infringement, validity, or enforceability of a patent or that otherwise arises under the U.S. patent laws. As a condition precedent to asserting any claim, action, or dispute regarding the quality of Monsanto cotton Seed or the agronomic performance of any Monsanto Technology in cotton Seed, Grower must provide notice to Monsanto pursuant to Section 4a of this Agreement. In the event that a claim is not resolved within 30 days after notice is supplied, any party may initiate arbitration. The parties acknowledge that this transaction involves interstate commerce, and agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Administered Arbitration Rules established by the International Institute for Conflict Prevention and Resolution, Inc. ("CPR"). GROWER MAY ONLY BRING A CLAIM IN ARBITRATION IN GROWER'S INDIVIDUAL CAPACITY AND GROWER WAIVES ANY RIGHT TO DO SO AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OR PUTATIVE CLASS. The arbitration hearing shall be conducted in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. Grower and Monsanto/sellers shall each pay one half of the CPR filing fee and one half of CPR's administrative and arbitrator fees and expenses as they are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all CPR fees in the final award. The arbitration proceedings and results shall remain confidential and shall not be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award or as otherwise required by law.

The 2019 Technology Use Guide (TUG) is available at tug.monsanto.com.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call 1-800-768-6387.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate.  Bollgard® 3 XtendFlex® Cotton, Bollgard II® XtendFlex® Cotton and XtendFlex® Cotton contain genes that confer tolerance to glyphosate, dicamba, and glufosinate. Roundup Ready 2 Xtend® Soybeans contain genes that confer tolerance to glyphosate and dicamba. Glyphosate herbicides will kill crops that are not tolerant to glyphosate.  Dicamba will kill crops that are not tolerant to dicamba.  Glufosinate will kill crops that are not tolerant to glufosinate.

Bollgard II®, Bollgard II® XtendFlex®, Bollgard®3, DEKALB®, DroughtGard®, Genuity®, Performance Series® RIB Complete®, Roundup Ready 2 Technology®, Roundup Ready 2 Xtend®, Roundup Ready 2 Yield®, Roundup Ready®, Roundup Ready PLUS®, Roundup®, SmartStax®, Trecepta™, TruFlex™, Vistive®, VT Double PRO®, VT Triple Genuity®, XtendFlex®, YieldGard VT Rootworm/RR2®, and YieldGard® are trademarks of Bayer Group.  LibertyLink® and the Water Droplet Design® are registered trademarks of BASF.  Herculex® is a registered trademark of Dow AgroSciences LLC.  HarvXtra® is a registered trademark of Forage Genetics International, LLC.  All other trademarks are the property of their respective owners. ©2018 Bayer Group.

*[The Agreement continues on the following pages]*

# 2019 ALFALFA RIDER

## TERMS AND CONDITIONS

The following terms and conditions of the Alfalfa Rider (the "Rider") supplement the Monsanto Technology Stewardship Agreement ("TSA" or the "Agreement"), are enforceable under that Agreement as well as independently and separately enforceable from the Agreement, and are applicable to Grower's purchase or use of Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology. This Rider is entered into between Grower and Forage Genetics International, LLC ("FGI") and consists of the terms and conditions set forth below. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.

This Rider grants Grower a limited license to use the following technologies in accordance with the terms of this Rider: Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology, patented alfalfa germplasm and Plant Variety Protection rights owned or exclusively licensed to FGI and any future seed technologies developed, licensed or owned by FGI that are made available to Grower ("FGI Technologies"), with Monsanto Company, a subsidiary of Bayer AG, ("Monsanto") authorized to act on FGI's behalf. Seed containing FGI Technologies, are collectively referred to herein as ("Alfalfa Seed"). The licensed U.S. patents and/or PVP certificates for FGI Technologies can be found at the following web page: monsantotechnology.com and/or on the product label.

This Rider also contains Grower's stewardship responsibilities and requirements associated with the use of Alfalfa Seed and FGI Technologies.

### 1. GROWER AGREES:

**a** To acquire Alfalfa Seed only from authorized seed companies in the United States with technology license(s) from FGI for the applicable FGI Technology(ies) or from a licensed company's dealer authorized to sell such licensed Alfalfa Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of the Technology Use Guide ("TUG") and, if applicable, the appropriate Insect Resistance Management Grower Guide ("IRM Grower Guide") and seed bag tag, as each may be amended from time to time, which TUG, IRM Grower Guide and seed bag tag are incorporated into and are a part of this Rider; to implement an Insect Resistance Management ("IRM") program, if applicable; and to cooperate and comply with these and any additional IRM/Integrated Pest Management ("IPM") programs FGI or Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Rider, and Grower may lose its limited use license to use these products if Grower fails to follow the IRM program required by this Rider. FGI further advises Grower to follow the recommendations provided in the TUG, IRM Grower Guide and seed bag tag.  Grower may obtain additional copies of the TUG or IRM Grower Guide or IPM information by contacting Monsanto at 1-800-768-6387 or by going to www.tug.monsanto.com.

**c** To pay all applicable royalties and technology fees for the use of the FGI Technologies and applicable fees due FGI that are part of, associated with the Alfalfa Seed purchase price or that are invoiced, or the Alfalfa Seed. If Grower fails to pay FGI or any wholly owned FGI subsidiaries, for costs of Alfalfa Seed, FGI Technologies, and/or royalties, Grower agrees to pay FGI default late fees at the rate of 18% per annum (or the maximum allowed by law whichever is less) plus reasonable attorneys' fees, court costs and all other costs of collection. FGI or any affiliate has the right of set-off.

**d** To use Alfalfa Seed solely for a commercial crop in the United States as provided below. Grower may use a single planting of Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology for multiple cuttings.

**e** Only to plant HarvXtra® Alfalfa with Roundup Ready® Technology in the United States, with the following states subject to execution of an additional FGI Seed and Feed Use Agreement: Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, Oregon, Utah, Washington and Wyoming (collectively the "Western States").

**f** That all planting of HarvXtra® Alfalfa with Roundup Ready® Technology in the Western States is permissible only upon separate execution by the Grower of a HarvXtra® Alfalfa with Roundup Ready® Technology Seed and Feed Use Agreement ("FGI Seed and Feed Use Agreement") that includes provisions limiting HarvXtra® with Roundup Ready® Technology seed and crops or hay products produced from HarvXtra® Alfalfa with Roundup Ready® Technology to only United States domestic use.

**g** All terms of the FGI Seed and Feed Use Agreement are incorporated into and made enforceable under this Rider.

**h** Not to transfer any Alfalfa Seed to any other person or entity for planting, and not to export any Alfalfa Seed.

**i** Not to save or clean any crop produced from Alfalfa Seed for planting, and not to supply seed produced from Alfalfa Seed to anyone for planting.  Except to the extent specifically permitted by a valid TSA, the planting of any crop or Seed produced from Seed shall constitute infringement of FGI's and/or Monsanto's U.S. patents.

**j** Not to plant and/or clean Alfalfa Seed for seed production unless, and only if, Grower has entered into a valid, written Alfalfa Seed production agreement with a seed company that is licensed by FGI to produce Alfalfa Seed (a "Licensee"), which agreement requires Grower to either physically deliver to the Licensee, sell for non-seed purposes or use for non-seed purposes all of the Seed produced; and not to purchase or otherwise obtain from the Licensee any of the Seed produced unless, after physical delivery by Grower to the Licensee, that Seed has been conditioned, packaged and delivered by the Licensee to Grower in the same manner as Seed sold by the Licensee to growers who have not entered into a Seed production agreement.

**k** Not to plant any Alfalfa Seed, or any seed produced from Alfalfa Seed, for crop breeding, research, or generation of herbicide or other registration data. Grower may not conduct research on Grower's crop produced from Alfalfa Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. FGI makes available separate license agreements to academic institutions for research.

**l** To use on crops containing FGI Technology only pesticides labeled for such use and follow current label directions. FGI DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES , INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROPS CONTAINING FGI TECHNOLOGY. FGI SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING FGI TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO FGI TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**m** To accept and continue the obligations of this Rider on any new land purchased or leased by Grower that has Alfalfa Seed planted on it by a previous owner or possessor of the land; and to timely notify in writing purchasers or lessees of land owned by Grower that has Alfalfa Seed planted on it that the FGI Technology is subject to this Rider and they must have or obtain their own Monsanto Technology Stewardship Agreement, Rider and FGI Seed and Feed Use Agreement, if applicable.

**n** To keep and provide to FGI and its representatives following FGI's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

1. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Rider, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, grower/dealer/retailer/applicator records for seed and chemical purchases, and applications and all documentation required on the chemistry product label or by government regulation; and

2. the identity of, and access to, land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**o** To allow FGI to obtain Grower's internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

**p** To promptly notify FGI or Monsanto should any Grower Information provided herein change.

**q** To direct any crops or hay products produced from HarvXtra® Alfalfa with Roundup Ready® Technology only to United States domestic use, except where FGI expressly grants permission in writing. Grower further agrees that it will only sell or convey such crops or hay products to persons or entities that agree they will not ship such crops or hay products outside the United States, except where FGI expressly grants permission in writing.

**r** Grower acknowledges that any crop or hay product produced from Alfalfa Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted, and Grower purchases the Alfalfa Seed with that knowledge.

**s** Until FGI expressly grants permission in writing (which will be withheld pending necessary import approvals), not to export, or to sell or convey to any person or entity that intends to export, Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology seed or crops or hay products produced from such seed to export countries where all necessary regulatory approvals have not been granted.  In addition, due to the unique cropping practices Grower agrees not to plant Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology in Imperial County, California, pending import approvals and until FGI grants express permission in writing for such planting.  Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology seed may not be planted for the production of sprouts.

### 2. GROWER RECEIVES FROM FGI:

**a** A limited use license to purchase and to plant Alfalfa Seed pursuant to the terms of this Rider in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate herbicides over the top of crops as applicable, unless otherwise restricted by law. FGI (or the respective licensor) retains ownership of the FGI Technologies owned by it, including the gene technologies and varieties. These licenses do not authorize Grower to plant Alfalfa Seed in the United States that has been purchased in another country or plant Alfalfa Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents, to use FGI Technologies subject to the conditions listed in this Rider.

**c** Enrollment for participation in Roundup Ready PLUS® Crop Management Solutions.

---

*[The Agreement continues on the following pages]*

**d** A limited use license to prepare and apply on glyphosate-tolerant alfalfa (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop labeled for use on those crops to control volunteer corn with Roundup Ready® 2 Technology in Grower's crops for the 2019 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix for use on glyphosate-tolerant alfalfa.

**3. GENERAL TERMS:**

**a   Term:**  This Rider will remain in effect until either Grower or FGI chooses to terminate the Rider, as provided below.

**b   Modification:**  FGI or Monsanto may unilaterally revise the terms and conditions of this Rider, including the Agreement and TUG incorporated herein, from time to time. Grower shall verify the currently effective terms of this Rider at least annually before February 1 at agcelerate.com. FGI or Monsanto will notify Grower of any amended terms, including information regarding new and existing FGI Technologies and any additions or deletions to the U.S. patents licensed under this Rider. If Grower has provided FGI or Monsanto an e-mail address in conjunction with the Agreement or this Rider, FGI or Monsanto may send Rider amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of FGI Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Rider.

**c   Transferability:**  Grower may not transfer its rights or obligations to anyone else without the written consent of FGI. If Grower's rights or obligations are transferred with FGI's consent or by operation of law, this Rider is binding on the person or entity receiving the transferred rights or obligations.

**d   Binding Effect:**  If any provision of this Rider is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e   Termination:**  Grower may terminate this Rider effective immediately by delivering written notice to FGI. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. FGI may terminate this Rider for any reason, in whole or in part, by delivering written notice to Grower. Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Alfalfa Seed for a single commercial crop) as to Alfalfa Seed previously purchased or used by Grower. If Grower breaches the terms of this Rider, FGI may terminate effective immediately Grower's rights under this Rider. Grower will not be entitled to obtain a future limited-use license from FGI unless FGI provides Grower with specific written notice expressly recognizing the breach and termination of this Rider and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology Stewardship Agreement or Rider and FGI's or Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Rider and/or to have infringed one or more of the Alfalfa Patent Rights, Grower agrees that, among other things, FGI, and Monsanto, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Alfalfa Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle FGI, and Monsanto, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f   Attorneys' Fees:**  If Grower is found by any court to have infringed one or more of the Alfalfa Patent Rights or otherwise to have breached any term of this Rider, Grower agrees to pay FGI and Monsanto, as appropriate, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.

**g   Governing Law:**  This Rider and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**h   Waiver:**  The failure of FGI or Monsanto or any owners of patents to exercise one or more of its rights under this Agreement on one or more occasions shall not be deemed a waiver on the part of FGI or Monsanto or such patent owner to exercise such right(s) on any subsequent occasion.

**i   Entire Agreement:**  This Agreement and Rider, along with provisions in the TUG and/ or on bag tags and the terms of the FGI Seed and Feed Use Agreement, if applicable, which are incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Alfalfa Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by FGI or Monsanto.

**4.  GROWER CLAIMS AND REMEDIES:**

**a   Notice requirement:**  As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against FGI and/or any seller of Alfalfa Seed regarding performance or non-performance of FGI Technologies or Alfalfa Seed, Grower must provide FGI a written, prompt, and timely notice (regarding performance or non-performance of the FGI Technologies) and to the seller of any Alfalfa Seed (regarding performance or non-performance of the Alfalfa Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the FGI Technology and/or the Alfalfa Seed. The notice shall include a statement setting forth the nature of the claim, name of the FGI Technology, and Alfalfa Seed products. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b   Limited Warranty and Disclaimer of Warranties:**  FGI warrants the FGI Technology licensed hereunder as set forth on the seed bag and/or tag to the extent specifically warranted thereon, or, to the extent specifically warranted therein, that the FGI Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology contained in planting Alfalfa Seed that has been purchased from FGI and seed companies licensed by FGI or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, FGI MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN FGI.

**c   Grower's Exclusive Limited Remedy:**  THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF FGI OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF ALFALFA SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE ALFALFA SEED INVOLVED OR, AT THE ELECTION OF FGI OR THE SEED SELLER, THE REPLACEMENT OF THE ALFALFA SEED. IN NO EVENT SHALL FGI OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**d   FORUM SELECTION FOR CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:**  THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI (ANY LAWSUIT MUST BE FILED, IF IN FEDERAL COURT IN ST. LOUIS, MO, OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO), FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE ALFALFA SEED OR THE FGI TECHNOLOGIES. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI. THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS FGI, ITS CURRENT OR FUTURE AFFILIATES AND ANY CURRENT OR FUTURE U.S.-BASED WHOLLY-OWNED SUBSIDIARIES OF FGI.

Thank you for choosing our advanced technologies.  We look forward to working with you in the future.
If you have any questions regarding the FGI Technologies or this license, please call 1-800-768-6387.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate. Glyphosate herbicides will kill crops that are not tolerant to glyphosate. Roundup Ready 2 Technology® and Roundup Ready® are registered trademarks of Bayer Group. HarvXtra® is a registered trademark of Forage Genetics International, LLC. All other trademarks are the property of their respective owners. ©2018 Bayer Group.

*[The Agreement continues on the following page]*

# 2019 SUGARBEET RIDER

## TERMS AND CONDITIONS

The following terms and conditions of the Sugarbeet Rider (the "Rider") supplement the Monsanto Technology Stewardship Agreement ("TSA" or the "Agreement"), are enforceable under that Agreement as well as independently and separately enforceable from the Agreement, and are applicable to Grower's purchase or use of Roundup Ready® Sugarbeets. This Rider is entered into between Grower and KWS SAAT SE (KWS) and consists of the terms and conditions set forth below. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.

This Rider grants Grower a limited license to use Roundup Ready® Sugarbeets in accordance with the terms of this Rider ("KWS Technologies"), with respect to which KWS has authorized Monsanto Company, a subsidiary of Bayer AG, ("Monsanto") to act on KWS's behalf in accordance with the parties' commercial services agreement, that are made available to Grower. Seed containing KWS Technologies, are collectively referred to herein as ("Sugarbeet Seed"). Seed containing KWS Technologies, are collectively referred to herein as ("Sugarbeet Seed"). The licensed U.S. patents for KWS Technologies can be found at the following web page: monsantotechnology.com and/or on the product label.

This Rider also contains Grower's stewardship responsibilities and requirements associated with the use of Sugarbeet Seed and KWS Technologies.

### 1. GROWER AGREES:

**a** To acquire Sugarbeet Seed only from authorized seed companies in the United States with technology license(s) from KWS for the applicable KWS Technology(ies) or from a licensed company's representative authorized to sell such licensed Sugarbeet Seed in the United States.

**b** To obtain and read before planting and follow the applicable requirements of the Technology Use Guide ("TUG") and seed package label, as each may be amended from time to time, which TUG and seed package label are incorporated into and are a part of this Rider; and to cooperate and comply with these and any additional stewardship programs KWS or Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Rider, and Grower may lose its limited use license to use these products if Grower fails to follow the stewardship guidelines required by this Rider. KWS further advises Grower to follow the recommendations provided in the TUG and seed package label. Grower may obtain additional copies of the TUG by contacting Monsanto at 1-800-768-6387 or by going to tug.monsanto.com.

**c** To use Sugarbeet Seed solely for a commercial crop in the United States as provided below. Grower may use a single planting of Roundup Ready® Sugarbeets to be processed for sugar, for energy production, or for animal feed.

**d** Not to transfer any Sugarbeet Seed to any other person or entity for planting, and not to export any Sugarbeet Seed.

**e** Not to plant any Sugarbeet Seed, or any seed produced from Sugarbeet Seed, for crop breeding, research, DNA analysis, generation of herbicide, or other registration data. Grower may not conduct research on Grower's crop produced from Sugarbeet Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.

**f** To use on crops containing KWS Technology only pesticides labeled for such use and follow current label directions. KWS DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROPS CONTAINING KWS TECHNOLOGY. KWS SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING KWS TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO KWS TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**g** To keep and provide to KWS and its representatives following KWS's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

  **1.** copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Rider, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and grower/dealer/retailer/applicator records for seed and chemical purchases and applications and all documentation required on the chemistry product label or by government regulation; and

  **2.** the identity of, and access to, land farmed by or at the direction of Grower and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**h** To promptly notify KWS and Monsanto should any Grower Information provided herein change.

### 2. GROWER RECEIVES FROM KWS:

**a** A limited use license to purchase and to plant Sugarbeet Seed pursuant to the terms of this Rider in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate herbicides over the top of crops as applicable, unless otherwise restricted by law. KWS (or the respective licensor) retains ownership of the KWS Technologies owned by it, including the gene technologies. These licenses do not authorize Grower to plant Sugarbeet Seed in the United States that has been purchased in another country or plant Sugarbeet Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents, to use KWS Technologies subject to the conditions listed in this Rider.

### 3. GENERAL TERMS:

**a** **Term:** This Rider will remain in effect until either Grower or KWS chooses to terminate the Rider, as provided below.

**b** **Modification:** KWS may unilaterally revise the terms and conditions of this Rider, including the Agreement and TUG incorporated herein, from time to time. Grower shall verify the currently effective terms of this Rider at least annually before February 1 at agcelerate.com. KWS or Monsanto will notify Grower of any amended terms, including information regarding new and existing KWS Technologies and any additions or deletions to the U.S. patents licensed under this Rider. If Grower has provided KWS or Monsanto an e-mail address in conjunction with the Agreement or this Rider, KWS or Monsanto may send Rider amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of KWS Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Rider.

**c** **Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of KWS. If Grower's rights or obligations are transferred with KWS's consent or by operation of law, this Rider is binding on the person or entity receiving the transferred rights or obligations.

**d** **Binding Effect:** If any provision of this Rider is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e** **Termination:** Grower may terminate this Rider effective immediately by delivering written notice to KWS. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. KWS may terminate this Rider for any reason, in whole or in part, by delivering written notice to Grower. Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Sugarbeet Seed for a single commercial crop) as to Sugarbeet Seed previously purchased or used by Grower. If Grower breaches the terms of this Rider, KWS may terminate effective immediately Grower's rights under this Rider. Grower will not be entitled to obtain a future limited-use license from KWS unless KWS provides Grower with specific written notice expressly recognizing the breach and termination of this Rider and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology Stewardship Agreement or Rider and KWS's or Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Rider and/or to have infringed one or more of the Sugarbeet Patent Rights, Grower agrees that, among other things, KWS shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Sugarbeet Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle KWS to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f** **Attorneys' Fees: If Grower is found by any court to have infringed one or more of the Sugarbeet Patent Rights or otherwise to have breached any term of this Rider, Grower agrees to pay KWS, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.**

**g** **Governing Law and Forum:** This Rider and the parties' relationship shall be governed by the laws of the State of Minnesota and the United States (without regard to the choice of law rules). Any dispute arising out of or relating to this Rider, the parties' relationship, KWS technologies, or the Sugarbeet Seed shall be commenced and maintained exclusively in the state or federal courts of Minnesota. Grower waives any objection to venue or inconvenience of forum and voluntarily submits to the jurisdiction of these courts.

**h  Waiver:**  The failure of KWS or any owners of patents to exercise one or more of its rights under this Rider on one or more occasions shall not be deemed a waiver on the part of KWS or such patent owner to exercise such right(s) on any subsequent occasion.

**i  Entire Agreement:**  This Agreement and Rider, along with provisions in the TUG and/or on package labels and the terms of the KWS Seed and Feed Use Agreement, if applicable, which are incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Sugarbeet Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by KWS or Monsanto.

**4.  GROWER CLAIMS AND REMEDIES:**

**a  Notice requirement:**  As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against KWS and/or any seller of Sugarbeet Seed regarding performance or non-performance of KWS Technologies or Sugarbeet Seed, Grower must provide KWS a written, prompt, and timely notice (regarding performance or non-performance of the KWS Technologies) and to the seller of any Sugarbeet Seed (regarding performance or non-performance of the Sugarbeet Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted.  The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the KWS Technology and/or the Sugarbeet Seed.  The notice shall include a statement setting forth the nature of the claim, name of the KWS Technology, and Sugarbeet Seed product.  Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b  Limited Warranty and Disclaimer of Warranties:**  KWS warrants the KWS Technology licensed hereunder only as specifically set forth on the seed container and/or package label and warrants that the KWS Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Sugarbeets contained in planting Sugarbeet Seed that has been purchased from KWS and seed companies licensed by KWS or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, KWS MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN KWS.

**c  Grower's Exclusive Limited Remedy:**  THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF KWS OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SUGARBEET SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SUGARBEET SEED INVOLVED OR, AT THE ELECTION OF KWS OR THE SEED SELLER, THE REPLACEMENT OF THE SUGARBEET SEED. IN NO EVENT SHALL KWS OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**h  Waiver:**  The failure of KWS or any owners of patents to exercise one or more of its rights under this Rider on one or more occasions shall not be deemed a waiver on the part of KWS or such patent owner to exercise such right(s) on any subsequent occasion.

**i  Entire Agreement:**  This Agreement and Rider, along with provisions in the TUG and/or on package labels and the terms of the KWS Seed and Feed Use Agreement, if applicable, which are incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Sugarbeet Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by KWS or Monsanto.

**4.  GROWER CLAIMS AND REMEDIES:**

**a  Notice requirement:**  As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against KWS and/or any seller of Sugarbeet Seed regarding performance or non-performance of KWS Technologies or Sugarbeet Seed, Grower must provide KWS a written, prompt, and timely notice (regarding performance or non-performance of the KWS Technologies) and to the seller of any Sugarbeet Seed (regarding performance or non-performance of the Sugarbeet Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted.  The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the KWS Technology and/or the Sugarbeet Seed.  The notice shall include a statement setting forth the nature of the claim, name of the KWS Technology, and Sugarbeet Seed product.  Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b  Limited Warranty and Disclaimer of Warranties:**  KWS warrants the KWS Technology licensed hereunder only as specifically set forth on the seed container and/or package label and warrants that the KWS Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Sugarbeets contained in planting Sugarbeet Seed that has been purchased from KWS and seed companies licensed by KWS or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, KWS MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN KWS.

**c  Grower's Exclusive Limited Remedy:**  THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF KWS OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SUGARBEET SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SUGARBEET SEED INVOLVED OR, AT THE ELECTION OF KWS OR THE SEED SELLER, THE REPLACEMENT OF THE SUGARBEET SEED. IN NO EVENT SHALL KWS OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies.  We look forward to working with you in the future.
If you have any questions regarding the KWS Technologies or this license, please call 1-800-768-6387.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate. Glyphosate herbicides will kill crops that are not tolerant to glyphosate. Roundup Ready 2 Technology® and Roundup Ready® are registered trademarks of Bayer Group. All other trademarks are the property of their respective owners. ©2018 Bayer Group.

# Attachment 2

# 2013 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
*(Limited Use License)*

**Form Number**
130198969

PLEASE MAIL THE SIGNED 2013 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO: Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

## GROWER INFORMATION (please

Please complete this section with your business information. To sign this Monsanto Technology/Stewardship Agreement ("Agreement") you must be the **operator/grower** for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, all individuals and entities having an ownership interest in any entities for which you obtain Seed, and that Monsanto

Company has not ... aining this limited-use
license. Your nam ... low. This Agreement
becomes effective ... number from Monsanto's
headquarters in S ... ed dealers or seed retailers to
issue a license of any kind for Monsanto Technologies.

L 1 3 0 8 8 0 8

**Grower's Full Legal Name** (First/Middle/Last)  Dr. ☓ Mr.  Mrs.  Ms.  Suffix (Sr, Jr, II, III)
Jason   James   Canjur

**Farm Business Name**
Yedinak   Farm

**Grower's Mailing Address** (no P.O. Boxes)
701   Aberdeen   Rd

**Farm Physical Address** (as listed with the FSA)
690   Yedinak   Lane

**Grower's City**
Madison Twp

**State**
Pa

**Zip**
18444

**Farm City**
Madison Twp.

**State**
Pa

**Zip**
18444

**Area Code** 570  **Home Phone** 842-2910  **Fax**

**Last Four of Social Security #**
XXX-XX-3591

**Role**
Operator  ☓ Owner/Operator  Farm Manager  Other

**Area Code** 570  **Cell Phone** 241-3373  **Email** Jasoncanjar@yahoo.com

If the above information changes, Grower agrees promptly to notify Monsanto of the changes by calling the Grower Licensing Team at 1-800-768-6387, Option #3.

## SEED SUPPLIER

**Business Name**
Cochecton Mills Inc

**Area Code** 845  **Phone** 932-8282

**City**
Cochecton

**State**
NY

**Zip**
12726

### THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:

Lic. #: 509175826    Batch #: 17288    Date: JAN 24 2014

This Monsanto Technology/Stewardship Agreement is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page.

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Genuity® Bollgard II® with Roundup Ready® cotton, Genuity® Bollgard II® with Roundup Ready® Flex cotton, Genuity® Roundup Ready 2 Yield® soybeans, Vistive® low linolenic soybeans with Genuity® Roundup Ready 2 Yield® technology, Genuity® Roundup Ready® Canola, Genuity® Roundup Ready® Alfalfa, Roundup Ready® Corn 2, Genuity® DroughtGard™ Hybrids with Roundup Ready® Corn 2, Roundup Ready® Cotton, Genuity® Roundup Ready® Flex cotton, Roundup Ready® Soybeans, Vistive® low linolenic soybeans with Roundup Ready® technology, Genuity® Roundup Ready® SugarBeets, YieldGard® Corn Borer corn, YieldGard® Corn Borer with Roundup Ready® Corn 2, Genuity® VT Double PRO® corn, Genuity® DroughtGard™ Hybrids with VT Double PRO® corn, Genuity® VT Double PRO® RIB Complete® corn blend, Genuity® DroughtGard™ Hybrids with VT Double PRO® RIB Complete® corn blend, YieldGard VT Rootworm/RR2® corn, YieldGard VT Triple® corn, Genuity® VT Triple PRO® corn, Genuity® DroughtGard™ Hybrids with VT Triple PRO® corn, Genuity® VT Triple PRO® RIB Complete® corn blend, Genuity® DroughtGard™ Hybrids with VT Triple PRO® RIB Complete® corn blend, Performance Series™ Sweet Corn, Genuity® SmartStax® corn, Genuity® SmartStax® RIB Complete® corn blend, Monsanto patented germplasm and Monsanto Plant Variety Protection rights ("Monsanto Technologies"). Seed containing Monsanto Technologies are referred to herein as ("Seed"). This Agreement also contains Grower's stewardship responsibilities and requirements associated with the use of Seed and Monsanto Technologies.

**1. GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**2. BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:** Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology, other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. Where a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**3. FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI. ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

**4. GROWER AGREES:**

• To accept and continue the obligations of this Monsanto Technology/Stewardship Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Monsanto Technology/Stewardship Agreement and they must have or obtain their own Monsanto Technology/Stewardship Agreement.

• To read and follow the applicable Technology Use Guide ("TUG") and the Insect Resistance Management Grower Guide ("IRM Grower Guide") as may be amended from time to time, which are incorporated into this Agreement. Grower must comply with the requirements set forth in the TUG and the IRM Grower Guide and should follow the best management practices, recommendations and guidelines provided in those documents.

• To implement an Insect Resistance Management ("IRM") program, if applicable, in accordance with the most recent IRM Grower Guide and to cooperate and comply with these and any additional IRM programs Monsanto communicates to Grower.

• To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed.

• To acquire Seed from authorized seed companies (or their authorized dealers) with the applicable license(s).

• To use Seed containing Monsanto Technologies solely for planting a single commercial crop.

• Not to save or clean any crop produced from Seed for planting, not to supply Seed produced from Seed to anyone for planting, not to plant Seed for production other than for Monsanto or a Monsanto licensed seed company under a seed production contract.

• Not to transfer any Seed containing patented Monsanto Technologies to any other person or entity for planting.

• To plant and/or clean Seed for Seed production, if and only if, Grower has entered into a valid, written Seed production agreement with a Seed company that is licensed by Monsanto to produce Seed. Grower must either physically deliver to that licensed Seed Company or must sell for non-seed purposes or use for non-seed purposes all of the Seed produced pursuant to a Seed production agreement.

• Grower may not plant and may not transfer to others for planting any Seed that the Grower has produced containing patented Monsanto Technologies for crop breeding, research, or generation of herbicide registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. Monsanto makes available separate license agreements to academic institutions for research.

• To direct crops produced from Seed to appropriate markets. Any grain or material produced from Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted.

• In the case of Genuity® DroughtGard™ Hybrids, to enter into a Genuity® DroughtGard™ Hybrids Stewardship Agreement with Monsanto and comply with its terms.

• Pending import approvals in China, Grower agrees not to export Genuity® Roundup Ready® Alfalfa seed or crops (including hay and hay products) to China. In addition, due to the unique cropping practices Grower agrees not to plant Genuity® Roundup Ready® Alfalfa in Imperial County, California, pending import approvals in China and until Monsanto grants express permission for such planting. Genuity Roundup Ready Alfalfa seed may not be planted for the production of sprouts.

• Grower agrees: 1) not to export Genuity® Roundup Ready® Flex Pima cotton seed, meal, linters, or gin trash to Korea pending import approval, 2) to deliver cotton to an Arizona, California, New Mexico, or Texas gin that is on Monsanto's approved list (available at www.genuity.com under the Commodity Marketing section of the Stewardship tab); and 3) not to market cotton seed, meal, linters or gin trash from Genuity® Roundup Ready® Flex Pima to a third party who may send such products to countries where those products are not approved.

• To provide Monsanto copies of any records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for seed and chemical transactions. Such records shall be produced following Monsanto's actual (or attempted) oral communication with Grower and not later than seven (7) days after the date of a written request from Monsanto.

• To identify and to allow Monsanto and its representatives access to land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein. Such inspection, examination or sampling shall be available to Monsanto and its representatives only after Monsanto delivers or mails to the Grower a written notice at least seven (7) days in advance, and Monsanto also has reasonably attempted to discuss the visits with the Grower in advance of the visit.

*[The Agreement continues on the reverse side of this page.]*

**GROWER SIGNATURE AND DATE REQUIRED**

Name  Jason J. Canjar    Date  11/11/13

Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

# Attachment 3



MONSANTO
800 North Lindbergh Blvd.
Mail Zone E3NA
St. Louis, MO 63167

PRESORTED STD
U.S. POSTAGE
PAID
DENVER, CO
PERMIT NO. 2393

IMPORTANT

# 2020

## Stewardship Information



MONSANTO
800 North Lindbergh Blvd.
Mail Zone E3NA
St. Louis, MO 63167
www.cropscience.bayer.us

Dear Valued Customer,

Thank you for your past purchase of seed containing Monsanto[1] Technologies. We would like to express our sincere appreciation for your business. As a company focused on agriculture, we understand that our success depends on your success, and we hope that the upcoming 2020 cropping season is rewarding for you.

This communication highlights important information about our agricultural biotechnology traits and seed products. The full 2020 Technology Use Guide (TUG), including the updated terms and conditions of the Technology Stewardship Agreement (TSA), can be downloaded at **tug.bayer.com**, or a printed copy can be requested by calling **1-800-768-6387**.

Please carefully review the TUG before planting to understand the importance of your role in proper stewardship and your obligations when using Monsanto's patented technologies and products. Reading and complying with the TUG is required by the TSA. As always, if you have questions about Monsanto's stewardship efforts, additional information can be found at monsanto.com/products/pages/product-stewardship.aspx, or by contacting us at 1-800-768-6387.

Monsanto continues to invest in new seed technologies to meet your farming needs. We are pleased to inform you of recent additions to the TUG and TSA: XtendFlex® Soybeans[2] and WestBred® single-use wheat varieties. XtendFlex® Soybeans have received full regulatory approval for planting in the United States and are pending approval in certain export markets. Availability is subject to Monsanto's decision to commercialize.

XtendFlex® Soybeans will be the industry's first triple-stacked soybean product with tolerance to dicamba, glyphosate and glufosinate. Built on Roundup Ready 2 Xtend® Technology, the addition of glufosinate tolerance will increase farmers' flexibility and provide a choice of three effective herbicides to support the way they manage their fields' unique weed challenges. Farmers can continue to expect the same high yield potentials they have seen from Roundup Ready 2 Xtend® Soybeans.

Please refer to the 2020 versions of the TUG and TSA for the terms and conditions that apply to seed containing Monsanto Technologies, FGI Technologies and KWS Technologies as well as WestBred® single-use wheat varieties. The TUG also contains information on Insect Resistance Management obligations such as refuge requirements if you are planting *B.t.* corn or cotton.

As a reminder, any seed you acquire is for your use only and cannot be given, sold or transferred to others. Additionally, you cannot save or clean any seed produced from the seed you purchased for planting and cannot supply seed produced from your purchased seed to anyone else. We would like to highlight a change to the TSA, which specifies the liquidated damages as $250 per infringing unit of soybean, $1,000 per infringing unit of herbicide-tolerant cotton, and $2,000 per infringing unit of insect-protected/herbicide-tolerant cotton should seed be saved and planted.

A grower license is an important stewardship requirement for access to Monsanto's industry-leading trait product portfolio. Monsanto uses the online AgCelerate Stewardship Platform, which is an industry-wide licensing solution that helps growers and retailers manage their licensing requirements. If you have not already done so, please sign a TSA or verify your grower information at **www.AgCelerate.com**. More information regarding your license and current TSA requirements can be found at the AgCelerate website or by calling 1-800-768-6387. If you have already signed a TSA, your 2020 Technology ID Card will be provided in a separate mailing.

We appreciate your business and will continue to work hard to meet your farming needs.

Sincerely,

*Mark E. Groth*

Mark E. Groth
North America Commercial Stewardship

---

[1] Monsanto is a member of the Bayer Group.

[2] **Commercialization of XtendFlex® soybeans is dependent on multiple factors, including successful conclusion of the regulatory process. The information presented herein is provided for educational purposes only and is not and shall not be construed as an offer to sell. Soybeans with XtendFlex® Technology contain genes that confer tolerance to glyphosate, glufosinate and dicamba. Glyphosate** will kill crops that are not tolerant to glyphosate. **Dicamba** will kill crops that are not tolerant to dicamba. **Glufosinate** will kill crops that are not tolerant to glufosinate. Contact your seed brand dealer or refer to the Monsanto Technology Use Guide for recommended weed control programs.

Monsanto®, Roundup Ready®, Roundup Ready 2 Xtend®, VaporGrip®, WestBred®, XtendFlex® and XtendiMax® are registered trademarks of Bayer Group. LibertyLink® and the Water Droplet Design® are registered trademarks of BASF Corporation. ©2020 Bayer Group. All rights reserved.

# Attachment 4



# 2020 TECHNOLOGY STEWARDSHIP AGREEMENT
*(Limited Use License)*

**Form Number**

**20000001**

Please mail this signed 2020 Technology Stewardship Agreement to: DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679
**FOR FASTER AGREEMENT APPROVAL, COMPLETE THE FORM ELECTRONICALLY AT AGCELERATE.COM.**

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Technology Stewardship Agreement (TSA) you must be the operator/grower for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, and all individuals and entities having an ownership interest in any entities for which you obtain Seed, and that Monsanto Company, a member of the

Bayer Group, ("Monsanto") or a court has not barred any of those individuals or entities from obtaining this limited-use license or accessing Seed. Your name must be filled in and must match the signature below. This Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's headquarters in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

**Grower's Full Legal Name** (First/Middle/Last)   Dr. ☐   Mr. ☐   Mrs. ☐   Ms. ☐   Suffix (Sr, Jr, II, III) ☐

**Farm Business Name**

**Grower's Mailing Address**

**Farm Physical Address**

**Grower's City**          **State**   **Zip**

**Farm City**          **State**   **Zip**

**Office Phone** (include area code)          **Fax** (include area code)

**Last Four of Social Security #**    **Role:** ☐ Operator   ☐ Owner/Operator   ☐ Farm Manager
X X X - X X -          ☐ Other

**Cell Phone** (include area code)          **Email**

If the above information changes, Grower agrees to promptly update this information via AgCelerate.com or by calling 1-800-768-6387, option 3.

## SEED SUPPLIERS

**Business Name**          **Area Code**   **Phone**

**City**          **State**   **Zip**

**Business Name**          **Area Code**   **Phone**

**City**          **State**   **Zip**

---

**This Technology Stewardship Agreement ("Agreement") is entered into between you ("Grower") and Monsanto Company and consists of the terms on this page and on the reverse side of this page and any applicable Riders.**

This Agreement grants Grower a limited license to use the following technologies and products in accordance with the terms of this Agreement.

**Canola Products**
Roundup Ready® Spring Canola
Roundup Ready® Winter Canola
TruFlex™ Canola with
    Roundup Ready® Technology
TruFlex™ Canola with
    Roundup Ready® and LibertyLink®
    Technologies*
DEKALB® LibertyLink® Canola*

**Corn Products**
Roundup Ready® Corn 2
DroughtGard® Hybrids with
    Roundup Ready® Corn 2
DroughtGard® Hybrids with
    VT Double PRO® Corn
VT Double PRO® Corn
VT Double PRO® RIB Complete®
    Corn Blend
DroughtGard® Hybrids with VT Double
    PRO® RIB Complete® Corn Blend

VT Triple PRO® Corn
DroughtGard® Hybrids with
    VT Triple PRO® Corn
VT Triple PRO® RIB Complete®
    Corn Blend
DroughtGard® Hybrids with VT Triple
    PRO® RIB Complete® Corn Blend
Trecepta™ Corn
Trecepta™ RIB Complete® Corn Blend
SmartStax® Corn
SmartStax® RIB Complete® Corn Blend
Performance Series® Sweet Corn

**Cotton Products**
Bollgard II® Cotton
Bollgard II® with Roundup Ready®
    Flex Cotton
Roundup Ready® Flex Cotton
Bollgard II® XtendFlex® Cotton
Bollgard 3 XtendFlex® Cotton
XtendFlex® Cotton

**Soybean Products**
Roundup Ready 2 Xtend® Soybeans
Roundup Ready 2 Yield® Soybeans
Roundup Ready 2 Yield®
    Roundup Ready 2 Yield®
    Technology
XtendFlex® Soybeans**

**Wheat Products**
WestBred® Single Use
    Wheat Varieties

This Agreement also grants Grower a limited license to use Monsanto patented germplasm and Monsanto Plant Variety Protection rights and any future seed technologies developed, licensed or owned by Monsanto that are made available to Grower ("Monsanto Technologies"). Seed containing Monsanto Technologies is referred to herein as "Seed". The licensed U.S. patents, and/or Plant Variety Protection (PVP) certificates and/or WestBred® single use wheat varieties for Monsanto Technologies can be found at the following web page: www.monsantotechnology.com and on the product label.

**This Agreement also includes an Alfalfa Rider and a Sugarbeet Rider, attached herein, which is between Grower and Forage Genetics International, LLC ("FGI") and KWS SAAT SE ("KWS"), respectively. The Alfalfa Rider grants Grower a limited license to use Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology. The Sugarbeet Rider grants Grower a limited license to use Roundup Ready® Sugarbeets.**

This Agreement also contains Grower's stewardship responsibilities and requirements associated with the use of Seed and Monsanto Technologies. **In addition, this Agreement provides that any Cotton-related claims by Grower are subject to binding arbitration, as described in Section 4e.**

*For canola products containing the LibertyLink® trait, Grower must hold a valid and current BASF Liberty and Trait Agreement before Grower purchase such products. Product names may change.

**This product has received full approval for planting in the United States and is pending approval for import into certain export markets. Availability is subject to Monsanto's decision to commercialize and the conditions of such commercialization.

**1. GROWER AGREES:**

**a**  To acquire Seed only from authorized seed companies in the United States with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed in the United States.

**b**  To obtain and read before planting and strictly follow the applicable requirements of this Agreement, the Technology Use Guide ("TUG") and, if applicable, the appropriate Insect Resistance Management Grower Guide ("IRM Grower Guide"), as each may be unilaterally amended by Monsanto from time to time, which TUG and IRM Grower Guide are incorporated into and are a part of this Agreement, and to read before planting and strictly follow the requirements of the applicable seed bag and/or tag; to implement an Insect Resistance Management ("IRM") program, if applicable; and to cooperate and comply with these and any additional IRM/Integrated Pest Management ("IPM") programs Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Agreement, and Grower may lose its limited use license to use these products if Grower fails to comply with this Agreement, including by failing to follow the IRM program required by this Agreement. Monsanto further advises Grower to follow the recommendations and best management practices provided in the TUG, IRM Grower Guide and seed bag and/or tag label. Grower may obtain additional copies of the TUG or IRM Grower Guide or IPM information by contacting Monsanto at 1-800-768-6387 or by going to tug.bayer.com.

**c**  To pay all applicable royalties and technology fees for the use of the Monsanto Technologies and applicable fees due Monsanto that are part of, associated with the Seed purchase price or that are invoiced for the Seed. If Grower fails to pay Monsanto or any wholly owned Monsanto subsidiaries for costs of Seed, Monsanto Technologies, and/or royalties, Grower agrees to pay Monsanto default late fees at the rate of 18% per annum (or the maximum allowed by law, whichever is less) plus reasonable attorneys' fees, court costs and all other costs of collection. Monsanto or any affiliate has the right of set-off.

**d**  To use Seed solely for a single planting of a commercial crop in the United States.

**e**  Not to transfer any Seed to any other person or entity for planting, and not to export any Seed.

**f**  Not to save or clean any crop produced from Seed for planting, and not to supply Seed produced from Seed to anyone for planting. Except to the extent specifically permitted by a valid TSA, the planting of any crop or Seed produced from Seed shall constitute infringement of Monsanto's U.S. patents.

**g**  Not to plant and/or clean Seed for seed production unless, and only if, Grower has entered into a valid, written Seed production agreement with a seed company that is licensed by Monsanto to produce Seed (a "Licensee"), which agreement requires Grower to either physically deliver to the Licensee, sell for non-seed purposes or use for non-seed purposes all of the Seed produced; and not to purchase or otherwise obtain from the Licensee any of the Seed produced unless, after physical delivery by Grower to the Licensee, that Seed has been conditioned, packaged and delivered by the Licensee to Grower in the same manner as Seed sold by the Licensee to growers who have not entered into a Seed production agreement.

**h**  Not to plant any Seed, or any Seed produced from Seed, for crop breeding, research, molecular analysis or generation of herbicide or other registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. Monsanto makes available separate license agreements to academic institutions for research.

**i**  To use on crops containing Monsanto Technologies only pesticides labeled for such use and follow current label directions. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY COMPANIES OTHER THAN MONSANTO, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROP(S) CONTAINING MONSANTO TECHNOLOGY. MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING MONSANTO TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE RESULTANT TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES OTHER THAN MONSANTO.

**j**  To accept and continue the obligations of this Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to timely notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Agreement and they must have or obtain their own Technology Stewardship Agreement to harvest or use, transfer or sell the harvested crop.

*[The Agreement continues on the reverse side of this page.]*


**GROWER SIGNATURE AND DATE REQUIRED**

Name          Date

Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

**k** To keep and provide Monsanto and its representatives following Monsanto's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

1. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and grower/dealer/retailer/applicator records for seed and chemical purchases and applications and all documentation required on the chemistry product label or by government regulation; and

2. the identity of, and access to, land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**l** To allow Monsanto to obtain Grower's internet service provider records to validate Grower's electronic signature, if applicable.

**m** To promptly notify Monsanto should any Grower Information provided to Monsanto herein change.

**n** To direct crops or material produced from Seed only to appropriate grain handlers and/or markets to prevent movement to markets where the grain has not yet received regulatory approval for import and to notify such grain handlers that its crop has not yet received that approval. Grower acknowledges that any crop or material produced from Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted, and Grower purchases the Seed with that knowledge.

**2. GROWER RECEIVES:**

**a** A limited use license to purchase and to plant Seed pursuant to the terms of this Agreement in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate, dicamba or glufosinate herbicides over the top of crops as applicable, unless otherwise restricted by law. Monsanto (or the respective licensor) retains ownership of the Monsanto Technologies provided by it, including the gene technologies and varieties. These licenses do not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents (other than the Dow AgroSciences Patent Rights), to use Monsanto Technologies subject to the conditions listed in this Agreement and with respect to alfalfa and/or sugarbeet Seed, the conditions listed in the Alfalfa Rider and/or Sugarbeet Rider. Dow AgroSciences LLC and Agrigenetics, Inc. (collectively "Dow AgroSciences") licenses Grower under its applicable U.S. patents (the "Dow AgroSciences Patent Rights") to use Dow AgroSciences' Event TC1507 and Event DAS 59122-7 to the extent either is present in any SmartStax® Seed obtained by Grower pursuant to this Agreement, with Monsanto being authorized to act on Dow AgroSciences' behalf for this Agreement, subject to the conditions listed in this Agreement.

**c** A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop labeled for use on those crops to control volunteer corn with Roundup Ready® 2 Technology in Grower's crops for the 2020 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix for use on glyphosate-tolerant soybean, cotton, or canola crops.

**3. GENERAL TERMS:**

**a** **Term:** This Agreement will remain in effect until either Grower or Monsanto chooses to terminate the Agreement, as provided below.

**b** **Modification:** Monsanto may unilaterally revise the terms and conditions of this Agreement, including the TUG, IRM Grower Guide, or seed bag, label and/or tag incorporated herein, from time to time. Grower shall verify the currently effective terms of this Agreement at least annually before February 1 at agcelerate.com. Monsanto will notify Grower of any amended terms. If Grower has provided Monsanto an e-mail address in conjunction with this Agreement, Monsanto may send Grower amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of Monsanto Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Agreement.

**c** **Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of Monsanto. If Grower's rights or obligations are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights or obligations. Monsanto may transfer its rights or obligations to any of its corporate affiliates without the consent of Grower.

**d** **Binding Effect:** If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e** **Termination:** Grower may terminate this Agreement effective immediately by delivering written notice to Monsanto. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. Monsanto may terminate this Agreement for any reason, in whole or in part, by delivering written notice to Grower.

Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Seed for a single commercial crop) as to Seed previously purchased or used by Grower.

If Grower breaches the terms of this Agreement, Monsanto may terminate effective immediately Grower's rights under this Agreement. Grower will not be entitled to obtain a future limited-use license from Monsanto unless Monsanto provides Grower with specific written notice expressly recognizing the breach and termination of this Agreement and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Technology Stewardship Agreement and Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Agreement and/or to have infringed one or more of the U.S. patents or PVPs, Grower agrees that, among other things, Monsanto and Dow AgroSciences, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle Monsanto and Dow AgroSciences, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. The parties agree that patent infringement damages are difficult to calculate, and agree that for cotton and soybean Seed that has been saved and planted, patent damages shall be reasonable royalties in the amount of $250 per infringing unit of soybean Seed, $1,000 per infringing unit of herbicide tolerant cotton Seed and $2,000 per infringing unit of insect protected/herbicide tolerant cotton Seed. The parties agree that the royalty damage may, like other terms of this license, be modified (increased) in subsequent updates. Patent infringement damages for other infringing activities (including but not limited to patent infringement pertaining to Seed other than cotton or soybean Seed) may be separately calculated.

**f** **Attorneys' Fees:** If Grower is found by any court to have infringed one or more of the U.S. patents or PVPs covering Monsanto Technologies or otherwise to have breached this Agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) and Dow AgroSciences, as appropriate, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.

**g** **Governing Law:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**h** **Waiver:** The failure of Monsanto or any owners of patents or PVPs to exercise one or more of its rights under this Agreement on one or more occasions shall not be deemed a waiver on the part of Monsanto or such patent or PVP owner to exercise such right(s) on any subsequent occasion.

**i** **Entire Agreement:** This Agreement, along with provisions in the TUG, IRM Grower Guide, and/or on the seed bag and/or tag, all of which are hereby expressly incorporated into this Agreement, encompasses the entire agreement of the parties, and supersedes all previous understandings and agreements between the parties, whether oral or written. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by Monsanto.

**j** **Privacy:** Monsanto and its affiliates may collect, use and disclose personal information, including the Grower Information provided on Page 1 and any information related to the performance of this Agreement, such as information about the use of Monsanto products and services, preferences and feedback, and any communications with Monsanto, to assist Monsanto in establishing and maintaining a business relationship with Grower, including, for example, to: (i) better understand Grower's needs and preferences; (ii) enable Monsanto to operate and manage its businesses and operations (including research and development of new and existing products and services and offering incentives to retailers to make products and services available); and (iii) periodically send marketing materials, news/updates, and other information about certain products, services, events, and other matters that may be of interest to you. For more information about how Monsanto handles personal information, please read Monsanto's Privacy Statement, which may be updated from time to time in accordance with its terms, at https://www.cropscience.bayer.us/privacy-statement.

**4. GROWER CLAIMS AND REMEDIES:**

**a** **Notice requirement:** As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed regarding performance or non-performance of Monsanto Technologies or Seed, Grower must provide a written, prompt, and timely notice to Monsanto (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b** **Limited Warranty and Disclaimer of Warranties:** Monsanto warrants the Monsanto Technologies licensed hereunder only to the extent specifically set forth on the seed bag and/or tag, and warrants that the Monsanto Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED, INCLUDING ANY WARRANTY OF THE NON-INFRINGEMENT OF THIRD PARTY PATENTS AND IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN MONSANTO OR PARTIES AUTHORIZED BY MONSANTO.

**c** **Grower's Exclusive Limited Remedy:** THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**d** **Forum Selection for Non-Cotton-Related Claims Made by Grower and All Other Claims:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI (ANY LAWSUIT MUST BE FILED, IF IN FEDERAL COURT, IN ST. LOUIS, MO, OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO), FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI. THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON-RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES. THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS MONSANTO AND ANY CURRENT OR FUTURE U.S.-BASED WHOLLY-OWNED SUBSIDIARIES OR AFFILIATES OF MONSANTO.

**e** **Binding Arbitration for Cotton-Related Claims Made by Grower:** Any claim, action or dispute made or asserted by a Grower (or any other person or entity claiming an interest in Grower's cotton crop, hereafter "Grower") against Monsanto, or any person or entity involved in the production, development, distribution, and/or sale of the Seed containing any Monsanto Technology ("seller"), arising out of and/or in connection with this Agreement or the sale or performance of cotton Seed containing Monsanto Technology must be resolved by binding arbitration. The foregoing requirement to arbitrate specifically excludes any claim, action or dispute involving the infringement, validity, or enforceability of a patent or that otherwise arises under the U.S. patent laws. As a condition precedent to asserting any claim, action, or dispute regarding the quality of Monsanto cotton Seed or the agronomic performance of any Monsanto Technology in cotton Seed, Grower must provide notice to Monsanto pursuant to Section 4a of this Agreement. In the event that a claim is not resolved within 30 days after notice is supplied, any party may initiate arbitration. The parties acknowledge that this transaction involves interstate commerce, and agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq., and administered under the Administered Arbitration Rules established by the International Institute for Conflict Prevention and Resolution, Inc. ("CPR"). GROWER MAY ONLY BRING A CLAIM IN ARBITRATION IN GROWER'S INDIVIDUAL CAPACITY AND GROWER WAIVES ANY RIGHT TO DO SO AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OR PUTATIVE CLASS. The arbitration hearing shall be conducted in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. Grower and Monsanto/sellers shall each pay one half of the CPR filing fee and one half of CPR's administrative and arbitrator fees and expenses as they are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility to all CPR fees in the final award. The arbitration proceedings and results shall remain confidential and shall not be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award or as otherwise required by law.

The 2020 Technology Use Guide (TUG) is available at tug.bayer.com.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding Monsanto Technologies or this license, please call 1-800-768-6387.

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. It is a violation of federal and state law to use any pesticide product other than in accordance with its labeling. NOT ALL formulations of dicamba or glyphosate are approved for in-crop use with Roundup Ready 2 Xtend® soybeans. ONLY USE FORMULATIONS THAT ARE SPECIFICALLY LABELED FOR SUCH USES AND APPROVED FOR SUCH USE IN THE STATE OF APPLICATION. Contact the U.S. EPA and your state pesticide regulatory agency with any questions about the approval status of dicamba herbicide products for in-crop use with Roundup Ready 2 Xtend® soybeans or cotton with XtendFlex® Technology.

Commercialization of XtendFlex® soybeans is dependent on multiple factors, including successful conclusion of the regulatory process. The information presented herein is provided for educational purposes only, and is not and shall not be construed as an offer to sell. Soybeans with XtendFlex® Technology contain genes that confer tolerance to glyphosate, glufosinate and dicamba. Glyphosate will kill crops that are not tolerant to glyphosate. Glufosinate will kill crops that are not tolerant to glufosinate. Contact your seed brand dealer or refer to the Technology Use Guide for recommended weed control programs.

Roundup Ready® 2 Technology contains genes that confer tolerance to glyphosate. Roundup Ready 2 Xtend® soybeans contain genes that confer tolerance to glyphosate and dicamba. Cotton with XtendFlex® Technology contains genes that confer tolerance to glyphosate, glufosinate and dicamba. Glyphosate will kill crops that are not tolerant to glyphosate. Glufosinate will kill crops that are not tolerant to glufosinate. Contact your seed brand dealer or refer to the Technology Use Guide for recommended weed control programs.

Insect control technology provided by Vip3A is utilized under license from Syngenta Crop Protection AG. Herculex® is a registered trademark of Dow AgroSciences LLC. Agrisure Viptera® is a registered trademark of a Syngenta group company. LibertyLink® and LibertyLink® and the Water Droplet Design® are trademarks of BASF Corporation. Respect the Refuge and Corn Design® and Respect the Refuge® are registered trademarks of National Corn Growers Association. Bayer, the Bayer Cross, Bollgard II®, Bollgard®, DEKALB®, DroughtGard®, Performance Series®, Respect the Refuge and Cotton Design®, RIB Complete®, Roundup Ready 2 Xtend®, Roundup Ready 2 Yield®, Roundup Ready®, SmartStax®, Tecepta®, TruFlex™, VT Double PRO®, VT Triple PRO®, WestBred®, XtendFlex® and XtendFlex® are trademarks of Bayer Group. ©2019 Bayer Group. All rights reserved. [19-00804/pjt] 5A4N190044

Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

# 2020 ALFALFA RIDER

## TERMS AND CONDITIONS

The following terms and conditions of the Alfalfa Rider (the "Rider") supplement the Technology Stewardship Agreement ("TSA" or the "Agreement"), are enforceable under that Agreement as well as independently and separately enforceable from the Agreement, and are applicable to Grower's purchase or use of Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology. This Rider is entered into between Grower and Forage Genetics International, LLC ("FGI") and consists of the terms and conditions set forth below. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.

This Rider grants Grower a limited license to use the following technologies in accordance with the terms of this Rider: Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology, patented alfalfa germplasm and Plant Variety Protection rights owned or exclusively licensed to FGI and any future seed technologies developed, licensed or owned by FGI that are made available to Grower ("FGI Technologies"), with Monsanto Company, a member of the Bayer Group ("Monsanto"), authorized to act on FGI's behalf. Seed containing FGI Technologies is collectively referred to herein as "Alfalfa Seed". The licensed U.S. patents and/or PVP certificates for FGI Technologies can be found at the following web page: monsantotechnology.com and/or on the product label.

This Rider also contains Grower's stewardship responsibilities and requirements associated with the use of Alfalfa Seed and FGI Technologies.

### 1. GROWER AGREES:

**a** To acquire Alfalfa Seed only from authorized seed companies in the United States with technology license(s) from FGI for the applicable FGI Technology(ies) or from a licensed company's dealer authorized to sell such licensed Alfalfa Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of the Technology Use Guide ("TUG") and, if applicable, the appropriate Insect Resistance Management Grower Guide ("IRM Grower Guide") and seed bag tag, as each may be amended from time to time, which TUG, IRM Grower Guide and seed bag tag are incorporated into and are a part of this Rider; to implement an Insect Resistance Management ("IRM") program, if applicable; and to cooperate and comply with these and any additional IRM/Integrated Pest Management ("IPM") programs FGI or Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Rider, and Grower may lose its limited use license to use these products if Grower fails to follow the IRM program required by this Rider. FGI further advises Grower to follow the recommendations provided in the TUG, IRM Grower Guide and seed bag tag. Grower may obtain additional copies of the TUG or IRM Grower Guide or IPM information by contacting Monsanto at 1-800-768-6387 or by going to tug.bayer.com.

**c** To pay all applicable royalties and technology fees for the use of the FGI Technologies or the Alfalfa Seed, as well as applicable fees due FGI that are part of, associated with, or invoiced as part of the Alfalfa Seed purchase price. If Grower fails to pay FGI or any wholly owned FGI subsidiaries, for costs of Alfalfa Seed, FGI Technologies, and/or royalties, Grower agrees to pay FGI default late fees at the rate of 18% per annum (or the maximum allowed by law, whichever is less) plus reasonable attorneys' fees, court costs and all other costs of collection. FGI or any affiliate has the right of set-off.

**d** To use Alfalfa Seed solely for a commercial crop in the United States as provided below. Grower may use a single planting of Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology for multiple cuttings.

**e** Only to plant HarvXtra® Alfalfa with Roundup Ready® Technology in the United States, with the following states subject to execution of an additional FGI Seed and Feed Use Agreement: Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, Oregon, Utah, Washington and Wyoming (collectively the "Western States").

**f** That all planting of HarvXtra® Alfalfa with Roundup Ready® Technology in the Western States is permissible only upon separate execution by the Grower of a HarvXtra® Alfalfa with Roundup Ready® Technology Seed and Feed Use Agreement ("FGI Seed and Feed Use Agreement") that includes provisions limiting HarvXtra® with Roundup Ready® Technology seed and crops or hay products produced from HarvXtra® Alfalfa with Roundup Ready® Technology to only United States domestic use.

**g** All terms of the FGI Seed and Feed Use Agreement are incorporated into and made enforceable under this Rider.

**h** Not to transfer any Alfalfa Seed to any other person or entity for planting, and not to export any Alfalfa Seed.

**i** Not to save or clean any crop produced from Alfalfa Seed for planting, and not to supply seed produced from Alfalfa Seed to anyone for planting. Except to the extent specifically permitted by a valid TSA, the planting of any crop or Seed produced from Seed shall constitute infringement of FGI's and/or Monsanto's U.S. patents.

**j** Not to plant and/or clean Alfalfa Seed for seed production unless, and only if, Grower has entered into a valid, written Alfalfa Seed production agreement with a seed company that is licensed by FGI to produce Alfalfa Seed (a "Licensee"), which agreement requires Grower to either physically deliver to the Licensee, sell for non-seed purposes or use for non-seed purposes all of the Seed produced; and not to purchase or otherwise obtain from the Licensee any of the Seed produced unless, after physical delivery by Grower to the Licensee, that Seed has been conditioned, packaged and delivered by the Licensee to Grower in the same manner as Seed sold by the Licensee to growers who have not entered into a Seed production agreement.

**k** Not to plant any Alfalfa Seed, or any seed produced from Alfalfa Seed, for crop breeding, research, molecular analysis or generation of herbicide or other registration data. Grower may not conduct research on Grower's crop produced from Alfalfa Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. FGI makes available separate license agreements to academic institutions for research.

**l** To use on crops containing FGI Technology only pesticides labeled for such use and follow current label directions. FGI DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROPS CONTAINING FGI TECHNOLOGY. FGI SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING FGI TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO FGI TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**m** To accept and continue the obligations of this Rider on any new land purchased or leased by Grower that has Alfalfa Seed planted on it by a previous owner or possessor of the land; and to timely notify in writing purchasers or lessees of land owned by Grower that has Alfalfa Seed planted on it that the FGI Technology is subject to this Rider and they must have or obtain their own Technology Stewardship Agreement, Rider and FGI Seed and Feed Use Agreement, if applicable.

**n** To keep and provide to FGI and its representatives following FGI's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

   1. copies of all receipts, receipts, or other documents that could be relevant to Grower's performance of this Rider, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, grower/dealer/retailer/applicator records for seed and chemical purchases, and applications and all documentation required on the chemistry product label or by government regulation; and

   2. the identity of, and access to, land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**o** To allow FGI to obtain Grower's internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

**p** To promptly notify FGI or Monsanto should any Grower Information provided herein change.

**q** To direct any crops or hay products produced from HarvXtra® Alfalfa with Roundup Ready® Technology only to United States domestic use, except where FGI expressly grants permission in writing. Grower further agrees that it will only sell or convey such crops or hay products to persons or entities that agree they will not ship such crops or hay products outside the United States, except where FGI expressly grants permission in writing.

**r** Grower acknowledges that any crop or hay product produced from Alfalfa Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted, and Grower purchases the Alfalfa Seed with that knowledge.

**s** Until FGI expressly grants permission in writing (which will be withheld pending necessary import approvals), not to export, or to sell or convey to any person or entity that intends to export, Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology seed or crops or hay products produced from such seed to export countries where all necessary regulatory approvals have not been granted. In addition, due to the unique cropping practices Grower agrees not to plant Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology in Imperial County, California, pending import approvals and until FGI grants express permission in writing for such planting. Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology seed may not be planted for the production of sprouts.

### 2. GROWER RECEIVES FROM FGI:

**a** A limited use license to purchase and to plant Alfalfa Seed pursuant to the terms of this Rider in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate herbicides over the top of crops as applicable, unless otherwise restricted by law. FGI (or the respective licensor) retains ownership of the FGI Technologies owned by it, including the gene technologies and varieties. These licenses do not authorize Grower to plant Alfalfa Seed in the United States that has been purchased in another country or plant Alfalfa Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents, to use FGI Technologies subject to the conditions listed in this Rider.

**c** A limited use license to prepare and apply on glyphosate-tolerant alfalfa (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop labeled for use on those crops to control volunteer corn with Roundup Ready® 2 Technology in Grower's crops for the 2020 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix for use on glyphosate-tolerant alfalfa.

### 3. GENERAL TERMS:

**a Term:** This Rider will remain in effect until either Grower or FGI chooses to terminate the Rider, as provided below.

**b Modification:** FGI or Monsanto may unilaterally revise the terms and conditions of this Rider, including the Agreement and TUG incorporated herein, from time to time. Grower shall verify the currently effective terms of this Rider at least annually before February 1 at agcelerate.com. FGI or Monsanto will notify Grower of any amended terms. If Grower has provided FGI or Monsanto an e-mail address in conjunction with the Agreement or this Rider, FGI or Monsanto may send Rider amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of FGI Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Rider.

**c Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of FGI. If Grower's rights or obligations are transferred with FGI's consent or by operation of law, this Rider is binding on the person or entity receiving the transferred rights or obligations.

**d Binding Effect:** If any provision of this Rider is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e Termination:** Grower may terminate this Rider effective immediately by delivering written notice to FGI. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. FGI may terminate this Rider for any reason, in whole or in part, by delivering written notice to Grower. Upon termination, Grower's responsibilities and the other terms herein shall survive for such period of time as limited to Grower's obligation to use Alfalfa Seed for a single commercial crop) as to Alfalfa Seed previously purchased or used by Grower. If Grower breaches the terms of this Rider, FGI may terminate effective immediately Grower's rights under this Rider. Grower will not be entitled to obtain a future limited-use license from FGI unless FGI provides Grower with specific written notice expressly recognizing the breach and termination of this Rider and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Technology Stewardship Agreement or Rider and FGI's or Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Rider and/or to have infringed one or more of the U.S. patents or PVPs covering Monsanto Technologies or FGI Technologies, Grower agrees that, among other things, FGI, and Monsanto, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Alfalfa Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle FGI, and Monsanto, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f Attorneys' Fees:** If Grower is found by any court to have infringed one or more of the U.S. patents or PVPs covering Monsanto Technologies or FGI Technologies, or otherwise to have breached any term of this Rider, Grower agrees to pay FGI and Monsanto, as appropriate, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.

**g Governing Law:** This Rider and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**h Waiver:** The failure of FGI or Monsanto or any owners of patents or PVPs to exercise one or more of its rights under this Agreement on one or more occasions shall not be deemed a waiver on the part of FGI or Monsanto or such patent owner to exercise such right(s) on any subsequent occasion.

**i Entire Agreement:** This Agreement and Rider, along with provisions in the TUG and/or on bag tags and the terms of the FGI Seed and Feed Use Agreement, if applicable, all of which are hereby expressly incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Alfalfa Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by FGI or Monsanto.

### 4. GROWER CLAIMS AND REMEDIES:

**a Notice requirement:** As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against FGI and/or any seller of Alfalfa Seed regarding performance or non-performance of FGI Technologies or Alfalfa Seed, Grower must provide a written, prompt, and timely notice to FGI (regarding performance or non-performance of the FGI Technologies) and to the seller of any Alfalfa Seed (regarding performance or non-performance of the Alfalfa Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the FGI Technology and/or the Alfalfa Seed. The notice shall include a statement setting forth the nature of the claim, name of the FGI Technology, and Alfalfa Seed products. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b Limited Warranty and Disclaimer of Warranties:** FGI warrants the FGI Technology licensed hereunder as set forth on the seed bag and/or tag to the extent specifically warranted thereon, or, to the extent specifically warranted therein, that the FGI Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology contained in planting Alfalfa Seed that has been purchased from FGI and seed companies licensed by FGI or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, FGI MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN FGI.

**c Grower's Exclusive Limited Remedy:** THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF FGI OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF ALFALFA SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE ALFALFA SEED INVOLVED OR, AT THE ELECTION OF FGI OR THE SEED SELLER, THE REPLACEMENT OF THE ALFALFA SEED. IN NO EVENT SHALL FGI OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**d Forum Selection for Claims Made by Grower and All Other Claims:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI (ANY LAWSUIT MUST BE FILED, IF IN FEDERAL COURT, IN ST. LOUIS, MO, OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO), FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE ALFALFA SEED OR THE FGI TECHNOLOGIES. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI. THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS FGI, ITS CURRENT OR FUTURE AFFILIATES AND ANY CURRENT OR FUTURE U.S.-BASED WHOLLY-OWNED SUBSIDIARIES OF FGI.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the FGI Technologies or this license, please call 1-800-768-6387.

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Roundup Ready® crops contain genes that confer tolerance to glyphosate. Glyphosate herbicides will kill crops that are not tolerant to glyphosate. Roundup Ready® is a registered trademark of Bayer Group. HarvXtra® is a registered trademark of Forage Genetics International, LLC. All other trademarks are the property of their respective owners. ©2019 Bayer Group. 5AAN190344

# 2020 SUGARBEET RIDER

## TERMS AND CONDITIONS

The following terms and conditions of the Sugarbeet Rider (the "Rider") supplement the Technology Stewardship Agreement ("TSA" or the "Agreement"), are enforceable under that Agreement as well as independently and separately enforceable from the Agreement, and are applicable to Grower's purchase or use of Roundup Ready® Sugarbeets. This Rider is entered into between Grower and KWS SAAT SE ("KWS") and consists of the terms and conditions set forth below. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.

This Rider grants Grower a limited license to use Roundup Ready® Sugarbeets in accordance with the terms of this Rider ("KWS Technologies"), with respect to which KWS has authorized Monsanto Company, a member of the Bayer Group ("Monsanto"), to act on KWS's behalf in accordance with the parties' commercial services agreement, that are made available to Grower. Seed containing KWS Technologies is collectively referred to herein as "Sugarbeet Seed." The licensed U.S. patents for KWS Technologies can be found at the following web page: monsantotechnology.com and/or on the product label.

This Rider also contains Grower's stewardship responsibilities and requirements associated with the use of Sugarbeet Seed and KWS Technologies.

### 1. GROWER AGREES:

**a** To acquire Sugarbeet Seed only from authorized seed companies in the United States with technology license(s) from KWS for the applicable KWS Technology(ies) or from a licensed company's representative authorized to sell such licensed Sugarbeet Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of the Technology Use Guide ("TUG") and seed package label, as each may be obtained from time to time, which TUG and seed package label are incorporated into and are a part of this Rider; and to cooperate and comply with these and any additional stewardship programs KWS or Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Rider, and Grower may lose its limited use license to use these products if Grower fails to follow the stewardship guidelines required by this Rider. KWS further advises Grower to follow the recommendations provided in the TUG and seed package label. Grower may obtain additional copies of the TUG by contacting Monsanto at 1-800-768-6387 or by going to tug.bayer.com.

**c** To use Sugarbeet Seed solely for a commercial crop in the United States as provided below. Grower may use a single planting of Roundup Ready® Sugarbeets to be processed for sugar, for energy production, or for animal feed.

**d** Not to transfer any Sugarbeet Seed to any other person or entity for planting, and not to export any Sugarbeet Seed.

**e** Not to plant any Sugarbeet Seed, or any seed produced from Sugarbeet Seed, for crop breeding, research, molecular analysis, generation of herbicide, or other registration data. Grower may not conduct research on Grower's crop produced from Sugarbeet Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.

**f** To use on crops containing KWS Technology only pesticides labeled for such use and follow current label directions. KWS DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROPS CONTAINING KWS TECHNOLOGY. KWS SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING KWS TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO KWS TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**g** To keep and provide to KWS and its representatives following KWS's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

1. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Rider, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and grower/dealer/retailer/applicator records for seed and chemical purchases and applications and all documentation required on the chemistry product label or by government regulation; and

2. the identity of, and access to, land farmed by or at the direction of Grower and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**h** To promptly notify KWS and Monsanto should any Grower Information provided herein change.

### 2. GROWER RECEIVES FROM KWS:

**a** A limited use license to purchase and to plant Sugarbeet Seed pursuant to the terms of this Rider in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate herbicides over the top of crops as applicable, unless otherwise restricted by law. KWS (or the respective licensor) retains ownership of the KWS Technologies owned by it, including the gene technologies. These licenses do not authorize Grower to plant Sugarbeet Seed in the United States that has been purchased in another country or plant Sugarbeet Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents, to use KWS Technologies subject to the conditions listed in this Rider.

### 3. GENERAL TERMS:

**a Term:** This Rider will remain in effect until either Grower or KWS chooses to terminate the Rider, as provided below.

**b Modification:** KWS may unilaterally revise the terms and conditions of this Rider, including the Agreement and TUG incorporated herein, from time to time. Grower shall verify the currently effective terms of this Rider at least annually before February 1 at agcelerate.com. KWS or Monsanto will notify Grower of any amended terms. If Grower has provided KWS or Monsanto an e-mail address in conjunction with the Agreement or this Rider, KWS or Monsanto may send Rider amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of KWS Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Rider.

**c Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of KWS. If Grower's rights or obligations are transferred with KWS's consent or by operation of law, this Rider is binding on the person or entity receiving the transferred rights or obligations.

**d Binding Effect:** If any provision of this Rider is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e Termination:** Grower may terminate this Rider effective immediately by delivering written notice to KWS. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. KWS may terminate this Rider for any reason, in whole or in part, by delivering written notice to Grower. Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Sugarbeet Seed for a single commercial crop) as to Sugarbeet Seed previously purchased or used by Grower. If Grower breaches the terms of this Rider, KWS may terminate effective immediately Grower's rights under this Rider. Grower will not be entitled to obtain a future limited-use license from KWS unless KWS provides Grower with specific written notice expressly recognizing the breach and termination of this Rider and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Technology Stewardship Agreement or Rider and KWS's or Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Rider and/or to have infringed one or more of the Sugarbeet Patent Rights, Grower agrees that, among other things, KWS shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Sugarbeet Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle KWS to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f Attorneys' Fees:** If Grower is found by any court to have infringed one or more of the Sugarbeet Patent Rights or otherwise to have breached any term of this Rider, Grower agrees to pay KWS, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.

**g Governing Law and Forum:** This Rider and the parties' relationship shall be governed by the laws of the State of Minnesota and the United States (without regard to the choice of law rules). Any dispute arising out of or relating to this Rider, the parties' relationship, KWS technologies, or the Sugarbeet Seed shall be commenced and maintained exclusively in the state or federal courts of Minnesota. Grower waives any objection to venue or inconvenience of forum and voluntarily submits to the jurisdiction of these courts.

**h Waiver:** The failure of KWS or any owners of patents to exercise one or more of its rights under this Rider on one or more occasions shall not be deemed a waiver on the part of KWS or such patent owner to exercise such right(s) on any subsequent occasion.

**i Entire Agreement:** This Agreement and Rider, along with provisions in the TUG and/or on package labels, all of which are hereby expressly incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Sugarbeet Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by KWS or Monsanto.

### 4. GROWER CLAIMS AND REMEDIES:

**a Notice requirement:** As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against KWS and/or any seller of Sugarbeet Seed regarding performance or non-performance of KWS Technologies or Sugarbeet Seed, Grower must provide a written, prompt, and timely notice to KWS (regarding performance or non-performance of the KWS Technologies) and to the seller of any Sugarbeet Seed (regarding performance or non-performance of the Sugarbeet Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the KWS Technology and/or the Sugarbeet Seed. The notice shall include a statement setting forth the nature of the claim, name of the KWS Technology, and Sugarbeet Seed product. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b Limited Warranty and Disclaimer of Warranties:** KWS warrants the KWS Technology licensed hereunder only as specifically set forth on the seed container and/or package label and warrants that the KWS Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Sugarbeets contained in planting Sugarbeet Seed that has been purchased from KWS and seed companies licensed by KWS or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, KWS MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN KWS.

**c Grower's Exclusive Limited Remedy:** THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF KWS OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SUGARBEET SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SUGARBEET SEED INVOLVED OR, AT THE ELECTION OF KWS OR THE SEED SELLER, THE REPLACEMENT OF THE SUGARBEET SEED. IN NO EVENT SHALL KWS OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the KWS Technologies or this license, please call 1-800-768-6387.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate. Glyphosate herbicides will kill crops that are not tolerant to glyphosate.
Roundup Ready® is a registered trademark of Bayer Group. All other trademarks are the property of their respective owners. ©2019 Bayer Group 5A4N190044

# Attachment 5

# 2012 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
*(Limited Use License)*

**Form Number**
120159776

**PLEASE MAIL THE SIGNED 2012 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

## INFORMATION (please print)

Please complete this section with your [...] Stewardship Agreement ("Agreement") [...] grow plants from Seed (as defined belo [...] hereby bind to this Agreement yourself, and entities having an ownership intere [...]

Monsanto Company has not barred any of those individuals or entities from obtaining this limited-use license. Your name must be filled in and must match the signature below. This Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's headquarters in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

**Please check one of the following:** NEW LICENSE ☐   RENEWAL ☐

**Grower's Full Legal Name** (First/Middle/Last)   Dr.  Mr.  Mrs.  Ms.   Suffix (Sr, Jr, II, III)
ROBERT C SCHOFIELD

**Grower's Mailing Address** (no P.O. Boxes)
7277 Prospect Road

**Grower's City**   State  Zip
Westfield   NY  14787

**Area Code   Home Phone**      **Fax**

**Area Code   Cell Phone**      **Email**

**Farm Business Name**

**Farm Physical Address** (as listed with the FSA)

**Farm City**   State  Zip

**Last Four of Social Security #**   **Role**
XXX-XX  0640   Operator ☐  Owner/Operator ☐  Farm Manager ☐  Other ☐

If the above information changes, Grower agrees promptly to notify Monsanto of the changes by calling the Grower Licensing Team at 1-800-768-6387, Option #3.

## SEED SUPPLIER

**Business Name**
Growmark FS LLC

**City**   State  Zip
Kennedy   NY  14747

**Area Code   Phone**
716  664  3294

---

**THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK**

JUL 26 2012

Lic. #: 775816   Batch #: 15478   Date:

---

This Monsanto Technology/Stewardship Agreement is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page.

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Genuity® Bollgard II® cotton, Genuity® Bollgard II® with Roundup Ready® cotton, Genuity® Bollgard II® with Roundup Ready® Flex cotton, Genuity® Roundup Ready 2 Yield® soybeans, Genuity® Roundup Ready® Canola, Genuity® Roundup Ready® Alfalfa, Roundup Ready® Corn 2 corn, Roundup Ready® Cotton, Genuity® Roundup Ready® Flex cotton, Roundup Ready® Soybeans, Genuity® Roundup Ready® Sugarbeets, YieldGard® Corn Borer corn, YieldGard® Corn Borer with Roundup Ready® Corn 2 corn, Genuity® VT Double PRO® corn, YieldGard VT Rootworm/RR2® corn, YieldGard VT Triple® corn, Genuity® VT Triple PRO® corn, Performance Series™ Sweet Corn, Vistive® low linolenic soybeans, Genuity® SmartStax® corn, Genuity® SmartStax® RIB Complete™ corn, Monsanto patented germplasm and Monsanto Plant Variety Protection rights ("Monsanto Technologies"). Seed containing Monsanto Technologies are referred to herein as ("Seed"). This Agreement also contains Grower's stewardship responsibilities and requirements associated with the use of Seed and Monsanto Technologies.

**1. GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**2. BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:** Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto's Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**3. FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

**4. GROWER AGREES:**
- To accept and continue the obligations of this Monsanto Technology/Stewardship Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land, and to notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Monsanto Technology/Stewardship Agreement and they must have or obtain their own Monsanto Technology/Stewardship Agreement.
- To read and follow the applicable Technology Use Guide ("TUG") and the Insect Resistance Management Grower Guide ("IRM Grower Guide") which are incorporated into and are a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG and the IRM Grower Guide as they may be amended from time to time.

- To implement an Insect Resistance Management ("IRM") program as specified in the applicable Genuity® Bollgard II® cotton, Genuity® corn and YieldGard® corn sections of the most recent IRM Grower Guide and to cooperate and comply with these IRM programs.
- To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed
- To acquire Seed from authorized seed companies (or their authorized dealers) with the applicable license(s).
- To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
- Not to save or clean any crop produced from Seed for planting, not to supply Seed produced from Seed to anyone for planting, not to plant seed for production other than for Monsanto or a Monsanto licensed seed company under a seed production contract.
- Not to transfer any Seed containing patented Monsanto Technologies to any other person or entity for planting.
- To plant and/or clean Seed for Seed production, if and only if, Grower has entered into a valid, written Seed production agreement with a Seed company that is licensed by Monsanto to produce Seed. Grower must either physically deliver to that licensed Seed Company or must sell for non-seed purposes or use for non-seed purposes all of the Seed produced pursuant to a Seed production agreement.
- Grower may not plant and may not transfer to others for planting any Seed that the Grower has produced containing patented Monsanto Technologies for crop breeding, research, or generation of herbicide registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. Monsanto makes available separate license agreements to academic institutions for research.
- To direct crops produced from Seed to appropriate markets as necessary. Any grain or material produced from Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted.
- Growers agrees to lawfully plant Genuity® Roundup Ready® Alfalfa, to direct any product produced from a Genuity® Roundup Ready® Alfalfa seed or crops (including hay and hay products) only to those countries where regulatory approvals have been granted, and to grow and manage Genuity® Roundup Ready® Alfalfa in accordance with the TUG. Pending import approvals in China, Grower agrees not to export Genuity® Roundup Ready® Alfalfa seed or crops (including hay or hay product) to China. In addition, due to the unique cropping practices Grower agrees not to plant Genuity® Roundup Ready® Alfalfa in Imperial County, California, pending import approvals in China and until Monsanto grants express permission for such planting.
- Grower agrees: 1) not to export Genuity® Roundup Ready® Flex Pima cotton seed, meal, linters, or gin trash to Korea pending import approval, 2) to deliver cotton to an Arizona, California, New Mexico, or Texas gin that is on Monsanto's approved list (available at www.genuity.com under the Commodity Marketing section of the Stewardship tab) or to a third party who agrees in writing (copy to Monsanto) to use products for domestic feed use, and 3) not to market cotton seed, meal, linters or gin trash from Genuity® Roundup Ready® Flex Pima to a third party who may send such products to countries where those products are not approved.
- To pay all applicable fees due to Monsanto that are a part of, associated with or collected with the Seed purchase price or that are invoiced for the seed. If Grower fails to pay Monsanto for cotton related Monsanto Technologies, Grower agrees to pay Monsanto default charges at the rate of 14% per annum (or the maximum allowed by law whichever is less) plus Monsanto's reasonable attorneys' fees, court costs and all other costs of collection.
- To provide Monsanto copies of any records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for seed and chemical transactions. Such records shall be produced following Monsanto's actual (or attempted) oral communication with Grower and not later than seven (7) days after the date of a written request from Monsanto.
- To identify and to allow Monsanto and its representatives access to land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein. Such inspection, examination or sampling shall be available to Monsanto and its representatives only after Monsanto's actual (or attempted) oral communication with Grower and after at least seven (7) days prior written request by Monsanto to Grower.

*[The Agreement continues on the reverse side of this page.]*

**GROWER SIGNATURE AND DATE REQUIRED** ▶

Name _R. C. Schofield_     Date _7/19/12_

Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

- To allow Monsanto to obtain Grower's internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

**Performance Series™ Sweet Corn**

- To read and follow the Sweet Corn Technology Use Guide for Performance Series™ Sweet Corn and to abide by and implement Insect Resistance Management requirements on the product tag.
- To direct any fresh product from this product for sale or use in the US, Canada and Mexico. It is a violation of national and international laws to move material containing biotech traits across boundaries into nations where import is not permitted. Grower must talk to Grower's buyers to confirm their uses of this product.
- To use on crops containing Roundup Ready® or Roundup Ready 2 Technology only a labeled Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready® gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready® gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY® CROPS(S). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY® OR GENUITY® ROUNDUP READY® 2 YIELD® CROP(S). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.

**5.   GROWER RECEIVES FROM MONSANTO COMPANY:**

- A limited use license to purchase and to plant Seed in the United States except in any state or county where the products do not have all the necessary approvals and to apply Roundup® agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready®, Genuity® Roundup Ready® or Performance Series Sweet Corn crops. Check with your local Monsanto representative if you have questions about the approval status in your state. Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready® gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement.

- Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower under applicable U.S. patents listed below (other than the Dow AgroSciences Patent Rights), to use Monsanto Technologies subject to the conditions stated in this Agreement. Dow AgroSciences LLC and Agrigenetics, Inc. (collectively "Dow AgroSciences") licenses the Grower under its applicable U.S. patents listed below (the "Dow AgroScience Patent Rights") to use Dow AgroSciences' Event TL 1507 and Event DAS 59122-7 to the extent either is present in any SmartStax Seed being obtained by Grower pursuant to this Agreement, Monsanto being authorized to act on Dow AgroSciences' behalf for this Agreement, subject to the conditions noted in this Agreement. These licenses do not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States. Grower is not authorized to transfer Seed to anyone outside of the U.S.

- Enrollment for participation in Roundup Ready PLUS™ Weed Management Solutions.

- A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, alfalfa, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), Roundup® agricultural herbicides or other glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop to control volunteer Roundup Ready® Corn 2 corn in Grower's crops for the 2012 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

**6.   GROWER UNDERSTANDS:**

- **Monsanto products** are commercialized in accordance with ETS Product Launch Stewardship Guidance, and in compliance with Monsanto's Policy for Commercialization of Biotechnology-Derived Plant Products in Commodity Crops. These products have been approved for import into key export markets with functioning regulatory systems. Any crop or material produced from these products can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted. Growers should talk to their grain handler or product purchaser to confirm their buying position for these products. Excellence Through Stewardship® is a registered trademark of Biotechnology Industry Organization.

- **Performance Series™ Sweet Corn and Genuity® Roundup Ready® Alfalfa** are subject to specific product export requirements.

- **Insect Resistance Management:** When planting any YieldGard® brand corn products, Genuity® brand corn products or Genuity® Bollgard II® cotton products, Grower must implement an IRM program according to the size and distance guidelines specified in the IRM Grower Guide, including any supplemental amendments. Grower may lose Grower's limited use license to use these products if Grower fails to follow the IRM program required by this Agreement. When planting Performance Series Sweet Corn growers must implement the IRM program outlined on the product tag.

- **Crop Stewardship & Specialty Crops:** Refer to the section on Coexistence and Identity Preservation in the TUG for applicable information on crop stewardship and considerations for production of identity preserved crops.

- **Corn Trait Performance:** All hybrids containing Monsanto corn traits (YieldGard® brand corn products, Performance Series Sweet Corn and Roundup Ready® Corn 2 corn) have been screened for the presence of the appropriate protein and have passed that screening prior to commercial sale. YieldGard® Rootworm corn and YieldGard® Plus corn hybrids have achieved industry leading success rates in excess of 99%. A small number of these hybrids may infrequently demonstrate variable levels of performance in fields and not meet grower expectations.

**7.   SPECIAL LIMITATIONS ON PRODUCTS CONTAINING MON 863 (ie. YieldGard® Rootworm corn, YieldGard® Plus corn, YieldGard® Rootworm with Roundup Ready® Corn 2 corn, YieldGard® Plus with Roundup Ready® Corn 2 corn):** The U.S. EPA has prohibited the sale, distribution, and planting of seed containing the MON 863 Event, which includes the Monsanto products YieldGard® Rootworm, YieldGard Rootworm with Roundup Ready® Corn 2, YieldGard® Plus and YieldGard Plus® with Roundup Ready® Corn 2 seed. Any remaining inventory of seed containing the MON 863 Event must be handled in accordance with legal and regulatory requirements (non-treated seed can be sold as grain, and treated seed must be disposed of properly). It is a violation of federal law to sell or distribute an unregistered pesticide.

**8.   GENERAL TERMS:**

Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower acknowledges that Grower has received a copy of Monsanto's TUG and the IRM Grower Guide and/ or Performance Series Sweet Corn TUG and IRM Grower Guide on the product tag. To obtain additional copies of the TUG and/or the IRM Grower Guide, contact Monsanto at 1-800-768-6387 or go to www.monsanto.com. Once effective, this Agreement will remain in effect until either the Grower or Monsanto choose to terminate the Agreement, as provided in Section 9 below. Information regarding new and existing Monsanto technologies, including any additions or deletions to the U.S. patents licensed under this agreement, and any new terms will be mailed to you each year. Continuing use of Monsanto Technologies after receipt of any new terms constitutes Grower's agreement to be bound by the new terms.

**9.   TERMINATION:**

Grower may choose to terminate this Agreement in its entirety effective immediately by delivering written notice to Monsanto. Monsanto may choose to terminate this Agreement in whole or in part by delivering written notice to Grower. Grower must deliver the notice of termination to Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141. If this Agreement is terminated pursuant to such a notice, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Seed for a single commercial crop) as to Seed previously purchased by the Grower.

In the event Grower violates the terms of this Agreement, then the Grower's rights under this Agreement shall automatically terminate. However, Grower's responsibilities and the other terms herein shall survive as to all Seed purchased or used by the Grower (such as but not limited to Grower's obligation to use Seed for a single commercial crop, Grower's obligation to pay Monsanto for its attorneys' fees, costs and other expenses incurred in enforcing its rights under this Agreement, and Grower's agreement to the choice of law and forum selection provisions contained herein). Further, Grower shall not be entitled to obtain a future limited use license from Monsanto unless Monsanto provides Grower with specific written notice expressly recognizing the prior breach and prior termination of the limited use license and expressly granting and/or reissuing the limited use license previously obtained (and terminated) pursuant to this Agreement. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology Stewardship Agreement and Monsanto's issuance of a new license number shall not satisfy the specific written notice requirement above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Agreement and/or to have infringed one or more of the U.S. patents listed below, Grower agrees that, among other things, Monsanto and Dow Agrosciences, as appropriate, shall be entitled to preliminary and permanent injunctions restraining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle Monsanto and Dow Agrosciences, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages. If Grower is found by any court to have infringed one or more of the U.S. patents listed below or otherwise to have breached this Agreement, Grower agrees to pay Monsanto and the licensor Monsanto Technology provider(s) and Dow AgroSciences, as appropriate, their attorneys' fees and costs and other expenses incurred in enforcing rights under this Agreement including, but not limited to, expenses incurred in the investigation of the breach of this Agreement and/or infringement of one or more of the U.S. patents listed herein.

Grower accepts the terms of the following NOTICE REQUIREMENT, LIMITED WARRANTY AND DISCLAIMER OF WARRANTY AND EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of Seed. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bag(s) to Grower's seed dealer.

**10.   NOTICE REQUIREMENT:**

As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed regarding performance or non-performance of Monsanto Technologies or Seed, Grower must provide Monsanto a written, prompt, and timely notice regarding performance or non-performance of the Monsanto Technologies(s) and to the seller of any Seed regarding performance or non-performance of the Seed within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety. Grower must deliver the notice to Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

**11.   LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:**

Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

**12.   GROWER'S EXCLUSIVE LIMITED REMEDY:**

THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call the Monsanto Customer Relations Center at: 1-800-768-6387.

**13.   PLEASE MAIL THE SIGNED 2012 MONSANTO TECHNOLOGY/ STEWARDSHIP AGREEMENT TO:**

Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

**14.   UNITED STATES PATENTS:**

The licensed U.S. patents include: for Genuity II® cotton – 5,362,865; 5,659,122; 5,717,084; 5,728,925; 6,489,542; 6,943,282; 7,064,249; 7,223,907; 7,700,830; for Genuity® Bollgard II® with Roundup Ready® cotton – 5,362,865; 5,659,122; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,489,542; 6,943,282; 7,064,249; 7,223,907; 7,700,830; 7,807,357; 7,820,392; RE39247; for Genuity® Bollgard II® with Roundup Ready® Flex Cotton – 5,362,865; 5,659,122; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,459,542; 6,660,911; 6,941,202; 6,949,696; 7,064,249; 7,112,721; 7,141,722; 7,223,907; 7,381,861; 7,700,830; RE39247; for Genuity® Roundup Ready 2 Yield® Soybeans – 5,717,084; 5,728,925; 6,051,753; 6,660,911; 6,949,696; 7,141,722; 7,608,761; 7,632,985; RE39247; for Genuity® Roundup Ready® Alfalfa – 5,362,865; 5,659,122; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,489,542; RE39247; for Genuity® Roundup Ready® Canola – 5,463,175; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,221,400; 6,958,236; RE37,287; for Roundup Ready® Corn – 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,660,911; 6,949,696; 7,112,721; 7,141,723; 7,381,863; RE39247; for Roundup Ready® Soybeans – 5,717,084; 5,728,925; 6,051,753; 6,083,878; 7,335,816; RE39247; for YieldGard® Corn Borer corn – 5,484,956; 5,593,874; 5,859,347; 6,140,074; for YieldGard® Corn Borer with Roundup Ready® Corn 2 – 5,484,956; 5,154,788; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,830,347; 6,025,545; 6,083,878; 6,331,665; 6,074,629; 6,331,665; 6,734,414; RE39247; for YieldGard® Rootworm corn – 5,484,956; 6,063,597; 6,501,009; 7,408,096; 7,544,862; 7,705,216; for YieldGard® Plus corn – 5,484,956; 5,554,798; 5,593,874; 5,641,876; 6,180,774; 6,501,009; 6,949,696; 7,544,862; for YieldGard® Plus with Roundup Ready® Corn 2 – 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,501,009; 6,825,400; 7,408,096; 7,544,862; 7,582,434; 7,705,216; RE39247; for YieldGard® VT PRO™ – 6,501,733; 6,653,356; for YieldGard® VT Double PRO™ – 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,051,753; 6,083,878; 6,489,542; 6,645,497; 6,713,063; 6,903,285; 6,962,705; 7,064,249; 7,250,501; 7,304,206; 7,544,862; 7,618,942; 7,700,830; 7,297,598; RE39247; for YieldGard® VT Rootworm/RR2™ – 5,554,798; 5,641,876; 5,717,084; 5,728,925; 5,830,347; 6,025,545; 6,063,597; 6,083,878; 6,501,009; 6,825,400; 7,408,096; 7,544,862; RE39247; for YieldGard VT Triple PRO™ and Performance Series™ Sweet Corn – 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,051,753; 6,063,597; 6,083,878; 6,489,542; 6,645,497; 6,713,063; 6,962,705; 7,064,249; 7,070,982; 7,250,591; 7,304,206; 7,544,862; 7,618,942; 7,700,830; 7,297,598; RE39247; for tank mix – 6,239,072; for Drought – 5,641,876; 7,786,353; for Genuity® SmartStax™ – 5,550,318; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,051,753; 6,063,597; 6,083,878; 6,489,542; 6,645,497; 6,813,872; 6,960,705; 7,064,249; 7,070,982; 7,119,099; 7,250,501; 7,304,206; 7,378,571; 7,544,862; 7,618,942; 7,927,598; RE39247.

Dow AgroScience Patent Rights for Genuity® SmartStax™ – 5,510,474; 6,083,499; 6,127,180; 6,218,188; 6,340,593; 6,548,291; 6,624,145; 6,893,872; 6,903,282; 7,956,246

Based on the decision of the U.S. Department of Agriculture (USDA) on January 27, 2011, Genuity® Roundup Ready® Alfalfa seed is available for sale and distribution by authorized Seed Companies or their dealers for use in the United States. This Seed may not be planted outside of the United States or for the production of seed, or sprouts.

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Roundup Ready® crops contain genes that confer tolerance to glyphosate the active ingredient in Roundup® brand agricultural herbicides. Roundup® brand agricultural herbicides will contain genes that will confer tolerance to glyphosate. Bollgard II®, Genuity and Design®, Genuity®, Respect the Refuge and Cotton Design®, Roundup Ready® 2 Technology and Design®, Roundup Ready®, SmartStax™, VT Double PRO™, VT Triple PRO™, YieldGard VT Rootworm/RR2®, YieldGard VT Triple®, YieldGard VT™ and YieldGard® are trademarks of Monsanto Technology LLC. LibertyLink® and the Water Droplet Design® are registered trademarks of Bayer. Herculex® is a registered trademark of Dow AgroSciences LLC. Respect the Refuge and Corn Design® and Respect the Refuge® are registered trademarks of National Corn Growers Association. All other trademarks are the property of their respective owners. ©2011 Monsanto Company. [DSWAgTOOLoma] MME110789



Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

# Attachment 6

# 2018 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
*(Limited Use License)*

AUG 2 0 2018

**Form Number** 170258909

Please mail this signed 2018 Monsanto Technology/Stewardship Agreement to: DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679
**FOR FASTER AGREEMENT APPROVAL, COMPLETE THE FORM ELECTRONICALLY AT AGCELERATE.COM.**

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Monsanto Technology/ Stewardship Agreement you must be the operator/grower for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, and all individuals and entities having an ownership interest in any entities for which you obtain Seed, and that Monsanto Company or a

court has not barred any of those individuals or entities from obtaining this limited-use license or accessing Seed. Your name must be filled in and must match the signature below. This Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's headquarters in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

**Grower's Full Legal Name** (First/Middle/Last) ☐ Dr. ☐ Mr. ☐ Mrs. ☐ Ms. ☐ Suffix (Sr, Jr, II, III)
Chad Schofield

**Farm Business Name**
SCHOFIELD FARMS LLC

**Grower's Mailing Address**
BOX 132

**Farm Physical Address**

**Grower's City** WESTFIELD **State** NY **Zip** 14787

**Farm City** **State** **Zip**

**Office Phone** (include area code) 716-222-6128
**Fax** (include area code)

**Last Four of Social Security #** XXX-XX-
**Role:** ☐ Operator ☐ Owner/Operator ☐ Farm Manager ☐ Other

**Cell Phone** (include area code)
**Email**

If the above information changes, Grower agrees to promptly update this information via AgCelerate.com or by calling 1-800-768-6387, option 3.

## SEED SUPPLIERS

**Business Name** Kennedy Growmark FS
**Area Code** 716 **Phone** 664-3257
**City** KENNEDY **State** NY **Zip** 14747

**Business Name**
**Area Code** **Phone**
**City** **State** **Zip**

This Monsanto Technology/Stewardship Agreement ("Agreement") is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page and any applicable Riders.

This Agreement grants Grower a limited license to use the following technologies in accordance with the terms of this Agreement:

**Canola Products**
Genuity® Roundup Ready® Spring Canola
Genuity® Roundup Ready® Winter Canola

**Corn Products**
Roundup Ready® Corn 2
DroughtGard® Hybrids with Roundup Ready® Corn 2
DroughtGard® Hybrids with VT Double PRO® Corn
VT Double PRO® Corn
VT Double PRO® RIB Complete® Corn Blend
DroughtGard® Hybrids with VT Double PRO®
    RIB Complete® Corn Blend
Genuity® VT Triple PRO® Corn
DroughtGard® Hybrids with Genuity® VT Triple PRO® Corn
Genuity® VT Triple PRO® RIB Complete® Corn Blend
DroughtGard® Hybrids with Genuity® VT Triple PRO®
    RIB Complete® Corn Blend

**Trecepta™ Corn**
Trecepta™ RIB Complete® Corn Blend
SmartStax® Corn
SmartStax® RIB Complete® Corn Blend
Performance Series® Sweet Corn

**Cotton Products**
Genuity® Bollgard II® Cotton
Genuity® Bollgard II® with Roundup Ready® Flex Cotton
Genuity® Roundup Ready® Flex Cotton
Bollgard II® XtendFlex® Cotton
Bollgard® 3 XtendFlex® Cotton
XtendFlex® Cotton

**Soybean Products**
Roundup Ready 2 Xtend® Soybeans
Roundup Ready 2 Yield® Soybeans
Vistive® Gold Soybeans with Roundup Ready
    2 Yield® Technology

and Monsanto patented germplasm and Monsanto Plant Variety Protection rights and any future seed technologies developed, licensed or owned by Monsanto that are made available to Grower ("Monsanto Technologies"). Seed containing Monsanto Technologies are referred to herein as "Seed". The licensed U.S. patents and/or PVP certificates for Monsanto Technologies can be found at the following web page: www.monsantotechnology.com and/or on the product label.

This Agreement includes an Alfalfa Rider and a Sugarbeet Rider, attached hereto, which is between Grower and Forage Genetics International, LLC ("FGI") and KWS SAAT SE ("KWS"), respectively. The Alfalfa Rider grants Grower a limited license to use Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology. The Sugarbeet Rider grants Grower a limited license to use Genuity® Roundup Ready® Sugarbeets.

This Agreement also contains Grower's stewardship responsibilities and requirements associated with the use of Seed and Monsanto Technologies. In addition, this Agreement provides that any Cotton-related claims by Grower are subject to binding arbitration, as described in Section 4e below.

**1. GROWER AGREES:**

**a** To acquire Seed only from authorized seed companies in the United States with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of this Agreement, the Technology Use Guide ("TUG") and, if applicable, the appropriate Insect Resistance Management Grower Guide ("IRM Grower Guide"), as each may be unilaterally amended by Monsanto from time to time, which TUG and IRM Grower Guide are incorporated into and are a part of this Agreement, and to read before planting and strictly follow the requirements of the applicable seed bag and/or tag; to implement an Insect Resistance Management ("IRM") program, if applicable; and to cooperate and comply with these and any additional IRM/Integrated Pest Management ("IPM") programs Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Agreement, and Grower may lose its limited use

license to use these products if Grower fails to comply with this Agreement, including by failing to follow the IRM program required by this Agreement. Monsanto further advises Grower to follow the recommendations and best management practices provided in the TUG, IRM Grower Guide and seed bag and/or tag label. Grower may obtain additional copies of the TUG or IRM Grower Guide or IPM information by contacting Monsanto at 1-800-768-6387 or by going to www.tug.monsanto.com.

**c** To pay all applicable royalties and technology fees for the use of the Monsanto Technologies and applicable fees due Monsanto that are part of, associated with the Seed purchase price or that are invoiced for the Seed. If Grower fails to pay Monsanto or any wholly owned Monsanto subsidiaries, for costs of Seed, Monsanto Technologies, and/ or royalties, Grower agrees to pay Monsanto default interest charges at the rate of 18% per annum (or the maximum allowed by law whichever is less) plus reasonable attorneys' fees, court costs and all other costs of collection. Monsanto or any subsidiary has the right of set-off.

**d** To use Seed solely for a single planting of a commercial crop in the United States.

**e** Not to transfer any Seed to any other person or entity for planting, and not to export any Seed.

**f** Not to save or clean any crop produced from Seed for planting, and not to supply Seed produced from Seed to anyone for planting. Except to the extent specifically permitted by a valid MTSA, the planting of any crop or Seed produced from Seed shall constitute infringement of Monsanto's U.S. patents.

**g** Not to plant and/or clean Seed for Seed production unless, and only if, Grower has entered into a valid, written Seed production agreement with a seed company that is licensed by Monsanto to produce Seed (a "Licensee"), which agreement requires Grower to either physically deliver to the Licensee, sell for non-seed purposes or use for non-seed purposes all of the Seed produced; and not to purchase or otherwise obtain from the Licensee any of the Seed produced unless, after physical delivery by Grower to the Licensee, that Seed has been conditioned, packaged and delivered by the Licensee to Grower in the same manner as Seed sold by the Licensee to growers who have not entered into a Seed production agreement.

**h** Not to plant any Seed, or any Seed produced from Seed, for crop breeding, research, or generation of herbicide or other registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. Monsanto makes available separate license agreements to academic institutions for research.

**i** To use on crops containing Monsanto Technology only pesticides labeled for such use and follow current label directions. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROP(S) CONTAINING MONSANTO TECHNOLOGY. MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING MONSANTO TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO MONSANTO TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**j** To accept and continue the obligations of this Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to timely notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Agreement and they must have or obtain their own Monsanto Technology/Stewardship Agreement to harvest or use, transfer or sell the harvested crop.

**k** To keep and provide Monsanto and its representatives following Monsanto's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

i. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and grower/dealer/retailer/applicator records for seed and chemical purchases and applications, and all documentation required on the chemistry product label or by government regulation; and

**GROWER SIGNATURE AND DATE REQUIRED** ▶

Name *[signature]*

*[The Agreement continues on the reverse side of this page.]*

Date 7-3-18

Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

# Attachment 7

# 2018 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
*(Limited Use License)*

**Form Number**

Please mail this signed 2018 Monsanto Technology/Stewardship Agreement to: DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679
**FOR FASTER AGREEMENT APPROVAL, COMPLETE THE FORM ELECTRONICALLY AT AGCELERATE.COM.**

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Monsanto Technology/Stewardship Agreement you must be the operator/grower for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, and all individuals and entities having an ownership interest in any entities for whom you obtain Seed, and that Monsanto Company or a court has not barred any of those individuals or entities from obtaining this limited-use license or accessing Seed. Your name must be filled in and must match the signature below. This Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's headquarters in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

**Grower's Full Legal Name (First/Middle/Last)** | Dr. | Mr. | Mrs. | Ms. | Suffix (Sr, Jr, II, III)

**Farm Business Name**

**Grower's Mailing Address**

**Farm Physical Address**

**Grower's City** | State | Zip

**Farm City** | State | Zip

**Office Phone** (include area code) | **Fax** (include area code)

**Last Four of Social Security #** — X X X - X X - | **Role:** ☐ Operator ☐ Owner/Operator ☐ Farm Manager ☐ Other

**Cell Phone** (include area code) | **Email**

If the above information changes, Grower agrees to promptly update this information via AgCelerate.com or by calling 1-800-768-6387, option 3.

## SEED SUPPLIERS

**Business Name** | **Area Code** | **Phone**

**City** | State | Zip

**Business Name** | **Area Code** | **Phone**

**City** | State | Zip

---

**This Monsanto Technology/Stewardship Agreement ("Agreement") is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page and any applicable Riders.**

This Agreement grants Grower a limited license to use the following technologies in accordance with the terms of this Agreement:

**Canola Products**
Genuity® Roundup Ready® Spring Canola
Genuity® Roundup Ready® Winter Canola

**Corn Products**
Roundup Ready® Corn 2
DroughtGard® Hybrids with Roundup Ready® Corn 2
DroughtGard® Hybrids with VT Double PRO® Corn
VT Double PRO® Corn
VT Double PRO® RIB Complete® Corn Blend
DroughtGard® Hybrids with VT Double PRO®
    RIB Complete® Corn Blend
Genuity® VT Triple PRO® Corn
DroughtGard® Hybrids with Genuity® VT Triple PRO® Corn
Genuity® VT Triple PRO® RIB Complete® Corn Blend
DroughtGard® Hybrids with Genuity® VT Triple PRO®
    RIB Complete® Corn Blend

**Trecepta™ Corn**
Trecepta™ RIB Complete® Corn Blend
SmartStax® Corn
SmartStax® RIB Complete® Corn Blend
Performance Series® Sweet Corn

**Cotton Products**
Genuity® Bollgard II® Cotton
Genuity® Bollgard II® with Roundup Ready® Flex Cotton
Genuity® Roundup Ready® Flex Cotton
Bollgard II® XtendFlex® Cotton
Bollgard® 3 XtendFlex® Cotton
XtendFlex® Cotton

**Soybean Products**
Roundup Ready 2 Xtend® Soybeans
Genuity® Roundup Ready 2 Yield® Soybeans
Vistive® Gold Soybeans with Roundup Ready
    2 Yield® Technology

and Monsanto patented germplasm and Monsanto Plant Variety Protection rights and any future seed technologies developed, licensed or owned by Monsanto that are made available to Grower ("Monsanto Technologies"). Seed containing Monsanto Technologies are referred to herein as "Seed". The licensed U.S. patents and/or PVP certificates for Monsanto Technologies can be found at the following web page: www.monsantotechnology.com and/or on the product label.

**This Agreement includes an Alfalfa Rider and a Sugarbeet Rider, attached hereto, which is between Grower and Forage Genetics International, LLC ("FGI") and KWS SAAT SE ("KWS"), respectively. The Alfalfa Rider grants Grower a limited license to use Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology. The Sugarbeet Rider grants Grower a limited license to use Roundup Ready® Sugarbeets.**

This Agreement also contains Grower's stewardship responsibilities and requirements associated with the use of Seed and Monsanto Technologies. **In addition, this Agreement provides that any Cotton-related claims by Grower are subject to binding arbitration, as described in Section 4e below.**

**1. GROWER AGREES:**

**a** To acquire Seed only from authorized seed companies in the United States with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of this Agreement, the Technology Use Guide ("TUG") and, if applicable, the appropriate Insect Resistance Management Grower Guide ("IRM Grower Guide"), as each may be unilaterally amended by Monsanto from time to time, which TUG and IRM Grower Guide are incorporated into and are a part of this Agreement, and to read before planting and strictly follow the requirements of the applicable seed bag and/or tag; to implement an Insect Resistance Management ("IRM") program, if applicable; and to cooperate and comply with these and any additional IRM/Integrated Pest Management ("IPM") programs Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Agreement, and Grower may lose its limited use

license to use these products if Grower fails to comply with this Agreement, including by failing to follow the IRM program required by this Agreement. Monsanto further advises Grower to follow the recommendations and best management practices provided in the TUG, IRM Grower Guide and seed bag and/or tag label. Grower may obtain additional copies of the TUG and/or IRM Grower Guide or IPM information by contacting Monsanto at 1-800-768-6387 or by going to www.tug.monsanto.com.

**c** To pay all applicable royalties and technology fees for the use of the Monsanto Technologies and applicable fees due Monsanto that are part of, associated with the Seed purchase price or that are invoiced for the Seed. If Grower fails to pay Monsanto or any wholly owned Monsanto subsidiaries, for costs of Seed, Monsanto Technologies, and/or royalties, Grower agrees to pay Monsanto default interest charges at the rate of 18% per annum (or the maximum allowed by law whichever is less) plus reasonable attorneys' fees, court costs and all other costs of collection. Monsanto or any subsidiary has the right of set-off.

**d** To use Seed solely for a single planting of a commercial crop in the United States.

**e** To not transfer any Seed to any other person or entity for planting, and not to export any Seed.

**f** Not to save or clean any crop produced from Seed for planting, and not to supply Seed produced from Seed to anyone for planting. Except to the extent specifically permitted by a valid MTSA, the planting of any crop or Seed produced from Seed shall constitute infringement of Monsanto's U.S. patents.

**g** Not to plant and/or clean Seed for Seed production unless, and only if, Grower has entered into a valid, written Seed production agreement with a seed company that is licensed by Monsanto to produce Seed (a "Licensee"), which agreement requires Grower to either physically deliver to the Licensee, sell for non-seed purposes or use for non-seed purposes all of the Seed produced; and not to purchase or otherwise obtain from the Licensee any of the Seed produced unless, after physical delivery by Grower to the Licensee, that Seed has been conditioned, packaged and delivered by the Licensee to Grower in the same manner as Seed sold by the Licensee to growers who have not entered into a Seed production agreement.

**h** Not to plant any Seed, or any Seed produced from Seed, for crop breeding, research, or generation of herbicide or other registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. Monsanto makes available separate license agreements to academic institutions for research.

**i** To use on crops containing Monsanto Technology only pesticides labeled for such use and follow current label directions. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROP(S) CONTAINING MONSANTO TECHNOLOGY. MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING MONSANTO TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO MONSANTO TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**j** To accept and continue the obligations of this Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to timely notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Agreement and they must have or obtain their own Monsanto Technology/Stewardship Agreement to harvest or use, transfer or sell the harvested crop.

**k** To keep and provide Monsanto and its representatives following Monsanto's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

    i. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and grower/dealer/retailer/applicator records for seed and chemical purchases and applications, and all documentation required on the chemistry product label or by government regulation; and

*[The Agreement continues on the reverse side of this page.]*



**GROWER SIGNATURE AND DATE REQUIRED**

Name _____

Date _____

2. the identity of, and access to, land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**l** To allow Monsanto to obtain Grower's internet service provider records to validate Grower's electronic signature, if applicable.

**m** To promptly notify Monsanto should any Grower Information provided to Monsanto herein change.

**n** To only direct crops or material produced from Seed only to appropriate grain handlers and/or markets to prevent movement to markets where the grain has not yet received regulatory approval for import and to notify such grain handlers that its crop has not yet received that approval. Grower acknowledges that any crop or material produced from Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted, and Grower purchases the Seed with that knowledge.

## 2. GROWER RECEIVES:

**a** A limited use license to purchase and to plant Seed pursuant to the terms of this Agreement in the United States of America, comprised of the 50 states and the District of Columbia, except in areas or county where the products do not have all the necessary approvals and to apply labeled glyphosate, dicamba or glufosinate herbicides over the top of crops as applicable, unless otherwise restricted by law. Monsanto (or the respective licensor) retains ownership of the Monsanto Technologies owned by it, including the gene technologies and varieties. These licenses do not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents (other than the Dow AgroSciences Patent Rights), to use Monsanto Technologies subject to the conditions listed in this Agreement and with respect to alfalfa and/or sugarbeet Seed, the conditions listed in the Alfalfa Rider and/or Sugarbeet Rider. Dow AgroSciences LLC and Agrigenetics, Inc. (collectively "DowAgroSciences") licenses Grower under its applicable U.S. patents (the "Dow AgroSciences Patent Rights") to use Dow AgroSciences' Event TC 1507 and Event DAS 59122-7 to the extent either is present in any SmartStax® Seed obtained by Grower pursuant to this Agreement, with Monsanto being authorized to act on Dow AgroSciences' behalf for this Agreement, subject to the conditions listed in this Agreement.

**c** Enrollment for participation in Roundup Ready PLUS® Crop Management Solutions.

**d** A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop labeled for use on those crops to control volunteer corn with Roundup Ready® 2 Technology in Grower's crops for the 2018 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix for use on glyphosate-tolerant soybean, cotton, or canola crops.

## 3. GENERAL TERMS:

**a** **Term:** This Agreement will remain in effect until either Grower or Monsanto chooses to terminate the Agreement, as provided below.

**b** **Modification:** Monsanto may unilaterally revise the terms and conditions of this Agreement, including the TUG, IRM Grower Guide, or seed bag, label and/or tag incorporated herein, from time to time. Grower shall verify the currently effective terms of this Agreement at least annually before February 1 at http://www.agcelerate.com. Monsanto will notify Grower of any amended terms, including information regarding new and existing Monsanto Technologies and any additions or deletions to the U.S. patents licensed under this Agreement. If Grower has provided Monsanto an e-mail address in conjunction with this Agreement, Monsanto may send Agreement amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of Monsanto Technologies after receipt of any amended terms and/or the posting of amended terms at http://www.agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Agreement.

**c** **Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of Monsanto. If Grower's rights or obligations are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights or obligations.

**d** **Binding Effect:** If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e** **Termination:** Grower may terminate this Agreement effective immediately by delivering written notice to Monsanto. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. Monsanto may terminate this Agreement for any reason, in whole or in part, by delivering written notice to Grower.

Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Seed for a single commercial crop) as to Seed previously purchased or used by Grower.

If Grower breaches the terms of this Agreement, Monsanto may terminate effective immediately Grower's rights under this Agreement. Grower will not be entitled to obtain a future limited-use license from Monsanto unless Monsanto provides Grower with specific written notice expressly recognizing the breach and termination of this Agreement and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology/Stewardship Agreement and Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Agreement and/or to have infringed one or more of the U.S. patents, Grower agrees that, among other things, Monsanto and Dow AgroSciences, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle Monsanto and Dow AgroSciences, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f** **Attorneys' Fees: If Grower is found by any court to have infringed one or more of the U.S. patents covering Monsanto Technologies or otherwise to have breached this Agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) and Dow AgroSciences, as appropriate, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.**

**g** **Governing Law:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**h** **Waiver:** The failure of Monsanto or any owners of patents to exercise one or more of its rights under this Agreement on one or more occasions shall not be deemed a waiver on the part of Monsanto or such patent owner to exercise such right(s) on any subsequent occasion.

**i** **Entire Agreement:** This Agreement, along with provisions in the TUG, IRM Grower Guide, and/or on seed bag and/or tag incorporated into this Agreement, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by Monsanto.

## 4. GROWER CLAIMS AND REMEDIES:

**a** **Notice requirement:** As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed regarding performance or non-performance of Monsanto Technologies or Seed, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed variety. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b** **Limited Warranty and Disclaimer of Warranties:** Monsanto warrants the Monsanto Technologies licensed hereunder only to the extent specifically set forth on the seed bag and/or tag, and warrants that the Monsanto Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN MONSANTO OR PARTIES AUTHORIZED BY MONSANTO.

**c** **Grower's Exclusive Limited Remedy:** THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**d** **Forum Selection for Non-Cotton-Related Claims Made by Grower and All Other Claims:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (ANY LAWSUIT MUST BE FILED, IF IN FEDERAL COURT IN ST. LOUIS, MO, OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI. THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON-RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES. THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS MONSANTO AND ANY CURRENT OR FUTURE U.S.-BASED WHOLLY-OWNED SUBSIDIARIES OR AFFILIATES OF MONSANTO.

**e** **Binding Arbitration for Cotton-Related Claims Made by Grower:** Any claim, action or dispute made or asserted by a Grower (or any other person or entity claiming an interest in Grower's cotton crop, hereafter "Grower") against Monsanto, or any person or entity involved in the production, development, distribution, and/or sale of the Seed containing any Monsanto Technology ("seller"), arising out of and/or in connection with this Agreement or the sale or performance of cotton Seed containing Monsanto Technology must be resolved by binding arbitration. The foregoing requirement to arbitrate specifically excludes any claim, action or dispute involving the infringement, validity, or enforceability of a patent or that otherwise arises under the U.S. patent laws. As a condition precedent to asserting any claim, action, or dispute regarding the quality of Monsanto cotton Seed or the agronomic performance of any Monsanto Technology in cotton Seed, Grower must provide notice to Monsanto pursuant to Section 4a of this Agreement. In the event that a claim is not resolved within 30 days after notice is supplied, any party may initiate arbitration. The parties acknowledge that this transaction involves interstate commerce, and agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Administered Arbitration Rules established by the International Institute for Conflict Prevention and Resolution, Inc. ("CPR"). GROWER MAY ONLY BRING A CLAIM IN ARBITRATION IN GROWER'S INDIVIDUAL CAPACITY AND GROWER WAIVES ANY RIGHT TO DO SO AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OR PUTATIVE CLASS. The arbitration hearing shall be conducted in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. Grower and Monsanto/sellers shall each pay one half of the CPR filing fee and one half of CPR's administrative and arbitrator fees and expenses as they are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all CPR fees in the final award. The arbitration proceedings and results shall remain confidential and shall not be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award or as otherwise required by law.

The 2018 Technology Use Guide (TUG) is available at tug.monsanto.com.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call 1-800-768-6387.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate. Bollgard® 3 XtendFlex® Cotton, Bollgard II® XtendFlex® Cotton and XtendFlex® Cotton contain genes that confer tolerance to glyphosate, dicamba, and glufosinate. Roundup Ready 2 Xtend® Soybeans contain genes that confer tolerance to glyphosate and dicamba. Glyphosate herbicides will kill crops that are not tolerant to glyphosate. Dicamba will kill crops that are not tolerant to dicamba. Glufosinate will kill crops that are not tolerant to glufosinate.
Bollgard II®, Bollgard II® XtendFlex®, Bollgard® 3, DroughtGard®, Genuity®, Performance Series™ RIB Complete®, Roundup Ready 2 Technology®, Roundup Ready 2 Xtend®, Roundup Ready 2 Yield®, Roundup Ready PLUS®, Roundup®, SmartStax®, Trecepta™, Vistive®, VT Double PRO®, VT Triple PRO®, XtendFlex®, YieldGard VT Rootworm/RR2®, and YieldGard® are trademarks of Monsanto Technology LLC. LibertyLink® and the Water Droplet Design® are registered trademarks of Bayer. Herculex® is a registered trademark of Dow AgroSciences LLC. HarvXtra® is a registered trademark of Forage Genetics International, LLC. All other trademarks are the property of their respective owners. ©2017 Monsanto Company All Rights Reserved [17-00506pgd] 5A4N176191

Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

# 2018 ALFALFA RIDER

## TERMS AND CONDITIONS

The following terms and conditions of the Alfalfa Rider (the "Rider") supplement the Monsanto Technology/Stewardship Agreement ("MTSA" or the "Agreement"), are enforceable under that Agreement as well as independently and separately enforceable from the Agreement, and are applicable to Grower's purchase or use of Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology. This Rider is entered into between Grower and Forage Genetics International, LLC ("FGI") and consists of the terms and conditions set forth below. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.

This Rider grants Grower a limited license to use the following technologies in accordance with the terms of this Rider: Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology, patented alfalfa germplasm and Plant Variety Protection rights owned or exclusively licensed to FGI and any future seed technologies developed, licensed or owned by FGI that are made available to Grower ("FGI Technologies"), with Monsanto authorized to act on FGI's behalf. Seed containing FGI Technologies, are collectively referred to herein as ("Alfalfa Seed"). The licensed U.S. patents and/ or PVP certificates for FGI Technologies can be found at the following web page: www.monsantotechnology.com and/or on the product label.

This Rider also contains Grower's stewardship responsibilities and requirements associated with the use of Alfalfa Seed and FGI Technologies.

### 1. GROWER AGREES:

**a** To acquire Alfalfa Seed only from authorized seed companies in the United States with technology license(s) from FGI for the applicable FGI Technology(ies) or from a licensed company's dealer authorized to sell such licensed Alfalfa Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of the Technology Use Guide ("TUG") and, if applicable, the appropriate Insect Resistance Management Grower Guide ("IRM Grower Guide") and seed bag tag, as each may be amended from time to time, which TUG, IRM Grower Guide and seed bag tag are incorporated into and are a part of this Rider; to implement an Insect Resistance Management ("IRM") program, if applicable; and to cooperate and comply with these and any additional IRM/Integrated Pest Management ("IPM") programs FGI or Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Rider, and Grower may lose its limited use license to use these products if Grower fails to follow the IRM program required by this Rider. FGI further advises Grower to follow the recommendations provided in the TUG, IRM Grower Guide and seed bag tag. Grower may obtain additional copies of the TUG or IRM Grower Guide or IPM information by contacting Monsanto at 1-800-768-6387 or by going to www.tug.monsanto.com.

**c** To pay all applicable royalties and technology fees for the use of the FGI Technologies and applicable fees due FGI that are part of, associated with the Alfalfa Seed purchase price or that are invoiced, or the Alfalfa Seed. If Grower fails to pay FGI or any wholly owned FGI subsidiaries, for costs of Alfalfa Seed, FGI Technologies, and/or royalties, Grower agrees to pay FGI default interest charges at the rate of 18% per annum (or the maximum allowed by law whichever is less) plus reasonable attorneys' fees, court costs and all other costs of collection. FGI or any subsidiary has the right of set-off.

**d** To use Alfalfa Seed solely for a commercial crop in the United States as provided below. Grower may use a single planting of Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology for multiple cuttings.

**e** Only to plant HarvXtra® Alfalfa with Roundup Ready® Technology in the United States, with the following states subject to execution of an additional FGI Seed and Feed Use Agreement: Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, Oregon, Utah, Washington and Wyoming (collectively the "Western States").

**f** That all planting of HarvXtra® Alfalfa with Roundup Ready® Technology in the Western States is permissible only upon separate execution by the Grower of a HarvXtra® Alfalfa with Roundup Ready® Technology Seed and Feed Use Agreement ("FGI Seed and Feed Use Agreement") that includes provisions limiting HarvXtra® Alfalfa with Roundup Ready® Technology seed and crops or hay products produced from HarvXtra® Alfalfa with Roundup Ready® Technology to only United States domestic use.

**g** All terms of the FGI Seed and Feed Use Agreement are incorporated into and made enforceable under this Rider.

**h** Not to transfer any Alfalfa Seed to any other person or entity for planting, and not to export any Alfalfa Seed.

**i** Not to save or clean any crop produced from Alfalfa Seed for planting, and not to supply seed produced from Alfalfa Seed to anyone for planting. Except to the extent specifically permitted by a valid MTSA, the planting of any crop or Seed produced from Seed shall constitute infringement of Monsanto's U.S. patents.

**j** Not to plant and/or clean Alfalfa Seed for seed production unless, and only if, Grower has entered into a valid, written Alfalfa Seed production agreement with a seed company that is licensed by FGI to produce Alfalfa Seed (a "Licensee"), which agreement requires Grower to either physically deliver to the Licensee, sell for non-seed purposes or use for non-seed purposes all of the Seed produced; and not to purchase or otherwise obtain from the Licensee any of the Seed produced unless, after physical delivery to the Licensee, that Seed has been conditioned, packaged and delivered by the Licensee to Grower in the same manner as Seed sold by the Licensee to growers who have not entered into a Seed production agreement.

**k** Not to plant any Alfalfa Seed, or any seed produced from Alfalfa Seed, for crop breeding, research, or generation of herbicide or other registration data. Grower may not acquire or possess Grower's crop produced from Alfalfa Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. FGI makes available separate license agreements to academic institutions for research.

**l** To use on crops containing FGI Technology only pesticides labeled for such use and follow current label directions. FGI DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES , INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROPS CONTAINING FGI TECHNOLOGY. FGI SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING FGI TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO FGI TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**m** To accept and continue the obligations of this Rider on any new land purchased or leased by Grower that has Alfalfa Seed planted on it by a previous owner or possessor of the land; and to timely notify in writing purchasers or lessees of land owned by Grower that has Alfalfa Seed planted on it that the FGI Technology is subject to this Rider and they must have or obtain their own Monsanto Technology/Stewardship Agreement, Rider and FGI Seed and Feed Use Agreement, if applicable.

**n** To keep and provide to FGI and its representatives following FGI's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

1. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Rider, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, grower/dealer/retailer/applicator records for seed and chemical purchases, and applications and all documentation required on the chemistry product label or by government regulation; and

2. the identity of, and access to, land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**o** To allow FGI to obtain Grower's internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

**p** To promptly notify FGI or Monsanto should any Grower Information provided herein change.

**q** To direct any crops or hay products produced from HarvXtra® Alfalfa with Roundup Ready® Technology only to United States domestic use, except where FGI expressly grants permission in writing. Grower further agrees that it will only sell or convey such crops or hay products to persons or entities that agree they will not ship such crops or hay products outside the United States, except where FGI expressly grants permission in writing.

**r** Grower acknowledges that any crop or hay product produced from Alfalfa Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted, and Grower purchases the Alfalfa Seed with that knowledge.

**s** Until FGI expressly grants permission in writing (which will be withheld pending necessary import approvals), not to export, or to sell or convey to any person or entity that intends to export, Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology seed or crops or hay products produced from such seed to export countries where all necessary regulatory approvals have not been granted. In addition, due to the unique cropping practices Grower agrees not to plant Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology in Imperial County, California, pending import approvals and until FGI grants express permission in writing for such planting. Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology seed may not be planted for the production of sprouts.

### 2. GROWER RECEIVES FROM FGI:

**a** A limited use license to purchase and to plant Alfalfa Seed pursuant to the terms of this Rider in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate herbicides over the top of crops as applicable, unless otherwise restricted by law. FGI (or the respective licensor) retains ownership of the FGI Technologies owned by it, including the gene technologies and varieties. These licenses do not authorize Grower to plant Alfalfa Seed in the United States that has been purchased in another country or plant Alfalfa Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents, to use FGI Technologies subject to the conditions listed in this Rider.

**c** Enrollment for participation in Roundup READY® Crop Management Solutions.

**d** A limited use license to prepare and apply on glyphosate-tolerant alfalfa (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop labeled for use on those crops to control volunteer corn with Roundup Ready® 2 Technology in Grower's crops for the 2018 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix for use on glyphosate-tolerant alfalfa.

### 3. GENERAL TERMS:

**a** **Term:** This Rider will remain in effect until either Grower or FGI chooses to terminate the Rider, as provided below.

**b** **Modification:** FGI or Monsanto may unilaterally revise the terms and conditions of this Rider, including the Agreement and TUG incorporated herein, from time to time. Grower shall verify the currently effective terms of this Rider at least annually before February 1 at http://www.agcelerate.com. FGI or Monsanto will notify Grower of any amended terms, including information regarding new and existing FGI Technologies and any additions or deletions to the U.S. patents licensed under this Rider. If Grower has provided FGI or Monsanto an e-mail address in conjunction with the Agreement or this Rider, FGI or Monsanto may send Rider amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of FGI Technologies after receipt of any amended terms and/or the posting of amended terms at http://www.agcelerate.com constitutes Grower's agreement to bound by the amended terms of this Rider.

**c** **Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of FGI. If Grower's rights or obligations are transferred with FGI's consent or by operation of law, this Rider is binding on the person or entity receiving the transferred rights or obligations.

**d** **Binding Effect:** If any provision of this Rider is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e** **Termination:** Grower may terminate this Rider effective immediately by delivering written notice to FGI. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. FGI may terminate this Rider for any reason, in whole or in part, by delivering written notice to Grower. Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Alfalfa Seed for a single commercial crop) as to Alfalfa Seed previously purchased or used by Grower. If Grower breaches the terms of this Rider, FGI may terminate effective immediately Grower's rights under this Rider. Grower will not be entitled to obtain a future limited-use license from FGI unless FGI provides Grower with specific written notice expressly recognizing the breach and termination of this Rider and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology/Stewardship Agreement or Rider and FGI's or Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Rider and/or to have infringed one or more of the Alfalfa Patent Rights, Grower agrees that, among other things, FGI, and Monsanto, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Alfalfa Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle FGI, and Monsanto, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f** **Attorneys' Fees:** If Grower is found by any court to have infringed one or more of the Alfalfa Patent Rights or otherwise to have breached any term of this Rider, Grower agrees to pay FGI and Monsanto, as appropriate, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.

**g** **Governing Law:** This Rider and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**h** **Waiver:** The failure of FGI or Monsanto or any owners of patents to exercise one or more of its rights under this Agreement on one or more occasions shall not be deemed a waiver on the part of FGI or Monsanto or such patent owner to exercise such right(s) on any subsequent occasion.

**i** **Entire Agreement:** This Agreement and Rider, along with provisions in the TUG and/or on bag tags and the terms of the FGI Seed and Feed Use Agreement, if applicable, which are incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Alfalfa Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by FGI or Monsanto.

### 4. GROWER CLAIMS AND REMEDIES:

**a** **Notice requirement:** As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against FGI and/or any seller of Alfalfa Seed regarding performance or non-performance of FGI Technologies or Alfalfa Seed, Grower must provide FGI a written, prompt, and timely notice (regarding performance or non-performance of the FGI Technologies) and to the seller of any Alfalfa Seed (regarding performance or non- performance of the Alfalfa Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the FGI Technology and/or the Alfalfa Seed. The notice shall include a statement setting forth the nature of the claim, name of the FGI Technology, and Alfalfa Seed products. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b** **Limited Warranty and Disclaimer of Warranties:** FGI warrants the FGI Technology licensed hereunder as set forth on the seed bag and/or tag to the extent specifically warranted thereon, or, to the extent specifically warranted therein, that the FGI Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology contained in planting Alfalfa Seed that has been purchased from FGI and seed companies licensed by FGI or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, FGI MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN FGI.

**c** **Grower's Exclusive Limited Remedy:** THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF FGI OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF ALFALFA SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE ALFALFA SEED INVOLVED OR, AT THE ELECTION OF FGI OR THE SEED SELLER, THE REPLACEMENT OF THE ALFALFA SEED. IN NO EVENT SHALL FGI OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**d** **FORUM SELECTION FOR CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI, (ANY LAWSUIT MUST BE FILED, IF IN FEDERAL COURT IN ST. LOUIS, MO, OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE ALFALFA SEED OR THE FGI TECHNOLOGIES. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULES(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI. THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS FGI, ITS CURRENT OR FUTURE AFFILIATES AND ANY CURRENT OR FUTURE U.S.-BASED WHOLLY-OWNED SUBSIDIARIES OF FGI.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the FGI Technologies or this license, please call 1-800-768-6387.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate. Glyphosate herbicides will kill crops that are not tolerant to glyphosate.
Roundup Ready 2 Technology® and Roundup Ready® are registered trademarks of Monsanto Technology LLC. HarvXtra® is a registered trademark of Forage Genetics International, LLC. All other trademarks are the property of their respective owners. ©2017 Monsanto Company All Rights Reserved

Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

# 2018 SUGARBEET RIDER

## TERMS AND CONDITIONS

The following terms and conditions of the Sugarbeet Rider (the "Rider") supplement the Monsanto Technology/Stewardship Agreement ("MTSA" or the "Agreement"), are enforceable under that Agreement as well as independently and separately enforceable from the Agreement, and are applicable to Grower's purchase or use of Roundup Ready® Sugarbeets. This Rider is entered into between Grower and KWS SAAT SE (KWS) and consists of the terms and conditions set forth below. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.

This Rider grants Grower a limited license to use Roundup Ready® Sugarbeets in accordance with the terms of this Rider ("KWS Technologies"), with respect to which KWS has authorized Monsanto to act on KWS's behalf in accordance with the parties' commercial services agreement, that are made available to Grower. Seed containing KWS Technologies, are collectively referred to herein as ("Sugarbeet Seed"). Seed containing KWS Technologies, are collectively referred to herein as ("Sugarbeet Seed"). The licensed U.S. patents for KWS Technologies can be found at the following web page: www.monsantotechnology.com and/or on the product label.

This Rider also contains Grower's stewardship responsibilities and requirements associated with the use of Sugarbeet Seed and KWS Technologies.

### 1. GROWER AGREES:

**a** To acquire Sugarbeet Seed only from authorized seed companies in the United States with technology license(s) from KWS for the applicable KWS Technology(ies) or from a licensed company's representative authorized to sell such licensed Sugarbeet Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of the Technology Use Guide ("TUG") and seed package label, as each may be amended from time to time, which TUG and seed package label are incorporated into and are a part of this Rider, and to cooperate and comply with these and any additional stewardship programs KWS or Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Rider, and Grower may lose its limited use license to use these products if Grower fails to follow the stewardship guidelines required by this Rider. KWS further advises Grower to follow the recommendations provided in the TUG and seed package label. Grower may obtain additional copies of the TUG by contacting Monsanto at 1-800-768-6387 or by going to www.tug.monsanto.com.

**c** To use Sugarbeet Seed solely for a commercial crop in the United States as provided below. Grower may use a single planting of Roundup Ready® Sugarbeets to be processed for sugar, for energy production, or for animal feed.

**d** Not to transfer any Sugarbeet Seed to any other person or entity for planting, and not to export any Sugarbeet Seed.

**e** Not to plant any Sugarbeet Seed, or any seed produced from Sugarbeet Seed, for crop breeding, research, DNA analysis, generation of herbicide, or other registration data. Grower may not conduct research on Grower's crop produced from Sugarbeet Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.

**f** To use on crops containing KWS Technology only pesticides labeled for such use. KWS DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROPS CONTAINING KWS TECHNOLOGY. KWS SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING KWS TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO KWS TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**g** To keep and provide to KWS and its representatives following KWS's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

**1.** copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Rider, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and grower/dealer/retailer/applicator records for seed and chemical purchases and applications; and

**2.** the identity of, and access to, land farmed by or at the direction of Grower and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**h** To promptly notify KWS and Monsanto should any Grower information provided herein change.

### 2. GROWER RECEIVES FROM KWS:

**a** A limited use license to purchase and to plant Sugarbeet Seed pursuant to the terms of this Rider in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate herbicides over the top of crops as applicable, unless otherwise restricted by law. KWS (or the respective licensor) retains ownership of the KWS Technologies owned by it, including the gene technologies. These licenses do not authorize Grower to plant Sugarbeet Seed in the United States that has been purchased in another country or plant Sugarbeet Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents, to use KWS Technologies subject to the conditions listed in this Rider.

### 3. GENERAL TERMS:

**a Term:** This Rider will remain in effect until either Grower or KWS chooses to terminate the Rider, as provided below.

**b Modification:** KWS may unilaterally revise the terms and conditions of this Rider, including the Agreement and TUG incorporated herein, from time to time. Grower shall verify the currently effective terms of this Rider at least annually before February 1 at http://www.agcelerate.com. KWS or Monsanto will notify Grower of any amended terms, including information regarding new and existing KWS Technologies and any additions or deletions to the U.S. patents licensed under this Rider. If Grower has provided KWS or Monsanto an e-mail address in conjunction with the Agreement or this Rider, KWS or Monsanto may send Rider amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of KWS Technologies after receipt of any amended terms and/or the posting of amended terms at http://www.agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Rider.

**c Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of KWS. If Grower's rights or obligations are transferred with KWS's consent or by operation of law, this Rider is binding on the person or entity receiving the transferred rights or obligations.

**d Binding Effect:** If any provision of this Rider is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e Termination:** Grower may terminate this Rider effective immediately by delivering written notice to KWS. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. KWS may terminate this Rider for any reason, in whole or in part, by delivering written notice to Grower. Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Sugarbeet Seed for a single commercial crop) as to Sugarbeet Seed previously purchased or used by Grower. If Grower breaches the terms of this Rider, KWS may terminate effective immediately Grower's rights under this Rider. Grower will not be entitled to obtain a future limited-use license from KWS unless KWS provides Grower with specific written notice expressly recognizing the breach and termination of this Rider and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology/Stewardship Agreement or Rider and KWS's or Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Rider and/or to have infringed one or more of the Sugarbeet Patent Rights, Grower agrees that, among other things, KWS, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Sugarbeet Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle KWS, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f Attorneys' Fees:  If Grower is found by any court to have infringed one or more of the Sugarbeet Patent Rights or otherwise to have breached any term of this Rider, Grower agrees to pay KWS and Monsanto, as appropriate, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.**

**g Governing Law and Forum:**  This Rider and the parties' relationship shall be governed by the laws of the State of Minnesota and the United States (without regard to the choice of law rules).  Any dispute arising out of or relating to this Rider, the parties' relationship, KWS technologies, or the Sugarbeet Seed shall be commenced and maintained exclusively in the state or federal courts of Minnesota.  Grower waives any objection to venue or inconvenience of forum and voluntarily submits to the jurisdiction of these courts.

**h Waiver:**  The failure of KWS or any owners of patents to exercise one or more of its rights under this Rider on one or more occasions shall not be deemed a waiver on the part of KWS or such patent owner to exercise such right(s) on any subsequent occasion.

**i Entire Agreement:**  This Agreement and Rider, along with provisions in the TUG and/or on package labels and the terms of the KWS Seed and Feed Use Agreement, if applicable, which are incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Sugarbeet Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by KWS or Monsanto.

### 4. GROWER CLAIMS AND REMEDIES.

**a Notice requirement:**  As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against KWS and/or any seller of Sugarbeet Seed regarding performance or non-performance of KWS Technologies or Sugarbeet Seed, Grower must provide KWS a written, prompt, and timely notice (regarding performance or non-performance of the KWS Technologies) and to the seller of any Sugarbeet Seed (regarding performance or non-performance of the Sugarbeet Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted.  The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the KWS Technology and/or the Sugarbeet Seed.  The notice shall include a statement setting forth the nature of the claim, name of the KWS Technology, and Sugarbeet Seed involved.  Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b Limited Warranty and Disclaimer of Warranties:**  KWS warrants the KWS Technology licensed hereunder only as specifically set forth on the seed container and/or package label and warrants that the KWS Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Sugarbeets contained in planting Sugarbeet Seed that has been purchased from KWS and seed companies licensed by KWS or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, KWS MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN KWS.

**c Grower's Exclusive Limited Remedy:**  THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF KWS OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SUGARBEET SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SUGARBEET SEED INVOLVED OR, AT THE ELECTION OF KWS OR THE SEED SELLER, THE REPLACEMENT OF THE SUGARBEET SEED. IN NO EVENT SHALL KWS OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies.  We look forward to working with you in the future.  If you have any questions regarding the KWS Technologies or this license, please call 1-800-768-6387.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate.  Glyphosate herbicides will kill crops that are not tolerant to glyphosate.
Roundup Ready 2 Technology® and Roundup Ready® are registered trademarks of Monsanto Technology LLC.  All other trademarks are the property of their respective owners.  ©2017 Monsanto Company All Rights Reserved

# Attachment 8

# 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
(Limited ...

**Form Number**

‖‖‖‖‖ L 1 1 0 7 7 5 9 ‖‖‖‖‖

**PLEASE MA[...]GY/STEWARDSHIP AGREEMENT TO:**
G[...] uite 150, St. Louis, MO 63141
[...]lease print)

Please complete this section with your business information. To sign this Monsanto Technology/Stewardship Agreement ("Agreement") you must be the **operator/grower** for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, all individuals and entities having an ownership interest in any entities for which you obtain Seed,

and that Monsanto Company has not barred any of those individuals or entities from obtaining this limited-use license. Your name must be filled in and must match the signature below. This Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's headquarters in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

**Grower's Full Legal Name** (First/Middle/Last)   Dr.   ☒ Mr.   Mrs.   Ms.   **Suffix (Sr, Jr, II, III)**

William  Thomas  Jones

**Grower's Mailing Address**

3P O  Box  1546

**Grower's City**     **State** MS   **Zip** 39194

Yazoo  City

**Area Code** 662   **Business Phone** 746  8875   **Fax**

**Email**

wijol6@yahoo.com

**Farm Business Name**

Jones  Planting  Company  III

**Farm Physical Address** (as listed with the FSA)

PO  Box  1546

**Farm City**     **State** MS   **Zip** 39169

Tchula

**Last Four of Social Security #** 5075   **Role**   Operator   ☒ Owner/Operator   Farm Manager   Other

## SEED SUPPLIER

**Business Name**

Jimmy  Sanders  Inc

**Area Code** 662   **Phone** 235  4016

**City** Tchula   **State** MS   **Zip** 39169

### THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:

Lic. #: 50716225     Batch #: 8254     Date APR 0 2 2010

**This Monsanto Technology/Stewardship Agreement is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page.**

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® soybeans, Genuity™ Roundup Ready 2 Yield® soybeans, YieldGard® Corn Borer corn, YieldGard® Rootworm corn, YieldGard® Rootworm with Roundup Ready® Corn 2 corn, YieldGard® Plus corn, YieldGard® Plus with Roundup Ready® Corn 2 corn, Roundup Ready® Corn 2 corn, YieldGard® Corn Borer with Roundup Ready® Corn 2 corn, YieldGard VT Triple® corn, YieldGard VT Rootworm/RR2® corn, Genuity™ VT Triple PRO™ corn, Genuity™ SmartStax™ corn, Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Genuity™ Bollgard II® cotton, Bollgard II® with Roundup Ready® cotton, Genuity™ Roundup Ready® Flex cotton, Genuity™ Bollgard II® with Roundup Ready® Flex cotton, Vistive® low linolenic soybeans, Genuity™ Roundup Ready® Sugarbeets, Genuity™ Roundup Ready® Canola, Roundup Ready® Alfalfa, Monsanto patented germplasm and Monsanto Plant Variety Protection rights ("Monsanto Technologies"). Seed containing Monsanto Technologies are referred to herein as ("Seed"). This Agreement also contains Grower's stewardship

responsibilities and requirements associated with the use of Seed and Monsanto Technologies.

1. **GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

2. **BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:** Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this

Initial here ›  

Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within

30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**3. FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

**4. GROWER AGREES:**
- To direct grain produced from these crops to appropriate markets as necessary. Any crop or material produced from these products can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted.
- Only to lawfully plant Roundup Ready® alfalfa; and not to plant Roundup Ready® alfalfa for the production of sprouts, or of seed unless under specific contract to produce seed. If growing Roundup Ready® alfalfa, to direct any product produced from a Roundup Ready® alfalfa seed or crop, including hay and hay products, only to those countries where regulatory approvals have been granted, and to grow and manage Roundup Ready® alfalfa in accordance with the Technology Use Guide.
- To accept and continue the obligations of this Monsanto Technology/ Stewardship Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Monsanto Technology/Stewardship Agreement and they must have or obtain their own Monsanto Technology/Stewardship Agreement.
- To implement an Insect Resistance Management ("IRM") program as specified in the applicable Bollgard® and Genuity™ Bollgard II® cotton and YieldGard® corn sections of the most recent Technology Use Guide ("TUG") and the Grower and Insect Resistance Management Guide ("IRM/Grower Guide") and to cooperate and comply with these IRM programs.
- To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
- Not to save or clean any crop produced from Seed for planting and not to supply Seed produced from Seed to anyone for planting other than to a Monsanto licensed seed company.
- Not to transfer any Seed containing patented Monsanto Technologies to any other person or entity for planting.
- To plant and/or clean Seed for Seed production, if and only if, Grower has entered into a valid, written Seed production agreement with a Seed company that is licensed by Monsanto to produce Seed. Grower must either physically deliver to that licensed Seed Company or must sell for non-seed purposes or use for non-seed purposes all of the Seed produced pursuant to a Seed production agreement.
- Grower may not plant and may not transfer to others for planting any Seed that the Grower has produced containing patented Monsanto Technologies for crop breeding, research, or generation of herbicide registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.

- To use on Roundup Ready® or Genuity™ Roundup Ready® crops only a labeled Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready® gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready® gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY® CROP(S). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY® OR GENUITY™ ROUNDUP READY® CROP(S). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
- To read and follow the applicable sections of the TUG and the IRM/Grower Guide, which are incorporated into and is a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG and the IRM/Grower Guide as it may be amended from time to time.
- To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed.
- To pay all applicable fees due to Monsanto that are a part of, associated with or collected with the Seed purchase price or that are invoiced for the seed. If Grower fails to pay Monsanto for cotton related Monsanto Technologies, Grower agrees to pay Monsanto default charges at the rate of 14% per annum (or the maximum allowed by law whichever is less) plus Monsanto's reasonable attorneys' fees, court costs and all other costs of collection.
- To provide Monsanto copies of any records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for seed and chemical transactions. Such records shall be produced following Monsanto's actual (or attempted) oral communication with Grower and not later than seven (7) days after the date of a written request from Monsanto.
- To identify and allow Monsanto and its representatives access to land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein. Such inspection, examination or sampling shall be available to Monsanto and its representatives only after Monsanto's actual (or attempted) oral communication with Grower and after at least seven (7) days prior written request by Monsanto to Grower.
- To allow Monsanto to obtain Grower's internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

**5. GROWER RECEIVES FROM MONSANTO COMPANY:**
- A limited use license to purchase and plant Seed and apply Roundup® agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready® or Genuity™ Roundup Ready® crops. Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready® gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement.
- Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower under applicable U.S. patents listed below (other than the Dow AgroScience Patent Rights), to use Monsanto Technologies subject to the conditions listed in this Agreement. Dow AgroSciences LLC and Agrigenetics, Inc. (collectively "Dow AgroSciences") licenses the Grower under its applicable U.S. patents listed below (the "Dow AgroScience Patent Rights") to use Dow AgroSciences' Event TC 1507 and Event DAS 15229-7 to the extent either is present in any SmartStax Seed being obtained by Grower pursuant to this Agreement, Monsanto being authorized to act on Dow AgroSciences' behalf for this Agreement, subject to the conditions listed in this Agreement. These licenses do not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States. Grower is not authorized to transfer Seed to anyone outside of the U.S.
- Enrollment for participation in Roundup Rewards® program.
- A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, alfalfa, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), Roundup® agricultural herbicides or other glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop,

Initial here › WTJ

and/or fenoxaprop to control volunteer Roundup Ready® Corn 2 corn in Grower's crops for the 2010 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

## 6. GROWER UNDERSTANDS:

- **Monsanto Company is a member of Excellence Through Stewardship℠ (ETS).** These products containing Monsanto technologies have been commercialized in compliance with the ETS Product Launch Stewardship Guidance and the Monsanto Product Launch Stewardship policy, after meeting applicable regulatory requirements in key export markets with functioning regulatory systems. Any crop or material produced from these products may only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted. Growers should talk to their grain handler or product purchaser to confirm their buying position for these products. Excellence Through Stewardship℠ is a service mark of Biotechnology Industry Organization.
- Insect Resistance Management: When planting any YieldGard®, Bollgard®, Genuity™ Bollgard II® products, Grower must implement an IRM program according to the size and distance guidelines specified in the TUG and the IRM/Grower Guide, including any supplemental amendments. Grower may lose Grower's limited use license to use these products if Grower fails to follow the IRM program required by this Agreement.
- Crop Stewardship & Specialty Crops: Refer to the section on Coexistence and Identity Preservation in the TUG for applicable information on crop stewardship and considerations for production of identity preserved crops.
- Corn Trait Performance: All hybrids containing Monsanto corn traits (YieldGard® Corn Borer corn, YieldGard® Rootworm corn, YieldGard® Plus corn, and Roundup Ready® Corn 2 corn) have been screened for the presence of the appropriate protein and have passed that screening prior to commercial sale. YieldGard® Rootworm corn and YieldGard® Plus corn hybrids have achieved industry leading success rates in excess of 99%. A small number of these hybrids may infrequently demonstrate variable levels of performance in fields and not meet grower expectations.

## 7. SPECIAL LIMITATIONS ON PURCHASES AND USE OF BOLLGARD® COTTON:

Grower may not purchase Bollgard® cotton seed or Bollgard® with Roundup Ready® cotton seed after September 30, 2009. Monsanto has petitioned the U.S. Environmental Protection Agency (EPA) to amend its registration to allow Monsanto to distribute any of this seed purchased by a Grower before September 30, 2009 in the spring of 2010 for planting during the 2010 growing season. Monsanto will publicly announce the EPA's decision when it is received. Whether the petition is granted or not, Grower must return any unplanted Bollgard® cotton seed no later than the end of the 2010 planting season. These restrictions do not apply to any Genuity™ Bollgard II® cotton seed products.

## 8. GENERAL TERMS:

Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower acknowledges that Grower has received a copy of Monsanto's Technology Use Guide ("TUG") and the Grower and Insect Resistance Management Guide ("IRM/Grower Guide"). To obtain additional copies of the TUG and/or the IRM/Grower Guide, contact Monsanto at 1-800-768-6387 or go to www.monsanto.com. Once effective, this Agreement will remain in effect until either the Grower or Monsanto choose to terminate the Agreement, as provided in Section 9 below. Information regarding new and existing Monsanto Technologies, including any additions or deletions to the U.S. patents licensed under this agreement, and any new terms will be mailed to you each year. Continuing use of Monsanto Technologies after receipt of any new terms constitutes Grower's agreement to be bound by the new terms.

## 9. TERMINATION:

Grower or Monsanto may choose to terminate this Agreement effective immediately by delivering written notice to either party. Grower must deliver the notice of termination to Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141. If this Agreement is terminated pursuant to such a notice, Grower's responsibilities and the other terms herein shall survive (such

as but not limited to Grower's obligation to use Seed for a single commercial crop) as to Seed previously purchased by the Grower.

In the event Grower violates the terms of this Agreement, then this Agreement shall automatically terminate. However, Grower's responsibilities and the other terms herein shall survive as to all Seed purchased or used by the Grower prior to such violation (such as but not limited to Grower's obligation to use Seed for a single commercial crop, Grower's obligation to pay Monsanto for its attorneys' fees, costs and other expenses incurred in enforcing its rights under this Agreement, and Grower's agreement to the choice of law and forum selection provisions contained herein). Further, Grower shall not be entitled to obtain a future limited-use license from Monsanto unless Monsanto provides Grower with specific written notice expressly recognizing the prior breach and prior termination of the limited-use license and expressly granting and/or reissuing the limited-use license previously obtained (and terminated) pursuant to this Agreement. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology Stewardship Agreement and Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Agreement and/or to have infringed one or more of the U.S. patents listed below, Grower agrees that, among other things, Monsanto and Dow Agrosciences, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle Monsanto and Dow Agrosciences, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages. If Grower is found by any court to have infringed one or more of the U.S. patents listed below or otherwise to have breached this Agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) and Dow AgroSciences, as appropriate, their attorneys' fees and costs and other expenses incurred in enforcing rights under this Agreement including, but not limited to, expenses incurred in the investigation of the breach of this Agreement and/or infringement of one or more of the U.S. patents listed below.

**Grower accepts the terms of the following NOTICE REQUIREMENT, LIMITED WARRANTY AND DISCLAIMER OF WARRANTY AND EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of Seed. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bags to Grower's seed dealer.**

## 10. NOTICE REQUIREMENT:

As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed regarding performance or non-performance of Monsanto Technologies or Seed, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety. Grower must deliver the notice to Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

## 11. LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:

Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

## 12. GROWER'S EXCLUSIVE LIMITED REMEDY:

THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED (INCLUDING CLAIMS BASED

Initial here › WTJ

IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call the Monsanto Customer Relations Center at: 1-800-768-6387.

**13. PLEASE MAIL THE SIGNED 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

**14. UNITED STATES PATENTS:**

The licensed U.S. patents include: for Bollgard® cotton – 5,322,938; 5,352,605; 5,530,196; 6,943,282; for Genuity™ Bollgard II® cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,489,542; 6,943,282; 7,064,249; 7,223,907; for Genuity™ Bollgard II® with Roundup Ready® cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,378,619; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,489,542; 6,753,463; 6,943,282; 7,064,249; 7,223,907; RE39247; for Genuity™ Bollgard II® with Roundup Ready® Flex Cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,489,542; 6,660,911; 6,753,463; 6,943,282; 6,949,696; 7,064,249; 7,112,725; 7,141,722; 7,223,907; 7,381,861; RE39247; for Bollgard® with Roundup Ready® cotton – 5,322,938; 5,352,605; 5,378,619; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,753,463; 6,943,282; RE39247; for Bollgard® with Roundup Ready® Flex Cotton – 5,322,938; 5,352,605; 5,352,605; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,660,911; 6,753,463; 6,943,282; 6,949,696; 7,112,725; 7,141,722; 7,381,861; RE39247; for Mavera® high value corn with lysine – 2,157,281; for Genuity™ Roundup Ready 2 Yield® Soybeans – 5,717,084; 5,728,925; 5,804,425; 6,051,753; 6,660,911; 6,949,696; 7,141,722; RE39247; for Roundup Ready® Alfalfa – 5,362,865; 5,378,619; 5,659,122; 5,717,084; 5,728,925; 6,051,753; RE39247; for Genuity™ Roundup Ready® Canola – 5,378,619; 5,463,175; 5,717,084; 5,728,925; 5,750,871; 6,051,753; 6,083,878; RE38825; RE39247; for Roundup Ready® Corn – 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,040,407; 6,083,878; for Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,083,878; 6,825,400; RE39247; for Roundup Ready® Cotton – 5,352,605; 5,378,619; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,753,463; RE39247; for Genuity™ Roundup Ready® Flex Cotton – 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,660,911; 6,753,463; 6,949,696; 7,112,725; 7,141,722; 7,381,861; RE39247; for Roundup Ready® Soybeans – 5,352,605; 5,530,196; 5,717,084; 5,728,925; RE39247; for Genuity™ Roundup Ready® Sugarbeets – 5,322,938; 5,352,605; 5,378,619; 5,463,175; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; RE38825; RE39247; for YieldGard® Corn Borer corn – 5,352,605; 5,424,412; 5,484,956; 5,593,874; 5,859,347; 6,180,774; for YieldGard® Corn Borer with Roundup Ready® Corn – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,083,878; 6,180,774; RE39247; for YieldGard® Corn Borer with Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,501,009; 7,227,056; for YieldGard® Plus corn – 5,352,605; 5,424,412; 5,484,956; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,180,774; 6,501,009; 7,227,056; for YieldGard® Plus with Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,180,774; 6,501,009; 6,825,400; 7,227,056; RE39247; for YieldGard® Rootworm with Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,501,009; 6,825,400; 7,227,056; RE39247; for YieldGard VT PRO™ – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 6,051,753; 6,489,542; 6,645,497; 6,962,705; 7,064,249; 7,250,501; for YieldGard VT PRO/RR2™ – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,051,753; 6,083,878; 6,489,542; 6,825,400; 6,962,705; 7,064,249; 7,250,501; RE39247; for YieldGard VT Rootworm/RR2® – 5,322,938; 5,352,605; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,063,597; 6,083,878; 6,825,400; 7,227,056; RE39247; for YieldGard VT Triple® – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,180,774; 7,227,056; RE39247; for Genuity™ VT Triple PRO™ – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,051,753; 6,063,597; 6,083,878; 6,489,542; 6,645,497; 6,962,705; 7,064,249; 7,227,056; 7,250,501; RE39247; for tank mix – 6,239,072 ; for Genuity™ SmartStax™ – 5,276,268; 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,051,753; 6,063,597; 6,083,878; 6,489,542; 6,645,497; 6,962,705; 7,064,249; 7,112,665; 7,227,056; 7,250,501; RE39247;

Dow AgroScience Patent Rights for Genuity™ SmartStax™ – 6,573,240; 6,737,273; 6,218,188; 5,510,474; 6,020,190; 6,127,180; 6,548,291; 6,624,145; 6,340,593; 6,893,872; 6,083,499; 6,900,371; 6,943,282; 7,288,643; 7,323,556; 7,514,544; 7,417,132; 7,435,807; 7,449,564.

**Roundup Ready® Alfalfa** seed is currently not for sale or distribution. The movement and use of Roundup Ready® Alfalfa forage is subject to a USDA Administrative Order available at http://www.aphis.usda.gov/brs/pdf/RRA_A8_final.pdf. Cottonseed containing Monsanto traits may not be exported for the purpose of planting without a license from Monsanto. *B.t.* products may not yet be registered in all states. Check with your Monsanto representative for the registration status in your state.

**Growers may utilize the natural refuge option for varieties containing the Genuity™ Bollgard II® trait in the following states:** AL, AR, FL, GA, KS, KY, LA, MD, MS, MO, NC, OK, SC, TN, VA, and most of Texas (excluding the Texas counties of Brewster, Crane, Crockett, Culberson, El Paso, Hudspeth, Jeff Davis, Loving, Pecos, Presidio, Reeves, Terrell, Val Verde, Ward and Winkler). The natural refuge option does not apply to **Genuity™ Bollgard II®** cotton grown in areas where pink bollworm is a pest, including CA, AZ, NM, and the above listed Texas counties. It also remains the case that **Bollgard®** and **Genuity™ Bollgard II®** cotton may not be planted south of Highway 60 in Florida, and that **Bollgard** cotton cannot be planted in certain other counties in the Texas panhandle. Refer to the Technology Use Guide (TUG) and IRM Guide for additional information regarding Bollgard II, Bollgard, natural refuge and EPA-mandated geographical restrictions on the planting of *B.t.* cotton.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Genuity™ SmartStax™** commercialization is dependent on many factors, including successful conclusion of regulatory process. Genuity™ SmartStax™ has not been registered by the U.S. Environmental Protection Agency. It is a violation of federal law to promote or sell an unregistered pesticide. Tank mixtures: The applicable labeling for each product must be in the possession of the user at the time of application. Follow applicable use instructions, including application rates, precautions and restrictions of each product used in the tank mixture. Monsanto has not tested all tank mix product formulations for compatibility or performance other than specifically listed by brand name. Always predetermine the compatibility of tank mixtures by mixing small proportional quantities in advance.

**IMPORTANT: Grain Marketing and Seed Availability: Genuity™ VT Triple PRO™** has received the necessary approvals in the United States, however, as of **May 27, 2009**, approvals have not been received in all major corn export markets. **Genuity™ VT Triple PRO™** seed will only be available as part of a commercial demonstration program that includes grain marketing stewardship requirements. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted. Consult with your seed representative for current stewardship information. Bollgard®, Bollgard II®, Genuity™, Roundup®, Roundup Ready®, Roundup Ready 2 Yield®, Roundup Rewards®, SmartStax™, SmartStax and Design™, Vistive®, VT Triple PRO™, YieldGard®, YieldGard VT®, YieldGard VT Rootworm/RR2®, and YieldGard VT Triple® are trademarks of Monsanto Technology LLC. ©2009 Monsanto Company. [19634Apgd]

**GROWER SIGNATURE AND DATE REQUIRED** ▶

Name _____     Date 03-29-2010

*Please return all 4 pages (initialed and signed) to: Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141*

# Attachment 9

# 2010

**MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT**
*(Limited Use License)*

**Form Number**

---

**PLEASE MAIL THE SIGNED 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:**
Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Monsanto Technology/Stewardship Agreement ("Agreement") you must be the **operator/grower** for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, all individuals and entities having an ownership interest in any entities for which you obtain Seed,

and that Monsanto Company has not barred any of those individuals or entities from obtaining t...     t
match the signa...
Monsanto issue...     rs in
St. Louis, Misso...     lers
to issue a licens...

L 1 0 1 8 0 2 8

**Grower's Full Legal Name** (First/Middle/Last)    Dr.  X Mr.    Mrs.    Ms.    **Suffix** (Sr, Jr, II, III

Will Jones

**Grower's Mailing Address**
P.O. Box 1546

**Grower's City**
4A2oo City

**State**
MS

**Zip**
39194

**Area Code**    **Business Phone**    **Fax**
662  571-0051

**Email**

**Farm Business Name**
Jones Phanting Co. III

**Farm Physical Address (as listed with the FSA)**

**Farm City**
Tchula

**State**
MS

**Zip**

**Last Four of Social Security #**    **Role**
5075        Operator    (Owner/Operator)    **Farm Manager**    Other

## SEED SUPPLIER

**Business Name**
Jimmy Sanders Inc

**Area Code**    **Phone**
662  235-4016

**City**
Tchula

**State**
MS

**Zip**
39169

---

**THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:**

Lic. #: 5071 U225        Batch #:  ·  8524        Date: MAY 0 3 2010

---

**This Monsanto Technology/Stewardship Agreement is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page.**

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® soybeans, Genuity™ Roundup Ready 2 Yield® soybeans, YieldGard® Corn Borer corn, YieldGard® Rootworm corn, YieldGard® Rootworm with Roundup Ready® Corn 2 corn, YieldGard® Plus corn, YieldGard® Plus with Roundup Ready® Corn 2 corn, Roundup Ready® Corn 2 corn, YieldGard® Corn Borer with Roundup Ready® Corn 2 corn, YieldGard VT Triple™ corn, YieldGard VT Rootworm/RR2® corn, Genuity™ VT Triple PRO™ corn, Genuity™ SmartStax™ corn, Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Genuity™ Bollgard II® cotton, Bollgard II® with Roundup Ready® cotton, Genuity™ Roundup Ready® Flex cotton, Genuity™ Bollgard II® with Roundup Ready® Flex cotton, Vistive® low linolenic soybeans, Genuity™ Roundup Ready® Sugarbeets, Genuity™ Roundup Ready® Canola, Roundup Ready® Alfalfa, Monsanto patented germplasm and Monsanto Plant Variety Protection rights ("Monsanto Technologies"). Seed containing Monsanto Technologies are referred to herein as ("Seed"). This Agreement also contains Grower's stewardship

responsibilities and requirements associated with the use of Seed and Monsanto Technologies.

**1. GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**2. BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:**
Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this

---

———— *Page 1 of 4* ————

*Initial here ›*  

Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within

30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**3. FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

**4. GROWER AGREES:**
- To direct grain produced from these crops to appropriate markets as necessary. Any crop or material produced from these products can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted.
- Only to lawfully plant Roundup Ready® alfalfa; and not to plant Roundup Ready® alfalfa for the production of sprouts, or of seed unless under specific contract to produce seed. If growing Roundup Ready® alfalfa, to direct any product produced from a Roundup Ready® alfalfa seed or crop, including hay and hay products, only to those countries where regulatory approvals have been granted, and to grow and manage Roundup Ready® alfalfa in accordance with the Technology Use Guide.
- To accept and continue the obligations of this Monsanto Technology/Stewardship Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Monsanto Technology/Stewardship Agreement and they must have or obtain their own Monsanto Technology/Stewardship Agreement.
- To implement an Insect Resistance Management ("IRM") program as specified in the applicable Bollgard® and Genuity™ Bollgard II® cotton and YieldGard® corn sections of the most recent Technology Use Guide ("TUG") and the Grower and Insect Resistance Management Guide ("IRM/Grower Guide") and to cooperate and comply with these IRM programs.
- To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
- Not to save or clean any crop produced from Seed for planting and not to supply Seed produced from Seed to anyone for planting other than to a Monsanto licensed seed company.
- Not to transfer any Seed containing patented Monsanto Technologies to any other person or entity for planting.
- To plant and/or clean Seed for Seed production, if and only if, Grower has entered into a valid, written Seed production agreement with a Seed company that is licensed by Monsanto to produce Seed. Grower must either physically deliver to that licensed Seed Company or must sell for non-seed purposes or use for non-seed purposes all of the Seed produced pursuant to a Seed production agreement.
- Grower may not plant and may not transfer to others for planting any Seed that the Grower has produced containing patented Monsanto Technologies for crop breeding, research, or generation of herbicide registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.

- To use on Roundup Ready® or Genuity™ Roundup Ready® crops only a labeled Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready® gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready® gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY® CROP(S). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY® OR GENUITY™ ROUNDUP READY® CROP(S). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
- To read and follow the applicable sections of the TUG and the IRM/Grower Guide, which are incorporated into and is a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG and the IRM/Grower Guide as it may be amended from time to time.
- To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed.
- To pay all applicable fees due to Monsanto that are a part of, associated with or collected with the Seed purchase price or that are invoiced for the seed. If Grower fails to pay Monsanto for cotton related Monsanto Technologies, Grower agrees to pay Monsanto default charges at the rate of 14% per annum (or the maximum allowed by law whichever is less) plus Monsanto's reasonable attorneys' fees, court costs and all other costs of collection.
- To provide Monsanto copies of any records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Form 578 (custom print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for seed and chemical transactions. Such records shall be produced following Monsanto's actual (or attempted) oral communication with Grower and not later than seven (7) days after the date of a written request from Monsanto.
- To identify and allow Monsanto and its representatives access to land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein. Such inspection, examination or sampling shall be available to Monsanto and its representatives only after Monsanto's actual (or attempted) oral communication with Grower and after at least seven (7) days prior written request by Monsanto to Grower.
- To allow Monsanto to obtain Grower's internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

**5. GROWER RECEIVES FROM MONSANTO COMPANY:**
- A limited use license to purchase and plant Seed and apply Roundup® agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready® or Genuity™ Roundup Ready® crops. Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready® gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement.
- Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower under applicable U.S. patents listed below (other than the Dow AgroScience Patent Rights), to use Monsanto Technologies subject to the conditions listed in this Agreement. Dow AgroSciences LLC and Agrigenetics, Inc. (collectively "Dow AgroSciences") licenses the Grower under its applicable U.S. patents listed below (the "Dow AgroScience Patent Rights") to use Dow AgroSciences' Event TC 1507 and Event DAS 15229-7 to the extent either is present in any SmartStax Seed being obtained by Grower pursuant to this Agreement, Monsanto being authorized to act on Dow AgroSciences' behalf for this Agreement, subject to the conditions listed in this Agreement. These licenses do not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States. Grower is not authorized to transfer Seed to anyone outside of the U.S.
- Enrollment for participation in Roundup Rewards® program.
- A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, alfalfa, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), Roundup® agricultural herbicides or other glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop,

Initial here ›

and/or fenoxaprop to control volunteer Roundup Ready® Corn 2 corn in Grower's crops for the 2010 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

## 6. GROWER UNDERSTANDS:

- **Monsanto Company is a member of Excellence Through Stewardship™ (ETS).** These products containing Monsanto technologies have been commercialized in compliance with the ETS Product Launch Stewardship Guidance and the Monsanto Product Launch Stewardship policy, after meeting applicable regulatory requirements in key export markets with functioning regulatory systems. Any crop or material produced from these products may only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted. Growers should talk to their grain handler or product purchaser to confirm their buying position for these products. Excellence Through Stewardship™ is a service mark of Biotechnology Industry Organization.
- **Insect Resistance Management:** When planting any YieldGard®, Bollgard®, Genuity™ Bollgard II® products, Grower must implement an IRM program according to the size and distance guidelines specified in the TUG and the IRM/Grower Guide, including any supplemental amendments. Grower may lose Grower's limited use license to use these products if Grower fails to follow the IRM program required by this Agreement.
- **Crop Stewardship & Specialty Crops:** Refer to the section on Coexistence and Identity Preservation in the TUG for applicable information on crop stewardship and considerations for production of identity preserved crops.
- **Corn Trait Performance:** All hybrids containing Monsanto corn traits (YieldGard® Corn Borer corn, YieldGard® Rootworm corn, YieldGard® Plus corn, and Roundup Ready® Corn 2 corn) have been screened for the presence of the appropriate protein and have passed that screening prior to commercial sale. YieldGard® Rootworm corn and YieldGard® Plus corn hybrids have achieved industry leading success rates in excess of 99%. A small number of these hybrids may infrequently demonstrate variable levels of performance in fields and not meet grower expectations.

## 7. SPECIAL LIMITATIONS ON PURCHASES AND USE OF BOLLGARD® COTTON:

Grower may not purchase Bollgard® cotton seed or Bollgard® with Roundup Ready® cotton seed after September 30, 2009. Monsanto has petitioned the U.S. Environmental Protection Agency (EPA) to amend its registration to allow Monsanto to distribute any of this seed purchased by a Grower before September 30, 2009 in the spring of 2010 for planting during the 2010 growing season. Monsanto will publicly announce the EPA's decision when it is received. Whether the petition is granted or not, Grower must return any unplanted Bollgard® cotton seed no later than the end of the 2010 planting season. These restrictions do not apply to any Genuity™ Bollgard II® cotton seed products.

## 8. GENERAL TERMS:

Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower acknowledges that Grower has received a copy of Monsanto's Technology Use Guide ("TUG") and the Grower and Insect Resistance Management Guide ("IRM/Grower Guide"). To obtain additional copies of the TUG and/or the IRM/Grower Guide, contact Monsanto at 1-800-768-6387 or go to www.monsanto.com. Once effective, this Agreement will remain in effect until either the Grower or Monsanto choose to terminate the Agreement, as provided in Section 9 below. Information regarding new and existing Monsanto Technologies, including any additions or deletions to the U.S. patents licensed under this agreement, and any new terms will be mailed to you each year. Continuing use of Monsanto Technologies after receipt of any new terms constitutes Grower's agreement to be bound by the new terms.

## 9. TERMINATION:

Grower or Monsanto may choose to terminate this Agreement effective immediately by delivering written notice to either party. Grower must deliver the notice of termination to Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141. If this Agreement is terminated pursuant to such a notice, Grower's responsibilities and the other terms herein shall survive (such

as but not limited to Grower's obligation to use Seed for a single commercial crop) as to Seed previously purchased by the Grower.

In the event Grower violates the terms of this Agreement, then this Agreement shall automatically terminate. However, Grower's responsibilities and the other terms herein shall survive as to all Seed purchased or used by the Grower prior to such violation (such as but not limited to Grower's obligation to use Seed for a single commercial crop, Grower's obligation to pay Monsanto for its attorneys' fees, costs and other expenses incurred in enforcing its rights under this Agreement, and Grower's agreement to the choice of law and forum selection provisions contained herein). Further, Grower shall not be entitled to obtain a future limited-use license from Monsanto unless Monsanto provides Grower with specific written notice expressly recognizing the prior breach and prior termination of the limited-use license and expressly granting and/or reissuing the limited-use license previously obtained (and terminated) pursuant to this Agreement. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology Stewardship Agreement and Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Agreement and/or to have infringed one or more of the U.S. patents listed below, Grower agrees that, among other things, Monsanto and Dow Agrosciences, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle Monsanto and Dow Agrosciences, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages. If Grower is found by any court to have infringed one or more of the U.S. patents listed below or otherwise to have breached this Agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) and Dow AgroSciences, as appropriate, their attorneys' fees and costs and other expenses incurred in enforcing rights under this Agreement including, but not limited to, expenses incurred in the investigation of the breach of this Agreement and/or infringement of one or more of the U.S. patents listed below.

**Grower accepts the terms of the following NOTICE REQUIREMENT, LIMITED WARRANTY AND DISCLAIMER OF WARRANTY AND EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of Seed. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bags to Grower's seed dealer.**

## 10. NOTICE REQUIREMENT:

As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed regarding performance or non-performance of Monsanto Technologies or Seed, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety. Grower must deliver the notice to Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

## 11. LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:

Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

## 12. GROWER'S EXCLUSIVE LIMITED REMEDY:

THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED (INCLUDING CLAIMS BASED

Initial here › 

IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call the Monsanto Customer Relations Center at: 1-800-768-6387.

**13. PLEASE MAIL THE SIGNED 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

## 14. UNITED STATES PATENTS:

The licensed U.S. patents include: for Bollgard® cotton – 5,322,938; 5,352,605; 5,530,196; 6,943,282; for Genuity™ Bollgard II® cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,489,542; 6,943,282; 7,064,249; 7,223,907; for Genuity™ Bollgard II® with Roundup Ready® cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,378,619; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,489,542; 6,753,463; 6,943,282; 7,064,249; 7,223,907; RE39247; for Genuity™ Bollgard II® with Roundup Ready® Flex Cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,489,542; 6,660,911; 6,753,463; 6,943,282; 6,949,696; 7,064,249; 7,112,725; 7,141,722; 7,223,907; 7,381,861; RE39247; for Bollgard® with Roundup Ready® cotton – 5,322,938; 5,352,605; 5,378,619; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,753,463; 6,943,282; RE39247; for Bollgard® with Roundup Ready® Flex Cotton – 5,322,938; 5,352,605; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,660,911; 6,753,463; 6,943,282; 6,949,696; 7,112,725; 7,141,722; 7,381,861; RE39247; for Mavera® high value corn with lysine – 7,157,281; for Genuity™ Roundup Ready 2 Yield® Soybeans – 5,717,084; 5,728,925; 5,804,425; 6,051,753; 6,660,911; 6,949,696; 7,141,722; RE39247; for Roundup Ready® Alfalfa – 5,362,865; 5,378,619; 5,659,122; 5,717,084; 5,728,925; 6,051,753; RE39247; for Genuity™ Roundup Ready® Canola – 5,378,619; 5,463,175; 5,717,084; 5,728,925; 5,750,871; 6,051,753; 6,083,878; RE38825; RE39247; for Roundup Ready® Corn – 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,040,497, 6,083,878; for Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,083,878; 6,825,400; RE39247; for Roundup Ready® Cotton – 5,352,605; 5,378,619; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,753,463; RE39247; for Genuity™ Roundup Ready® Flex Cotton – 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,660,911; 6,753,463; 6,949,696; 7,112,725; 7,141,722; 7,381,861; RE39247; for Roundup Ready® Soybeans – 5,352,605; 5,530,196; 5,717,084; 5,728,925; RE39247; for Genuity™ Roundup Ready® Sugarbeets – 5,322,938; 5,352,605; 5,378,619; 5,463,175; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; RE38825; RE39247; for YieldGard™ Corn Borer corn – 5,352,605; 5,424,412; 5,484,956; 5,593,874; 5,641,876; 5,717,084; 5,859,347; 6,180,774; for YieldGard® Corn Borer with Roundup Ready® Corn – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,083,878; 6,180,774; RE39247; for YieldGard® Corn Borer with Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,083,878; 6,180,774; 6,825,400; RE39247; for YieldGard® Corn Rootworm corn – 5,352,605; 5,484,956; 6,063,597; 6,501,009; 7,227,056; for YieldGard® Plus corn – 5,352,605; 5,424,412; 5,484,956; 5,593,874; 5,859,347; 6,063,597; 6,180,774; 6,501,009; 7,227,056; for YieldGard® Plus with Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,180,774; 6,501,009; 6,825,400; 7,227,056; RE39247; for YieldGard® Rootworm with Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,501,009; 6,825,400; 7,227,056; RE39247; for YieldGard VT PRO™ – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 6,051,753; 6,489,542; 6,645,497; 6,962,705; 7,064,249; 7,250,501; for YieldGard VT PRO/RR2® – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,051,753; 6,083,878; 6,489,542; 6,825,400; 6,962,705; 7,064,249; 7,250,501; RE39247; for YieldGard VT Rootworm/RR2® – 5,322,938; 5,352,605; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,063,597; 6,083,878; 6,825,400; 7,227,056; RE39247; for YieldGard VT Triple® – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,180,774; 7,227,056; RE39247; for Genuity™ VT Triple PRO™ – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,051,753; 6,063,597; 6,083,878; 6,489,542; 6,645,497; 6,962,705; 7,064,249; 7,227,056; 7,250,501; RE39247; for tank mix – 6,239,072; for Genuity™ SmartStax™ – 5,276,268; 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,051,753; 6,063,597; 6,083,878; 6,489,542; 6,645,497; 6,962,705; 7,064,249; 7,112,665; 7,227,056; 7,250,501; RE39247;

Dow AgroScience Patent Rights for Genuity™ SmartStax™ – 6,573,240; 6,737,273; 6,218,188; 5,510,474; 6,020,190; 6,127,180; 6,548,291; 6,624,145; 6,340,593; 6,893,872; 6,083,499; 6,900,371; 6,943,282; 7,288,643; 7,323,556; 7,514,544; 7,417,132; 7,435,807; 7,449,564.

Roundup Ready® Alfalfa seed is currently not for sale or distribution. The movement and use of Roundup Ready® Alfalfa forage is subject to a USDA Administrative Order available at http://www.aphis.usda.gov/brs/pdf/RRA_A8_final.pdf. Cottonseed containing Monsanto traits may not be exported for the purpose of planting without a license from Monsanto. *B.t.* products may not yet be registered in all states. Check with your Monsanto representative for the registration status in your state.

Growers may utilize the natural refuge option for varieties containing the Genuity™ Bollgard II® trait in the following states: AL, AR, FL, GA, KS, KY, LA, MD, MS, MO, NC, OK, SC, TN, VA, and most of Texas (excluding the Texas counties of Brewster, Crane, Crockett, Culberson, El Paso, Hudspeth, Jeff Davis, Loving, Pecos, Presidio, Reeves, Terrell, Val Verde, Ward and Winkler). The natural refuge option does not apply to Genuity™ Bollgard II® cotton grown in areas where pink bollworm is a pest, including CA, AZ, NM, and the above listed Texas counties. It also remains the case that Bollgard® and Genuity™ Bollgard II® cotton may not be planted south of Highway 60 in Florida, and that Bollgard cotton cannot be planted in certain other counties in the Texas panhandle. Refer to the Technology Use Guide (TUG) and IRM Guide for additional information regarding Bollgard II, Bollgard, natural refuge and EPA-mandated geographical restrictions on the planting of *B.t.* cotton.

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Genuity™ SmartStax™ commercialization is dependent on many factors, including successful conclusion of regulatory process. Genuity™ SmartStax™ has not been registered by the U.S. Environmental Protection Agency. It is a violation of federal law to promote or sell an unregistered pesticide. Tank mixtures: The applicable labeling for each product must be in the possession of the user at the time of application. Follow applicable use instructions, including application rates, precautions and restrictions of each product used in the tank mixture. Monsanto has not tested all tank mix product formulations for compatibility or performance other than specifically listed by brand name. Always predetermine the compatibility of tank mixtures by mixing small proportional quantities in advance.

IMPORTANT: Grain Marketing and Seed Availability: Genuity™ VT Triple PRO™ has received the necessary approvals in the United States, however, as of May 27, 2009, approvals have not been received in all major corn export markets. Genuity™ VT Triple PRO™ seed will only be available as part of a commercial demonstration program that includes grain marketing stewardship requirements. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted. Consult with your seed representative for current stewardship information. Bollgard®, Bollgard II®, Genuity™, Roundup®, Roundup Ready®, Roundup Ready 2 Yield®, Roundup Rewards®, SmartStax™, SmartStax and Design™, Vistive®, VT Triple PRO™, YieldGard®, YieldGard VT®, YieldGard VT Rootworm/RR2®, and YieldGard VT Triple® are trademarks of Monsanto Technology LLC. ©2009 Monsanto Company. [19634Apgd]

**GROWER SIGNATURE AND DATE REQUIRED** ▶ _(signature)_ Name   4/28/2010 Date

*Please return all 4 pages (initialed and signed) to: Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141*

# Attachment 10

**2010** MONSANT
(Limited Us



L 1 0 0 6 2 7 9

Form Number

**PLEASE MAIL** Grow

**STEWARDSHIP AGREEMENT TO:**
150, St. Louis, MO 63141

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Monsanto Technology/Stewardship Agreement ("Agreement") you must be the **operator/grower** for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, all individuals and entities having an ownership interest in any entities for which you obtain Seed,

and that Monsanto Company has not barred any of those individuals or entities from obtaining this limited-use license. Your name must be filled in and must match the signature below. This Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's headquarters in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

**Grower's Full Legal Name** (First/Middle/Last)   Dr. ☐ Mr. ☐ Mrs. ☐ Ms.   Suffix (Sr, Jr, II, III)

Bernard  Bryan  Jones  IV

**Grower's Mailing Address**

PO BOX  1546

**Grower's City**                                                     **State**      **Zip**

YAZOO  CITY                                        MS       39194

**Area Code   Business Phone**                     **Fax**

662  746  8875          662 - 746  9086

**Email**

bbjones4th@gmail.com

**Farm Business Name**

Jones  Planting  Co III

**Farm Physical Address** (as listed with the FSA)

306  South  Main  St

**Farm City**                                                       **State**      **Zip**

YAZOO  City                                        MS       39194

**Last Four of Social Security #**   **Role**

6887     Operator ☑  Owner/Operator ☐   Farm Manager ☐   Other ☐

## SEED SUPPLIER

**Business Name**                                  **Area Code   Phone**

DULANEY  SEED                          662    627    7060

**City**                                                            **State**      **Zip**

CLARKSDALE                                       MS       38614

### THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:

Lic. #: 50716225              Batch #:             Date: MAR 2 9 2010

8687

**This Monsanto Technology/Stewardship Agreement is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page.**

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® soybeans, Genuity™ Roundup Ready 2 Yield® soybeans, YieldGard® Corn Borer corn, YieldGard® Rootworm corn, YieldGard® Rootworm with Roundup Ready® Corn 2 corn, YieldGard® Plus corn, YieldGard® Plus with Roundup Ready® Corn 2 corn, Roundup Ready® Corn 2 corn, YieldGard® Corn Borer with Roundup Ready® Corn 2 corn, YieldGard VT Triple® corn, YieldGard VT Rootworm/RR2® corn, Genuity™ VT Triple PRO™ corn, Genuity™ SmartStax® corn, Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Genuity™ Bollgard II® cotton, Bollgard II® with Roundup Ready® cotton, Genuity™ Roundup Ready® Flex cotton, Genuity™ Roundup Roundup Ready® Flex cotton, Vistive® low linolenic soybeans, Genuity™ Roundup Ready® Sugarbeets, Genuity™ Roundup Ready® Canola, Roundup Ready® Alfalfa, (Monsanto patented germplasm and Monsanto Plant Variety Protection rights ("Monsanto Technologies"). Seed containing Monsanto Technologies are referred to herein as ("Seed"). This Agreement also contains Grower's stewardship

responsibilities and requirements associated with the use of Seed and Monsanto Technologies.

1. **GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

2. **BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:** Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered by the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this

*Page 1 of 4*

Initial here ›  

Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within

30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**3. FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

**4. GROWER AGREES:**
- To direct grain produced from these crops to appropriate markets as necessary. Any crop or material produced from these products can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted.
- Only to lawfully plant Roundup Ready® alfalfa; and not to plant Roundup Ready® alfalfa for the production of sprouts, or of seed unless under specific contract to produce seed. If growing Roundup Ready® alfalfa, to direct any product produced from a Roundup Ready® alfalfa field as seed or crop, including hay and hay products, only to those countries where regulatory approvals have been granted, and to grow and manage Roundup Ready® alfalfa in accordance with the Technology Use Guide.
- To accept and continue the obligations of this Monsanto Technology/ Stewardship Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Monsanto Technology/Stewardship Agreement and they must have or obtain their own Monsanto Technology/Stewardship Agreement.
- To implement an Insect Resistance Management ("IRM") program as specified in the applicable Bollgard® and Genuity™ Bollgard II® cotton and YieldGard® corn sections of the most recent Technology Use Guide ("TUG") and the Grower and Insect Resistance Management Guide ("IRM/Grower Guide") and to cooperate and comply with these IRM programs.
- To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
- Not to save or clean any crop produced from Seed for planting and not to supply Seed produced from Seed to anyone for planting other than to a Monsanto licensed seed company.
- Not to transfer any Seed containing patented Monsanto Technologies to any other person or entity for planting.
- To plant and/or clean Seed for Seed production, if and only if, Grower has entered into a valid, written Seed production agreement with a Seed company that is licensed by Monsanto to produce Seed. Grower must either physically deliver to that licensed Seed Company or must sell for non-seed purposes or use for non-seed purposes all of the Seed produced pursuant to a Seed production agreement.
- Grower may not plant and may not transfer to others for planting any Seed that the Grower has produced containing patented Monsanto Technologies for crop breeding, research, or generation of herbicide registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.

- To use on Roundup Ready® or Genuity™ Roundup Ready® crops only a labeled Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready® gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready® gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY® CROP(S). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY® OR GENUITY™ ROUNDUP READY® CROP(S). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
- To read and follow the applicable sections of the TUG and the IRM/Grower Guide, which are incorporated into and is a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG and the IRM/Grower Guide as it may be amended from time to time.
- To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed.
- To pay all applicable fees due to Monsanto that are a part of, associated with or collected with the Seed purchase price or that are invoiced for the seed. If Grower fails to pay Monsanto for cotton related Monsanto Technologies, Grower agrees to pay Monsanto default charges at the rate of 14% per annum (or the maximum allowed by law whichever is less) plus Monsanto's reasonable attorneys' fees, court costs and all other costs of collection.
- To provide Monsanto copies of any records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for seed and chemical transactions. Such records shall be produced following Monsanto's actual (or attempted) oral communication with Grower and not later than seven (7) days after the date of a written request from Monsanto.
- To identify and allow Monsanto and its representatives access to land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein. Such inspection, examination or sampling shall be available to Monsanto and its representatives only after Monsanto's actual (or attempted) oral communication with Grower and after at least seven (7) days prior written request by Monsanto to Grower.
- To allow Monsanto to obtain Grower's Internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

**5. GROWER RECEIVES FROM MONSANTO COMPANY:**
- A limited use license to purchase and plant Seed and apply Roundup® agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready® or Genuity™ Roundup Ready® crops. Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready® gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement.
- Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower under applicable U.S. patents listed below (other than the Dow AgroScience Patent Rights), to use Monsanto Technologies subject to the conditions listed in this Agreement. Dow AgroSciences LLC and Agrigenetics, Inc. (collectively "Dow AgroSciences") licenses the Grower under its applicable U.S. patents listed below (the "Dow AgroScience Patent Rights") to use Dow AgroSciences' Event TC 1507 and Event DAS 15229-7 to the extent either is present in any SmartStax Seed being obtained by Grower pursuant to this Agreement, Monsanto being authorized to act on Dow AgroSciences' behalf for this Agreement, subject to the conditions listed in this Agreement. These licenses do not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States. Grower is not authorized to transfer Seed to anyone outside of the U.S.
- Enrollment for participation in Roundup Rewards® program.
- A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, alfalfa, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), Roundup® agricultural herbicides or other glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop,

Initial here › B J

and/or fenoxaprop to control volunteer Roundup Ready® Corn 2 corn in Grower's crops for the 2010 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

## 6. GROWER UNDERSTANDS:

- **Monsanto Company is a member of Excellence Through Stewardship℠ (ETS).** These products containing Monsanto technologies have been commercialized in compliance with the ETS Product Launch Stewardship Guidance and the Monsanto Product Launch Stewardship policy, after meeting applicable regulatory requirements in key export markets with functioning regulatory systems. Any crop or material produced from these products may only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted. Growers should talk to their grain handler or product purchaser to confirm their buying position for these products. Excellence Through Stewardship℠ is a service mark of Biotechnology Industry Organization.

- Insect Resistance Management: When planting any YieldGard®, Bollgard®, Genuity™ Bollgard II® products, Grower must implement an IRM program according to the size and distance guidelines specified in the TUG and the IRM/Grower Guide, including any supplemental amendments. Grower may lose Grower's limited use license to use these products if Grower fails to follow the IRM program required by this Agreement.

- Crop Stewardship & Specialty Crops: Refer to the section on Coexistence and Identity Preservation in the TUG for applicable information on crop stewardship and considerations for production of identity preserved crops.

- Corn Trait Performance: All hybrids containing Monsanto corn traits (YieldGard® Corn Borer com, YieldGard® Rootworm com, YieldGard® Plus com, and Roundup Ready® Corn 2 corn) have been screened for the presence of the appropriate protein and have passed that screening prior to commercial sale. YieldGard® Rootworm com and YieldGard® Plus corn hybrids have achieved industry leading success rates in excess of 99%. A small number of these hybrids may infrequently demonstrate variable levels of performance in fields and not meet grower expectations.

## 7. SPECIAL LIMITATIONS ON PURCHASES AND USE OF BOLLGARD® COTTON:

Grower may not purchase Bollgard® cotton seed or Bollgard® with Roundup Ready® cotton seed after September 30, 2009. Monsanto has petitioned the U.S. Environmental Protection Agency (EPA) to amend its registration to allow Monsanto to distribute any of this seed purchased by a Grower before September 30, 2009 in the spring of 2010 for planting during the 2010 growing season. Monsanto will publicly announce the EPA's decision when it is received. Whether the petition is granted or not, Grower must return any unplanted Bollgard® cotton seed no later than the end of the 2010 planting season. These restrictions do not apply to any Genuity™ Bollgard II® cotton seed products.

## 8. GENERAL TERMS:

Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower acknowledges that Grower has received a copy of Monsanto's Technology Use Guide ("TUG") and the Grower and Insect Resistance Management Guide ("IRM/Grower Guide"). To obtain additional copies of the TUG and/or the IRM/Grower Guide, contact Monsanto at 1-800-768-6387 or go to www.monsanto.com. Once effective, this Agreement will remain in effect until either the Grower or Monsanto choose to terminate the Agreement, as provided in Section 9 below. Information regarding new and existing Monsanto Technologies, including any additions or deletions to the U.S. patents licensed under this agreement, and any new terms will be mailed to you each year. Continuing use of Monsanto Technologies after receipt of any new terms constitutes Grower's agreement to be bound by the new terms.

## 9. TERMINATION:

Grower or Monsanto may choose to terminate this Agreement effective immediately by delivering written notice to either party. Grower must deliver the notice of termination to Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141. If this Agreement is terminated pursuant to such a notice, Grower's responsibilities and the other terms herein shall survive (such

as but not limited to Grower's obligation to use Seed for a single commercial crop) as to Seed previously purchased by the Grower.

In the event Grower violates the terms of this Agreement, then this Agreement shall automatically terminate. However, Grower's responsibilities and the other terms herein shall survive as to all Seed purchased or used by the Grower prior to such violation (such as but not limited to Grower's obligation to use Seed for a single commercial crop, Grower's obligation to pay Monsanto for its attorneys' fees, costs and other expenses incurred in enforcing its rights under this Agreement, and Grower's agreement to the choice of law and forum selection provisions contained herein). Further, Grower shall not be entitled to obtain a future limited-use license from Monsanto unless Monsanto provides Grower with specific written notice expressly recognizing the prior breach and prior termination of the limited-use license and expressly granting and/or reissuing the limited-use license previously obtained (and terminated) pursuant to this Agreement. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology Stewardship Agreement and Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Agreement and/or to have infringed one or more of the U.S. patents listed below, Grower agrees that, among other things, Monsanto and Dow Agrosciences, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle Monsanto and Dow Agrosciences, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages. If Grower is found by any court to have infringed one or more of the U.S. patents listed below or otherwise to have breached this Agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) and Dow AgroSciences, as appropriate, their attorneys' fees and costs and other expenses incurred in enforcing its rights under this Agreement including, but not limited to, expenses incurred in the investigation of the breach of this Agreement and/or infringement of one or more of the U.S. patents listed below.

**Grower accepts the terms of the following NOTICE REQUIREMENT, LIMITED WARRANTY AND DISCLAIMER OF WARRANTY AND EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of Seed. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bags to Grower's seed dealer.**

## 10. NOTICE REQUIREMENT:

As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed regarding performance or non-performance of Monsanto Technologies or Seed, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology or the Seed. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety. Grower must deliver the notice to Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

## 11. LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:

Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

## 12. GROWER'S EXCLUSIVE LIMITED REMEDY:

THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED (INCLUDING CLAIMS BASED

Initial here ›  BJ

IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call the Monsanto Customer Relations Center at: 1-800-768-6387.

**13. PLEASE MAIL THE SIGNED 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

**14. UNITED STATES PATENTS:**

The licensed U.S. patents include: for Bollgard® cotton – 5,322,938; 5,352,605; 5,530,196; 6,943,282; for Bollgard™ Bollgard II® cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,489,542; 6,943,282; 7,064,249; 7,223,907; for Genuity™ Bollgard II® with Roundup Ready® cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,378,619; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,489,542; 6,753,463; 6,943,282; 7,064,249; 7,223,907; RE39247; for Genuity™ Bollgard II® with Roundup Ready® Flex Cotton – 5,322,938; 5,338,544; 5,352,605; 5,362,865; 5,530,196; 5,659,122; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,489,542; 6,660,911; 6,753,463; 6,943,282; 6,949,696; 7,064,249; 7,112,725; 7,141,722; 7,223,907; 7,381,861; RE39247; for Bollgard® with Roundup Ready® cotton – 5,322,938; 5,352,605; 5,378,619; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,753,463; 6,943,282; for Bollgard® with Roundup Ready® Flex Cotton – 5,322,938; 5,352,605; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,660,911; 6,753,463; 6,943,282; 6,949,696; 7,112,725; 7,141,722; 7,381,861; RE39247; for Mavera® high value corn with lysine – 7,157,281; for Genuity™ Roundup Ready 2 Yield® Soybeans – 5,717,084; 5,728,925; 5,804,425; 6,051,753; 6,660,911; 6,949,696; 7,141,722; RE39247; for Roundup Ready® Alfalfa – 5,362,865; 5,378,619; 5,659,122; 5,717,084; 5,728,925; 6,051,753; RE39247; for Genuity™ Roundup Ready® Canola – 5,378,619; 5,463,175; 5,717,084; 5,728,925; 5,750,871; 6,051,753; 6,083,878; RE38825; RE39247; for Roundup Ready® Corn – 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,040,497; 6,083,878; for Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,083,878; 6,825,400; RE39247; for Roundup Ready® Cotton – 5,352,605; 5,378,619; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,753,463; RE39247; for Genuity™ Roundup Ready® Flex Cotton – 5,717,084; 5,728,925; 6,051,753; 6,083,878; 6,660,911; 6,753,463; 6,949,696; 7,112,725; 7,141,722; 7,381,861; RE39247; for Roundup Ready® Soybeans – 5,352,605; 5,530,196; 5,717,084; 5,728,925; RE39247; for Genuity™ Roundup Ready® Sugarbeets – 5,322,938; 5,352,605; 5,378,619; 5,463,175; 5,530,196; 5,717,084; 5,728,925; 6,051,753; 6,083,878; RE38825; RE39247; for YieldGard® Corn Borer corn – 5,352,605; 5,424,412; 5,484,956; 5,593,874; 5,859,347; 6,180,774; for YieldGard® Corn Borer with Roundup Ready® Corn – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,083,878; 6,180,774; RE39247; for YieldGard® Corn Borer with Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,180,774; 6,501,009; 7,227,056; for YieldGard® Plus corn – 5,352,605; 5,424,412; 5,484,956; 5,593,874; 5,859,347; 6,063,597; 6,180,774; 6,501,009; 7,227,056; for YieldGard® Plus with Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,180,774; 6,501,009; 6,825,400; 7,227,056; RE39247; for YieldGard® Rootworm with Roundup Ready® Corn 2 – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,501,009; 6,825,400; 7,227,056; RE39247; for YieldGard VT PRO® – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,489,542; 6,825,400; 6,962,705; 7,064,249; 7,250,501; for YieldGard VT PRO/RR2® – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,051,753; 6,083,878; 6,489,542; 6,825,400; 6,962,705; 7,064,249; 7,250,501; RE39247; for YieldGard VT Rootworm/RR2® – 5,322,938; 5,352,605; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,063,597; 6,083,878; 6,825,400; 7,227,056; RE39247; for YieldGard VT Triple® – 5,322,938; 5,352,605; 5,424,412; 5,484,956; 5,554,798; 5,593,874; 5,641,876; 5,717,084; 5,728,925; 5,859,347; 6,025,545; 6,063,597; 6,083,878; 6,180,774; 7,227,056; RE39247; for Genuity™ VT Triple PRO™ – 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,051,753; 6,063,597; 6,083,878; 6,489,542; 6,645,497; 6,962,705; 7,064,249; 7,227,056; 7,250,501; RE39247; for tank mix – 6,239,072 ; for Genuity™ SmartStax™ – 5,276,268; 5,322,938; 5,352,605; 5,378,619; 5,424,412; 5,554,798; 5,641,876; 5,717,084; 5,728,925; 6,025,545; 6,051,753; 6,063,597; 6,083,878; 6,489,542; 6,645,497; 6,962,705; 7,064,249; 7,112,665; 7,227,056; 7,250,501; RE39247;

Dow AgroScience Patent Rights for Genuity™ SmartStax™ – 6,573,240; 6,737,273; 6,218,188; 5,510,474; 6,020,190; 6,127,180; 6,548,291; 6,624,145; 6,340,593; 6,893,872; 6,083,499; 6,900,371; 6,943,282; 7,288,643; 7,323,556; 7,514,544; 7,417,132; 7,435,807; 7,449,564.

**Roundup Ready® Alfalfa** seed is currently not for sale or distribution. The movement and use of Roundup Ready® Alfalfa forage is subject to a USDA Administrative Order available at http://www.aphis.usda.gov/bra/pdf/RRA_AB_final.pdf. Cottonseed containing Monsanto traits may not be exported for the purpose of planting without a license from Monsanto. B.t. products may not yet be registered in all states. Check with your Monsanto representative for the registration status in your state.

Growers may utilize the natural refuge option for varieties containing the Genuity™ Bollgard II® trait in the following states: AL, AR, FL, GA, KS, KY, LA, MD, MS, MO, NC, OK, SC, TN, VA, and most of Texas (excluding the Texas counties of Brewster, Crane, Crockett, Culberson, El Paso, Hudspeth, Jeff Davis, Loving, Pecos, Presidio, Reeves, Terrell, Val Verde, Ward and Winkler). The natural refuge option does not apply to **Genuity™ Bollgard II®** cotton grown in areas where pink bollworm is a pest, including CA, AZ, NM, and the above listed Texas counties. It also remains the case that **Bollgard® and Genuity™ Bollgard II®** cotton may not be planted south of Highway 60 in Florida, and that **Bollgard** cotton cannot be planted in certain other counties in the Texas panhandle. Refer to the Technology Use Guide (TUG) and IRM Guide for additional information regarding Bollgard II, Bollgard, natural refuge and EPA-mandated geographical restrictions on the planting of B.t. cotton.

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Genuity™ SmartStax™ commercialization is dependent on many factors, including successful conclusion of regulatory process. Genuity™ SmartStax™ has not been registered by the U.S. Environmental Protection Agency. It is a violation of federal law to promote or sell an unregistered pesticide. Tank mixtures: The applicable labeling for each product must be in the possession of the user at the time of application. Follow applicable use instructions, including application rates, precautions and restrictions of each product used in the tank mixture. Monsanto has not tested all tank mix product formulations for compatibility or performance other than specifically listed by brand name. Always predetermine the compatibility of tank mixtures by mixing small proportional quantities in advance.

**IMPORTANT: Grain Marketing and Seed Availability: Genuity™ VT Triple PRO™** has received the necessary approvals in the United States, however, as of **May 27, 2009**, approvals have not been received in all major corn export markets. **Genuity™ VT Triple PRO™** seed will only be available as part of a commercial demonstration program that includes grain marketing stewardship requirements. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted. Consult with your seed representative for current stewardship information. Bollgard®, Bollgard II®, Genuity™, Roundup®, Roundup Ready®, Roundup Ready 2 Yield®, Roundup Rewards®, SmartStax™, SmartStax and Design™, Vistive®, VT Triple PRO™, YieldGard®, YieldGard VT®, YieldGard VT Rootworm/RR2®, and YieldGard VT Triple® are trademarks of Monsanto Technology LLC. ©2009 Monsanto Company. [19634Apgd]

**GROWER SIGNATURE AND DATE REQUIRED** ▶

Name

Date 2-4-2010

*Please return all 4 pages (initialed and signed) to:* Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

# Attachment 11

✓

# 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
*(Limited Use License)*

| Form Number |
|---|
| 900308490 |

**PLEASE MAIL THE SIGNED 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Monsanto Technology/Stewardship Agreement ("Agreement") you must be the **operator/grower** for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, all individuals and entities having an ownership interest in any entities for which you obtain Seed, and that

Monsanto previously has not barred any of those individuals or entities from obtaining this limited-use license. Your name must be filled in and must match the signature below. This Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's headquarters in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

**Grower's Full Legal Name (First/Middle/Last)**   Dr. ✗ Mr.   Mrs.   Ms.   Suffix (Sr., Jr., II, III)
William Thomas Jones

**Farm Business Name**
Jones Planting Company III

**Grower's Mailing Address**
P. O. Box 1546

**Farm Physical Address (as listed with the FSA)**
306 South Main St.

**Grower's City**
Yazoo City
**State** MS   **Zip** 39194

**Farm City**
Yazoo City
**State** MS   **Zip** 39194

**Area Code** 662   **Business Phone** 746 8875   **Fax**

**Last Four of Social Security #** XXX XX 5075
**Role** Operator   Owner/Operator ✗   Farm Manager   Other

**Email**
wijo166@yahoo.com

## SEED SUPPLIER

**Business Name**
Sanders   64563

**City** Tchula   **State** MS   **Zip** 39169

**Area Code**   **Phone**

L 0 9 5 7 F 2

## THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:

**Lic. #:** 50716225   **Batch #:**   7326-   **Date:** DEC 05 2009

**This Monsanto Technology/Stewardship Agreement** is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page.

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® soybeans, Genuity™ Roundup Ready 2 Yield® soybeans, YieldGard® Corn Borer corn, YieldGard® Rootworm corn, YieldGard® Rootworm with Roundup Ready® Corn 2 corn, YieldGard® Plus corn, YieldGard® Plus with Roundup Ready® Corn 2 corn, Roundup Ready® Corn 2 corn, YieldGard® Corn Borer with Roundup Ready® Corn 2 corn, YieldGard VT Triple™ corn, YieldGard VT Rootworm/RR2™ corn, Genuity™ VT Triple PRO™ corn, Genuity™ SmartStax™ corn, Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Genuity™ Bollgard II® cotton, Bollgard II® with Roundup Ready® cotton, Genuity™ Roundup Ready® Flex cotton, Genuity™ Bollgard II® with Roundup Ready® Flex cotton, Vistive® low linolenic soybeans, Genuity™ Roundup Ready® Sugarbeets, Genuity™ Roundup Ready® Canola, Roundup Ready® Alfalfa, Monsanto patented germplasm and Monsanto Plant Variety Protection rights ("Monsanto Technologies"). Seed containing Monsanto Technologies are referred to herein as ("Seed"). This Agreement also contains Grower's stewardship responsibilities and requirements associated with the use of Seed and Monsanto Technologies.

**1. GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**2. BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:** Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state or at another location in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**3. FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (ANY GROWER MUST BE FILED IN ST. LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE DIFFERENT BY THE PARTIES.

**4. GROWER AGREES:**
- To direct grain produced from these crops to appropriate markets as necessary. Any crop or material produced from these products can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted.
- Only to lawfully plant Roundup Ready® alfalfa; and not to plant Roundup Ready® alfalfa for the production of sprouts, or of seed unless under specific contract to produce seed. If growing Roundup Ready® alfalfa, to direct any product produced from a Roundup Ready® alfalfa seed or crop, including hay and hay products, only to those

countries where regulatory approvals have been granted, and to grow and manage Roundup Ready® alfalfa in accordance with the Technology Use Guide.
- To accept and continue the obligations of this Monsanto Technology/Stewardship Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Monsanto Technology/Stewardship Agreement and they must have or obtain their own Monsanto Technology/Stewardship Agreement.
- To implement an Insect Resistance Management ("IRM") program as specified in the applicable Bollgard® and Genuity™ Bollgard II® cotton and YieldGard® corn sections of the most recent Technology Use Guide ("TUG") and the Grower and Insect Resistance Management Guide ("IRM/Grower Guide") and to cooperate and comply with these IRM programs.
- To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
- Not to save or clean any crop produced from Seed for planting and not to supply Seed produced from Seed to anyone for planting other than to a Monsanto licensed seed company.
- Not to transfer any Seed containing patented Monsanto Technologies to any other person or entity for planting.
- To plant and/or clean Seed for Seed production, if and only if, Grower has entered into a valid, written Seed production agreement with a Seed company that is licensed by Monsanto to produce Seed. Grower must either physically deliver to that licensed Seed Company or must sell for non seed purposes or use for non-seed purposes all of the Seed produced pursuant to a Seed production agreement.
- Grower may not plant and may not transfer to others for planting any Seed that the Grower has produced containing patented Monsanto Technologies for crop breeding, research, or generation of herbicide registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.
- To use on Roundup Ready® or Genuity™ Roundup Ready® crops only a labeled Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready® gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready® gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHEN ARE LABELED FOR USE IN ROUNDUP READY® CROP(S). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY® OR GENUITY™ ROUNDUP READY® CROP(S). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
- To read and follow the applicable sections of the TUG and the IRM/Grower Guide, which are incorporated into and is a part of this Agreement. For specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG and the IRM/Grower Guide as it may be amended from time to time.
- To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto for the applicable Monsanto Technologies(ies) or from a licensed company's dealer authorized to sell such licensed Seed.
- To pay all applicable fees due to Monsanto that are a part of, associated with or collected with the Seed purchase price or that are invoiced for the seed. If Grower fails to pay Monsanto for cotton related Monsanto Technologies, Grower agrees to pay Monsanto default charges at the rate of 14% per annum (or the maximum allowed by law whichever is less) plus Monsanto's reasonable attorneys' fees, court costs and all other costs of collection.
- To provide Monsanto copies of any records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for seed and chemical transactions. Such records shall be produced following Monsanto's actual (or attempted) oral communication with Grower and not later than seven (7) days after the date of a written request from Monsanto.
- To identify and allow Monsanto and its representatives access to land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein. Such inspection, examination or sampling shall be available to Monsanto and its representatives only after Monsanto's actual (or attempted) oral communication with Grower and after at least seven (7) days prior written request by Monsanto to Grower.
- To allow Monsanto to obtain Grower's Internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

*[The Agreement continues on the reverse side of this page.]*

**GROWER SIGNATURE AND DATE REQUIRED** ▶
Wil Jones   Name
**Date** 11-25-2009

Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

**5. GROWER RECEIVES FROM MONSANTO COMPANY:**

**6. GROWER UNDERSTANDS:**

**7. SPECIAL LIMITATIONS ON PURCHASES AND USE OF BOLLGARD® COTTON:**

**8. GENERAL TERMS:**

**9. TERMINATION:**

**10. NOTICE REQUIREMENT:**

**11. LIMITED WARRANTY AND DISCLAIMER OF WARRANTY:**

**12. GROWER'S EXCLUSIVE LIMITED REMEDY:**

**13. PLEASE MAIL THE SIGNED 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:**

**14. UNITED STATES PATENTS:**

# Attachment 12

# 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
(Limited Use License)

**Form Number**
900202845

PLEASE MAIL THE SIGNED 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO: Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this [ ] s not barred any of those individuals or entities from obtaining this limited-
Stewardship Agreement ("Agreement") you must be the **operator/grower** [ ] must be filled in and must match the signature below. This Agreement
grow plants from Seed (as defined below). You represent that you have ful [ ] d when Monsanto issues the Grower a license number from Monsanto's
hereby bind to this Agreement yourself, all entities for which you obtain Se [ ] is, Missouri. Monsanto does not authorize seed dealers or seed retailers
and entities having an ownership interest in any entities for which you obt [ ] y kind for Monsanto Technologies.

**Grower's Full Legal Name (First/Middle/Last)** [ ] Dr. [✓] Mr. [ ] Mrs. [ ] Ms. Suffix (Sr, Jr, II, III)
MIKE PIPER

**Farm Business Name**
PIPER FARMS

**Grower's Mailing Address**
10427 E AMBASSADOR RD

**Farm Physical Address (as listed with the FSA)**

**Grower's City**
MT VERNON
**State** IL **Zip** 62864

**Farm City**
**State** **Zip**

**Area Code** 618 **Business Phone** 242-0084 **Fax**

**Last Four of Social Security #** XXX-XX-0349 / 0949
**Role** [ ] Operator [✓] Owner/Operator [ ] Farm Manager [ ] Other

**Email**
jad@mvn.net

## SEED SUPPLIER

Hybrids. Beck's Superior
6767 E 276th Street
Atlanta, IN 46031
1-800-937-2325
**State** **Zip**

**Area Code** **Phone**

Prior # 416315

## THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:

Lic. #: 416315     Batch #: 7707     Date: MAR 1 8 2010

This Monsanto Technology/Stewardship Agreement is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page.

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® soybeans, Genuity™ Roundup Ready 2 Yield® soybeans, YieldGard® Corn Borer corn, YieldGard® Rootworm corn, YieldGard® Rootworm with Roundup Ready® Corn 2 corn, YieldGard® Plus corn, YieldGard® Plus with Roundup Ready® Corn 2 corn, Roundup Ready® Corn 2 corn, YieldGard® Corn Borer with Roundup Ready® Corn 2 corn, YieldGard VT Triple™ corn, YieldGard VT Rootworm/RR2® corn, Genuity™ VT Triple PRO™ corn, Genuity™ SmartStax™ corn, Roundup Ready® Flex cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Genuity™ Bollgard II® cotton, Bollgard II® with Roundup Ready® Flex cotton, Genuity™ Roundup Ready® Flex cotton, Genuity™ Bollgard II® with Roundup Ready® Flex cotton, Vistive® low linolenic soybeans, Genuity™ Roundup Ready® SugarBeets, Genuity™ Roundup Ready® Canola, Roundup Ready® Alfalfa, Monsanto patented germplasm and Monsanto Plant Variety Protection rights ("Monsanto Technologies"). Seed containing Monsanto Technologies are referred to herein as ("Seed"). This Agreement also contains Grower's stewardship responsibilities and requirements associated with the use of Seed and Monsanto Technologies.

**1. GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**2. BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:** Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**3. FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

**4. GROWER AGREES:**
- To direct grain produced from these crops to appropriate markets as necessary. Any crop or material produced from these products can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted. It is a violation of national and international law to move material containing biotech traits across boundaries into nations where import is not permitted.
- Only to lawfully plant Roundup Ready® alfalfa; and not to plant Roundup Ready® alfalfa for the production of sprouts, or of seed unless under specific contract to produce seed. If growing Roundup Ready® alfalfa, to direct any product produced from a Roundup Ready® alfalfa seed or crop, including hay and hay products, only to those

countries where regulatory approvals have been granted, and to grow and manage Roundup Ready® alfalfa in accordance with the Technology Use Guide.
- To accept and continue the obligations of this Monsanto Technology/Stewardship Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land, and to notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Monsanto Technology/Stewardship Agreement and they must have or obtain their own Monsanto Technology/Stewardship Agreement.
- To implement an Insect Resistance Management ("IRM") program as specified in the applicable Bollgard® and Genuity™ Bollgard II® cotton and YieldGard® corn sections of the most recent Technology Use Guide ("TUG") and the Grower and Insect Resistance Management Guide ("IRM/Grower Guide") and to cooperate and comply with these IRM programs.
- To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
- Not to save or clean any crop produced from Seed for planting and not to supply Seed produced from Seed to anyone for planting other than to a Monsanto licensed seed company.
- Not to transfer any Seed containing patented Monsanto Technologies to any other person or entity for planting.
- To plant and/or clean Seed for Seed production. If and only if, Grower has entered into a valid, written Seed production agreement with a Seed company that is licensed by Monsanto to produce Seed. Grower must either physically deliver to that licensed Seed Company or must sell for non-seed purposes or use for non-seed purposes all of the Seed produced pursuant to a Seed production agreement.
- Grower may not plant and may not transfer to others for planting any Seed that the Grower has produced containing patented Monsanto Technologies for crop breeding, research, or generation of herbicide registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.
- To use on Roundup Ready® or Genuity™ Roundup Ready® crops only a labeled Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready® gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready® gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY® CROP(S). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY® OR GENUITY™ ROUNDUP READY® CROP(S). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
- To read and follow the applicable sections of the TUG and the IRM/Grower Guide, which are incorporated into and is a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG and the IRM/Grower Guide as it may be amended from time to time.
- To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed
- To pay all applicable fees due to Monsanto that are a part of, associated with or collected with the Seed purchase price or that are invoiced for the seed. If Grower fails to pay Monsanto for cotton related Monsanto Technologies, Grower agrees to pay Monsanto default charges at the rate of 14% per annum for the maximum allowed by law whichever is less) plus Monsanto's reasonable attorneys' fees, court costs and all other costs of collection.
- To provide Monsanto copies of any records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for seed and chemical transactions. Such records shall be produced following Monsanto's actual (or attempted) oral communication with Grower and not later than seven (7) days after the date of a written request from Monsanto.
- To identify and allow Monsanto and its representatives access to land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein. Such inspection, examination or sampling shall be available to Monsanto and its representatives only after Monsanto's actual (or attempted) oral communication with Grower and after at least seven (7) days prior written request by Monsanto to Grower.
- To allow Monsanto to obtain Grower's internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

[The Agreement continues on the reverse side of this page.]

**GROWER SIGNATURE AND DATE REQUIRED** ▶ _(signature)_     Date: 12-20-09

Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

**5. GROWER RECEIVES FROM MONSANTO COMPANY:**

**6. GROWER UNDERSTANDS:**

**7. SPECIAL LIMITATIONS ON PURCHASES AND USE OF BOLLGARD® COTTON:**

**8. GENERAL TERMS:**

**9. TERMINATION.**

**10. NOTICE REQUIREMENT.**

**11. LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:**

**12. GROWER'S EXCLUSIVE LIMITED REMEDY:**

**13. PLEASE MAIL THE SIGNED 2010 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141.

**14. UNITED STATES PATENTS:**

# Attachment 13

# 2019 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
(Limited Use License)

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Technology Stewardship Agreement you must be the operator/grower for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, and all individuals and entities having an ownership interest in any entities for which you obtain Seed, and that Monsanto Company, a subsidiary of Bayer AG, ("Monsanto") or a court has not barred any of

those individuals or entities from obtaining this limited-use license or accessing Seed. Your name must be filled in and must match the signature below. This Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's headquarters in St. Louis, Missouri.  Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

BARB NEWBURY PIPER

**Dr/Mr/Mrs/Ms    Grower's Full Legal Name (First/Middle/Last)                              Sr/Jr/II/III**

10427 E AMBASSADOR RD

**Grower's Mailing Address** (no P.O. Boxes)

MOUNT VERNON                     IL      62864

**Grower's City                                         State     Zip**

(618) 242-0084

**Office Phone** (include area code)          **Fax** (include area code)

(618) 534-3011                     JAD@MVN.NET

**Cell Phone** (include area code)          **Email**

PIPER FARMS

**Farm Business Name**

10427 E AMBASSADOR RD

**Farm Physical Address** (as listed with the FSA)

MOUNT VERNON                     IL      62864

**Farm City                                         State     Zip**

5990                     AUTHORIZED REPRESENTATIVE

**Last Four of Social Security #          Role** (Operator, Owner/Operator, Farm Manager, etc.)

If the above information changes, Grower agrees to promptly update this information via AgCelerate.com or by calling 1-800-768-6387, option 3.

## SEED SUPPLIERS

**Business Name**                                         **Area Code    Phone**

**City                     State     Zip**

**Business Name**                                         **Area Code    Phone**

**City                     State     Zip**

**This Monsanto Technology/Stewardship Agreement ("Agreement") is entered into between you ("Grower") and Monsanto Company ("Monsanto") and consists of the terms on this page and on the reverse side of this page and any applicable Riders.**

This Agreement grants Grower a limited license to use the following technologies in accordance with the terms of this Agreement:

**Canola Products**
Genuity® Roundup Ready® Spring Canola
Genuity® Roundup Ready® Winter Canola
TruFlex™ Canola with Roundup Ready® Technology*
TruFlex™ Canola with Roundup Ready® and LibertyLink® Technologies*
DEKALB® LibertyLink® Canola*

**Corn Products**
Roundup Ready® Corn 2
DroughtGard® Hybrids with Roundup Ready® Corn 2
DroughtGard® Hybrids with VT Double PRO® Corn
VT Double PRO® Corn
VT Double PRO® RIB Complete® Corn Blend
DroughtGard® Hybrids with VT Double PRO® RIB Complete® Corn Blend
Genuity® VT Triple PRO® Corn
Genuity® DroughtGard® Hybrids with VT Triple PRO® Corn

Genuity® VT Triple PRO® RIB Complete® Corn Blend
DroughtGard® Hybrids with VT Triple PRO® RIB Complete® Corn Blend
Trecepta™ Corn
Trecepta™ RIB Complete® Corn Blend
SmartStax® Corn
SmartStax® RIB Complete® Corn Blend
Performance Series™ Sweet Corn

**Cotton Products**
Bollgard II® Cotton
Genuity® Bollgard II® with Roundup Ready® Flex Cotton
Genuity® Roundup Ready® Flex Cotton
Bollgard II® XtendFlex® Cotton
Bollgard® 3 XtendFlex® Cotton
XtendFlex® Cotton

**Soybean Products**
Roundup Ready 2 Xtend® Soybeans
Genuity® Roundup Ready 2 Yield® Soybeans
Vistive® Gold Soybeans with Roundup Ready 2 Yield® Technology

and Monsanto patented germplasm and Monsanto Plant Variety Protection rights and any future seed technologies developed, licensed or owned by Monsanto that are made available to Grower ("Monsanto Technologies"). Seed containing Monsanto

Technologies are referred to herein as "Seed". The licensed U.S. patents and/or Plant Variety Protection (PVP) certificates for Monsanto Technologies can be found at the following web page: (www.monsantotechnology.com and/or on the product label.

**This Agreement includes an Alfalfa Rider and a Sugarbeet Rider, attached hereto, which is between Grower and Forage Genetics International, LLC ("FGI") and KWS SAAT SE ("KWS"), respectively. The Alfalfa Rider grants Grower a limited license to use Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology. The Sugarbeet Rider grants Grower a limited license to use Roundup Ready® Sugarbeets.**

This Agreement also contains Grower's stewardship responsibilities and requirements associated with the use of Seed and Monsanto Technologies. **In addition, this Agreement provides that any Cotton-related claims by Grower are subject to binding arbitration, as described in Section 4e below.**

*This product has received full approval for planting in the United States and is pending approval in certain export markets. Availability is subject to Monsanto's decision to commercialize, and product brand names may change. For canola products containing the LibertyLink® trait, grower must hold a valid and current BASF Liberty® and Trait Agreement before Grower purchases such products.

**1. GROWER AGREES:**

**a** To acquire Seed only from authorized seed companies in the United States with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of this Agreement, the Technology Use Guide ("TUG") and, if applicable, the appropriate Insect Resistance Management Grower Guide ("IRM Grower Guide"), as each may be unilaterally amended by Monsanto from time to time, which TUG and IRM Grower Guide are incorporated into and are a part of this Agreement, and to read before planting and strictly follow the requirements of the applicable

*[The Agreement continues on the following pages]*

**GROWER SIGNATURE AND DATE REQUIRED** ▶



DocuSigned by:
BARB NEWBURY PIPER
C13536EBA4DA4B9...

Name

6/25/2019

Date

seed bag or tag; to implement an Insect Resistance Management ("IRM") program, if applicable; and to cooperate and comply with these and any additional IRM/Integrated Pest Management ("IPM") programs Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Agreement, and Grower may lose its limited use license to use these products if Grower fails to comply with this Agreement, including by failing to follow the IRM program required by this Agreement. Monsanto further advises Grower to follow the recommendations and best management practices provided in the TUG, IRM Grower Guide and seed bag and/or tag label. Grower may obtain additional copies of the TUG or IRM Grower Guide or IPM information by contacting Monsanto at 1-800-768-6387 or by going to tug.monsanto.com.

**c** To pay all applicable royalties and technology fees for the use of the Monsanto Technologies and applicable fees due Monsanto that are part of, associated with the Seed purchase price or that are invoiced for the Seed. If Grower fails to pay Monsanto or any wholly owned Monsanto subsidiaries, for costs of Seed, Monsanto Technologies, and/or royalties, Grower agrees to pay Monsanto default late fees at the rate of 18% per annum (or the maximum allowed by law whichever is less) plus reasonable attorneys' fees, court costs and all other costs of collection. Monsanto or any affiliate has the right of set-off.

**d** To use Seed solely for a single planting of a commercial crop in the United States.

**e** Not to transfer any Seed to any other person or entity for planting, and not to export any Seed.

**f** Not to save or clean any crop produced from Seed for planting, and not to supply Seed produced from Seed to anyone for planting. Except to the extent specifically permitted by a valid TSA, the planting of any crop or Seed produced from Seed shall constitute infringement of Monsanto's U.S. patents.

**g** Not to plant and/or clean Seed for seed production unless, and only if, Grower has entered into a valid, written Seed production agreement with a seed company that is licensed by Monsanto to produce Seed (a "Licensee"), which agreement requires Grower to either physically deliver to the Licensee, sell for non-seed purposes or use for non-seed purposes all of the Seed produced; and not to purchase or otherwise obtain from the Licensee any of the Seed produced unless, after physical delivery by Grower to the Licensee, that Seed has been conditioned, packaged and delivered by the Licensee to Grower in the same manner as Seed sold by the Licensee to growers who have not entered into a Seed production agreement.

**h** Not to plant any Seed, or any Seed produced from Seed, for crop breeding, research, or generation of herbicide or other registration data.  Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.  Monsanto makes available separate license agreements to academic institutions for research.

**i** To use on crops containing Monsanto Technology only pesticides labeled for such use and follow current label directions.  MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROP(S) CONTAINING MONSANTO TECHNOLOGY.  MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING MONSANTO TECHNOLOGY.  ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO MONSANTO TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**j** To accept and continue the obligations of this Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to timely notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Agreement and they must have or obtain their own Monsanto Technology Stewardship Agreement to harvest or use, transfer or sell the harvested crop.

**k** To keep and provide Monsanto and its representatives following Monsanto's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

1. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and grower/dealer/retailer/applicator records for seed and chemical purchases and applications and all documentation required on the chemistry product label or by government regulation; and

2. the identity of, and access to, land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**l** To allow Monsanto to obtain Grower's internet service provider records to validate Grower's electronic signature, if applicable.

**m** To promptly notify Monsanto should any Grower Information provided to Monsanto herein change.

**n** To only direct crops or material produced from Seed only to appropriate grain handlers and/or markets to prevent movement to markets where the grain has not yet received regulatory approval for import and to notify such grain handlers that its crop has not yet received that approval. Grower acknowledges that any crop or material produced from Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted, and Grower purchases the Seed with that knowledge.

## 2. GROWER RECEIVES:

**a** A limited use license to purchase and to plant Seed pursuant to the terms of this Agreement in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate, dicamba or glufosinate herbicides over the top of crops as applicable, unless otherwise restricted by law. Monsanto (or the respective licensor) retains ownership of the Monsanto Technologies owned by it, including the gene technologies and varieties. These licenses do not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents (other than the Dow AgroSciences Patent Rights), to use Monsanto Technologies subject to the conditions listed in this Agreement and with respect to alfalfa and/or sugarbeet Seed, the conditions listed in the Alfalfa Rider and/or Sugarbeet Rider. Dow AgroSciences LLC and Agrigenetics, Inc. (collectively "DowAgroSciences") licenses Grower under its applicable U.S. patents (the "Dow AgroSciences Patent Rights") to use Dow AgroSciences' Event TC 1507 and Event DAS 59122-7 to the extent either is present in any SmartStax® Seed obtained by Grower pursuant to this Agreement, with Monsanto being authorized to act on Dow AgroSciences' behalf for this Agreement, subject to the conditions listed in this Agreement.

**c** Enrollment for participation in Roundup Ready PLUS® Crop Management Solutions.

**d** A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop labeled for use on those crops to control volunteer corn with Roundup Ready® 2 Technology in Grower's crops for the 2019 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix for use on glyphosate-tolerant soybean, cotton, or canola crops.

## 3. GENERAL TERMS:

**a** **Term:**  This Agreement will remain in effect until either Grower or Monsanto chooses to terminate the Agreement, as provided below.

**b** **Modification:**  Monsanto may unilaterally revise the terms and conditions of this Agreement, including the TUG, IRM Grower Guide, or seed bag, label and/or tag incorporated herein, from time to time. Grower shall verify the currently effective terms of this Agreement at least annually before February 1 at agcelerate.com. Monsanto will notify Grower of any amended terms, including information regarding new and existing Monsanto Technologies and any additions or deletions to the U.S. patents licensed under this Agreement. If Grower has provided Monsanto an e-mail address in conjunction with this Agreement, Monsanto may send Agreement amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of Monsanto Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Agreement.

**c** **Transferability:**  Grower may not transfer its rights or obligations to anyone else without the written consent of Monsanto. If Grower's rights or obligations are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights or obligations.

**d** **Binding Effect:**  If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e** **Termination:**  Monsanto may terminate this Agreement effective immediately by delivering written notice to Monsanto. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. Monsanto may terminate this Agreement for any reason, in whole or in part, by delivering written notice to Grower.

Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Seed for a single commercial crop) as to Seed previously purchased or used by Grower.

If Grower breaches the terms of this Agreement, Monsanto may terminate effective immediately Grower's rights under this Agreement. Grower will not be entitled to obtain a future limited-use license from Monsanto unless Monsanto provides Grower with specific written notice expressly recognizing the breach and termination of this Agreement and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology Stewardship Agreement and Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Agreement and/or to have infringed one or more of the U.S. patents, Grower

agrees that, among other things, Monsanto and Dow AgroSciences, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle Monsanto and Dow AgroSciences, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f  Attorneys' Fees:  If Grower is found by any court to have infringed one or more of the U.S. patents covering Monsanto Technologies or otherwise to have breached this Agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) and Dow AgroSciences, as appropriate, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.**

**g  Governing Law:**  This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**h  Waiver:**  The failure of Monsanto or any owners of patents to exercise one or more of its rights under this Agreement on one or more occasions shall not be deemed a waiver on the part of Monsanto or such patent owner to exercise such right(s) on any subsequent occasion.

**i  Entire Agreement:**  This Agreement, along with provisions in the TUG, IRM Grower Guide, and/or on seed bag and/or tag incorporated into this Agreement, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by Monsanto.

**4.  GROWER CLAIMS AND REMEDIES:**

**a  Notice requirement:**  As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed regarding performance or non- performance of Monsanto Technologies or Seed, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b  Limited Warranty and Disclaimer of Warranties:**  Monsanto warrants the Monsanto Technologies licensed hereunder only to the extent specifically set forth on the seed bag and/or tag, and warrants that the Monsanto Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS  ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN MONSANTO OR PARTIES AUTHORIZED BY MONSANTO.

**c  Grower's Exclusive Limited Remedy**:  THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**d  Forum Selection for Non-Cotton-Related Claims Made by Grower and All Other Claims:**  THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI (ANY LAWSUIT MUST BE FILED, IF IN FEDERAL COURT IN ST. LOUIS, MO, OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO), FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI. THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON-RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES. THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS MONSANTO AND ANY CURRENT OR FUTURE U.S.-BASED WHOLLY-OWNED SUBSIDIARIES OR AFFILIATES OF MONSANTO.

**e  Binding Arbitration for Cotton-Related Claims Made By Grower:**  Any claim, action or dispute made or asserted by a Grower (or any other person or entity claiming an interest in Grower's cotton crop, hereafter "Grower") against Monsanto, or any person or entity involved in the production, development, distribution, and/ or sale of the Seed containing any Monsanto Technology ("seller"), arising out of and/or in connection with this Agreement or the sale or performance of cotton Seed containing Monsanto Technology must be resolved by binding arbitration. The foregoing requirement to arbitrate specifically excludes any claim, action or dispute involving the infringement, validity, or enforceability of a patent or that otherwise arises under the U.S. patent laws. As a condition precedent to asserting any claim, action, or dispute regarding the quality of Monsanto cotton Seed or the agronomic performance of any Monsanto Technology in cotton Seed, Grower must provide notice to Monsanto pursuant to Section 4a of this Agreement. In the event that a claim is not resolved within 30 days after notice is supplied, any party may initiate arbitration. The parties acknowledge that this transaction involves interstate commerce, and agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Administered Arbitration Rules established by the International Institute for Conflict Prevention and Resolution, Inc. ("CPR"). GROWER MAY ONLY BRING A CLAIM IN ARBITRATION IN GROWER'S INDIVIDUAL CAPACITY AND GROWER WAIVES ANY RIGHT TO DO SO AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OR PUTATIVE CLASS. The arbitration hearing shall be conducted in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. Grower and Monsanto/sellers shall each pay one half of the CPR filing fee and one half of CPR's administrative and arbitrator fees and expenses as they are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all CPR fees in the final award. The arbitration proceedings and results shall remain confidential and shall not be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award or as otherwise required by law.

The 2019 Technology Use Guide (TUG) is available at tug.monsanto.com.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call 1-800-768-6387.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate.  Bollgard® 3 XtendFlex® Cotton, Bollgard II® XtendFlex® Cotton and XtendFlex® Cotton contain genes that confer tolerance to glyphosate, dicamba, and glufosinate. Roundup Ready 2 Xtend® Soybeans contain genes that confer tolerance to glyphosate and dicamba. Glyphosate herbicides will kill crops that are not tolerant to glyphosate.  Dicamba will kill crops that are not tolerant to dicamba.  Glufosinate will kill crops that are not tolerant to glufosinate.

Bollgard II®, Bollgard II® XtendFlex®, Bollgard®3, DEKALB®, DroughtGard®, Genuity®, Performance Series® RIB Complete®, Roundup Ready 2 Technology®, Roundup Ready 2 Xtend®, Roundup Ready 2 Yield®, Roundup Ready®, Roundup Ready PLUS®, Roundup®, SmartStax®, Trecepta™, TruFlex™, Vistive®, VT Double PRO®, VT Triple Genuity®, XtendFlex®, YieldGard VT Rootworm/RR2®, and YieldGard® are trademarks of Bayer Group.  LibertyLink® and the Water Droplet Design® are registered trademarks of BASF.  Herculex® is a registered trademark of Dow AgroSciences LLC.  HarvXtra® is a registered trademark of Forage Genetics International, LLC.  All other trademarks are the property of their respective owners. ©2018 Bayer Group.

*[The Agreement continues on the following pages]*

# 2019 ALFALFA RIDER

## TERMS AND CONDITIONS

The following terms and conditions of the Alfalfa Rider (the "Rider") supplement the Monsanto Technology Stewardship Agreement ("TSA" or the "Agreement"), are enforceable under that Agreement as well as independently and separately enforceable from the Agreement, and are applicable to Grower's purchase or use of Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology. This Rider is entered into between Grower and Forage Genetics International, LLC ("FGI") and consists of the terms and conditions set forth below. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.

This Rider grants Grower a limited license to use the following technologies in accordance with the terms of this Rider: Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology, patented alfalfa germplasm and Plant Variety Protection rights owned or exclusively licensed to FGI and any future seed technologies developed, licensed or owned by FGI that are made available to Grower ("FGI Technologies"), with Monsanto Company, a subsidiary of Bayer AG, ("Monsanto") authorized to act on FGI's behalf. Seed containing FGI Technologies, are collectively referred to herein as ("Alfalfa Seed"). The licensed U.S. patents and/or PVP certificates for FGI Technologies can be found at the following web page: monsantotechnology.com and/or on the product label.

This Rider also contains Grower's stewardship responsibilities and requirements associated with the use of Alfalfa Seed and FGI Technologies.

### 1. GROWER AGREES:

**a** To acquire Alfalfa Seed only from authorized seed companies in the United States with technology license(s) from FGI for the applicable FGI Technology(ies) or from a licensed company's dealer authorized to sell such licensed Alfalfa Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of the Technology Use Guide ("TUG") and, if applicable, the appropriate Insect Resistance Management Grower Guide ("IRM Grower Guide") and seed bag tag, as each may be amended from time to time, which TUG, IRM Grower Guide and seed bag tag are incorporated into and are a part of this Rider; to implement an Insect Resistance Management ("IRM") program, if applicable; and to cooperate and comply with these and any additional IRM/Integrated Pest Management ("IPM") programs FGI or Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Rider, and Grower may lose its limited use license to use these products if Grower fails to follow the IRM program required by this Rider. FGI further advises Grower to follow the recommendations provided in the TUG, IRM Grower Guide and seed bag tag.  Grower may obtain additional copies of the TUG or IRM Grower Guide or IPM information by contacting Monsanto at 1-800-768-6387 or by going to www.tug.monsanto.com.

**c** To pay all applicable royalties and technology fees for the use of the FGI Technologies and applicable fees due FGI that are part of, associated with the Alfalfa Seed purchase price or that are invoiced, or the Alfalfa Seed. If Grower fails to pay FGI or any wholly owned FGI subsidiaries, for costs of Alfalfa Seed, FGI Technologies, and/or royalties, Grower agrees to pay FGI default late fees at the rate of 18% per annum (or the maximum allowed by law whichever is less) plus reasonable attorneys' fees, court costs and all other costs of collection. FGI or any affiliate has the right of set-off.

**d** To use Alfalfa Seed solely for a commercial crop in the United States as provided below. Grower may use a single planting of Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology for multiple cuttings.

**e** Only to plant HarvXtra® Alfalfa with Roundup Ready® Technology in the United States, with the following states subject to execution of an additional FGI Seed and Feed Use Agreement: Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, Oregon, Utah, Washington and Wyoming (collectively the "Western States").

**f** That all planting of HarvXtra® Alfalfa with Roundup Ready® Technology in the Western States is permissible only upon separate execution by the Grower of a HarvXtra® Alfalfa with Roundup Ready® Technology Seed and Feed Use Agreement ("FGI Seed and Feed Use Agreement") that includes provisions limiting HarvXtra® with Roundup Ready® Technology seed and crops or hay products produced from HarvXtra® Alfalfa with Roundup Ready® Technology to only United States domestic use.

**g** All terms of the FGI Seed and Feed Use Agreement are incorporated into and made enforceable under this Rider.

**h** Not to transfer any Alfalfa Seed to any other person or entity for planting, and not to export any Alfalfa Seed.

**i** Not to save or clean any crop produced from Alfalfa Seed for planting, and not to supply seed produced from Alfalfa Seed to anyone for planting.  Except to the extent specifically permitted by a valid TSA, the planting of any crop or Seed produced from Seed shall constitute infringement of FGI's and/or Monsanto's U.S. patents.

**j** Not to plant and/or clean Alfalfa Seed for seed production unless, and only if, Grower has entered into a valid, written Alfalfa Seed production agreement with a seed company that is licensed by FGI to produce Alfalfa Seed (a "Licensee"), which agreement requires Grower to either physically deliver to the Licensee, sell for non-seed purposes or use for non-seed purposes all of the Seed produced; and not to purchase or otherwise obtain from the Licensee any of the Seed produced unless, after physical delivery by Grower to the Licensee, that Seed has been conditioned, packaged and delivered by the Licensee to Grower in the same manner as Seed sold by the Licensee to growers who have not entered into a Seed production agreement.

**k** Not to plant any Alfalfa Seed, or any seed produced from Alfalfa Seed, for crop breeding, research, or generation of herbicide or other registration data. Grower may not conduct research on Grower's crop produced from Alfalfa Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. FGI makes available separate license agreements to academic institutions for research.

**l** To use on crops containing FGI Technology only pesticides labeled for such use and follow current label directions. FGI DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES , INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROPS CONTAINING FGI TECHNOLOGY. FGI SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING FGI TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO FGI TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**m** To accept and continue the obligations of this Rider on any new land purchased or leased by Grower that has Alfalfa Seed planted on it by a previous owner or possessor of the land; and to timely notify in writing purchasers or lessees of land owned by Grower that has Alfalfa Seed planted on it that the FGI Technology is subject to this Rider and they must have or obtain their own Monsanto Technology Stewardship Agreement, Rider and FGI Seed and Feed Use Agreement, if applicable.

**n** To keep and provide to FGI and its representatives following FGI's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

   1. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Rider, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, grower/dealer/retailer/applicator records for seed and chemical purchases, and applications and all documentation required on the chemistry product label or by government regulation; and

   2. the identity of, and access to, land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**o** To allow FGI to obtain Grower's internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

**p** To promptly notify FGI or Monsanto should any Grower Information provided herein change.

**q** To direct any crops or hay products produced from HarvXtra® Alfalfa with Roundup Ready® Technology only to United States domestic use, except where FGI expressly grants permission in writing. Grower further agrees that it will only sell or convey such crops or hay products to persons or entities that agree they will not ship such crops or hay products outside the United States, except where FGI expressly grants permission in writing.

**r** Grower acknowledges that any crop or hay product produced from Alfalfa Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted, and Grower purchases the Alfalfa Seed with that knowledge.

**s** Until FGI expressly grants permission in writing (which will be withheld pending necessary import approvals), not to export, or to sell or convey to any person or entity that intends to export, Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology seed or crops or hay products produced from such seed to export countries where all necessary regulatory approvals have not been granted.  In addition, due to the unique cropping practices Grower agrees not to plant Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology in Imperial County, California, pending import approvals and until FGI grants express permission in writing for such planting.  Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology seed may not be planted for the production of sprouts.

### 2. GROWER RECEIVES FROM FGI:

**a** A limited use license to purchase and to plant Alfalfa Seed pursuant to the terms of this Rider in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate herbicides over the top of crops as applicable, unless otherwise restricted by law. FGI (or the respective licensor) retains ownership of the FGI Technologies owned by it, including the gene technologies and varieties. These licenses do not authorize Grower to plant Alfalfa Seed in the United States that has been purchased in another country or plant Alfalfa Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents, to use FGI Technologies subject to the conditions listed in this Rider.

**c** Enrollment for participation in Roundup Ready PLUS® Crop Management Solutions.

---

*[The Agreement continues on the following pages]*

**d** A limited use license to prepare and apply on glyphosate-tolerant alfalfa (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop labeled for use on those crops to control volunteer corn with Roundup Ready® 2 Technology in Grower's crops for the 2019 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix for use on glyphosate-tolerant alfalfa.

### 3. GENERAL TERMS:

**a** **Term:** This Rider will remain in effect until either Grower or FGI chooses to terminate the Rider, as provided below.

**b** **Modification:** FGI or Monsanto may unilaterally revise the terms and conditions of this Rider, including the Agreement and TUG incorporated herein, from time to time. Grower shall verify the currently effective terms of this Rider at least annually before February 1 at agcelerate.com. FGI or Monsanto will notify Grower of any amended terms, including information regarding new and existing FGI Technologies and any additions or deletions to the U.S. patents licensed under this Rider. If Grower has provided FGI or Monsanto an e-mail address in conjunction with the Agreement or this Rider, FGI or Monsanto may send Rider amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of FGI Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Rider.

**c** **Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of FGI. If Grower's rights or obligations are transferred with FGI's consent or by operation of law, this Rider is binding on the person or entity receiving the transferred rights or obligations.

**d** **Binding Effect:** If any provision of this Rider is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e** **Termination:** Grower may terminate this Rider effective immediately by delivering written notice to FGI. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. FGI may terminate this Rider for any reason, in whole or in part, by delivering written notice to Grower. Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Alfalfa Seed for a single commercial crop) as to Alfalfa Seed previously purchased or used by Grower. If Grower breaches the terms of this Rider, FGI may terminate effective immediately Grower's rights under this Rider. Grower will not be entitled to obtain a future limited-use license from FGI unless FGI provides Grower with specific written notice expressly recognizing the breach and termination of this Rider and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Monsanto Technology Stewardship Agreement or Rider and FGI's or Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Rider and/or to have infringed one or more of the Alfalfa Patent Rights, Grower agrees that, among other things, FGI, and Monsanto, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Alfalfa Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle FGI, and Monsanto, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f** **Attorneys' Fees:** If Grower is found by any court to have infringed one or more of the Alfalfa Patent Rights or otherwise to have breached any term of this Rider, Grower agrees to pay FGI and Monsanto, as appropriate, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.

**g** **Governing Law:** This Rider and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**h** **Waiver:** The failure of FGI or Monsanto or any owners of patents to exercise one or more of its rights under this Agreement on one or more occasions shall not be deemed a waiver on the part of FGI or Monsanto or such patent owner to exercise such right(s) on any subsequent occasion.

**i** **Entire Agreement:** This Agreement and Rider, along with provisions in the TUG and/or on bag tags and the terms of the FGI Seed and Feed Use Agreement, if applicable, which are incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Alfalfa Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by FGI or Monsanto.

### 4. GROWER CLAIMS AND REMEDIES:

**a** **Notice requirement:** As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against FGI and/or any seller of Alfalfa Seed regarding performance or non-performance of FGI Technologies or Alfalfa Seed, Grower must provide FGI a written, prompt, and timely notice (regarding performance or non-performance of the FGI Technologies) and to the seller of any Alfalfa Seed (regarding performance or non-performance of the Alfalfa Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the FGI Technology and/or the Alfalfa Seed. The notice shall include a statement setting forth the nature of the claim, name of the FGI Technology, and Alfalfa Seed products. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b** **Limited Warranty and Disclaimer of Warranties:** FGI warrants the FGI Technology licensed hereunder as set forth on the seed bag and/or tag to the extent specifically warranted thereon, or, to the extent specifically warranted therein, that the FGI Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology contained in planting Alfalfa Seed that has been purchased from FGI and seed companies licensed by FGI or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, FGI MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN FGI.

**c** **Grower's Exclusive Limited Remedy:** THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF FGI OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF ALFALFA SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE ALFALFA SEED INVOLVED OR, AT THE ELECTION OF FGI OR THE SEED SELLER, THE REPLACEMENT OF THE ALFALFA SEED. IN NO EVENT SHALL FGI OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**d** **FORUM SELECTION FOR CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI (ANY LAWSUIT MUST BE FILED, IF IN FEDERAL COURT IN ST. LOUIS, MO, OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO), FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE ALFALFA SEED OR THE FGI TECHNOLOGIES. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI. THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS FGI, ITS CURRENT OR FUTURE AFFILIATES AND ANY CURRENT OR FUTURE U.S.-BASED WHOLLY-OWNED SUBSIDIARIES OF FGI.

Thank you for choosing our advanced technologies. We look forward to working with you in the future.
If you have any questions regarding the FGI Technologies or this license, please call 1-800-768-6387.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate. Glyphosate herbicides will kill crops that are not tolerant to glyphosate. Roundup Ready 2 Technology® and Roundup Ready® are registered trademarks of Bayer Group. HarvXtra® is a registered trademark of Forage Genetics International, LLC. All other trademarks are the property of their respective owners. ©2018 Bayer Group.

*[The Agreement continues on the following page]*

# 2019 SUGARBEET RIDER

## TERMS AND CONDITIONS

The following terms and conditions of the Sugarbeet Rider (the "Rider") supplement the Monsanto Technology Stewardship Agreement ("TSA" or the "Agreement"), are enforceable under that Agreement as well as independently and separately enforceable from the Agreement, and are applicable to Grower's purchase or use of Roundup Ready® Sugarbeets. This Rider is entered into between Grower and KWS SAAT SE (KWS) and consists of the terms and conditions set forth below. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.

This Rider grants Grower a limited license to use Roundup Ready® Sugarbeets in accordance with the terms of this Rider ("KWS Technologies"), with respect to which KWS has authorized Monsanto Company, a subsidiary of Bayer AG, ("Monsanto") to act on KWS's behalf in accordance with the parties' commercial services agreement, that are made available to Grower. Seed containing KWS Technologies, are collectively referred to herein as ("Sugarbeet Seed"). Seed containing KWS Technologies, are collectively referred to herein as ("Sugarbeet Seed"). The licensed U.S. patents for KWS Technologies can be found at the following web page: monsantotechnology.com and/or on the product label.

This Rider also contains Grower's stewardship responsibilities and requirements associated with the use of Sugarbeet Seed and KWS Technologies.

### 1. GROWER AGREES:

**a**  To acquire Sugarbeet Seed only from authorized seed companies in the United States with technology license(s) from KWS for the applicable KWS Technology(ies) or from a licensed company's representative authorized to sell such licensed Sugarbeet Seed in the United States.

**b**  To obtain and read before planting and strictly follow the applicable requirements of the Technology Use Guide ("TUG") and seed package label, as each may be amended from time to time, which TUG and seed package label are incorporated into and are a part of this Rider; and to cooperate and comply with these and any additional stewardship programs KWS or Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Rider, and Grower may lose its limited use license to use these products if Grower fails to follow the stewardship guidelines required by this Rider. KWS further advises Grower to follow the recommendations provided in the TUG and seed package label.  Grower may obtain additional copies of the TUG by contacting Monsanto at 1-800-768-6387 or by going to tug.monsanto.com.

**c**  To use Sugarbeet Seed solely for a commercial crop in the United States as provided below. Grower may use a single planting of Roundup Ready® Sugarbeets to be processed for sugar, for energy production, or for animal feed.

**d**  Not to transfer any Sugarbeet Seed to any other person or entity for planting, and not to export any Sugarbeet Seed.

**e**  Not to plant any Sugarbeet Seed, or any seed produced from Sugarbeet Seed, for crop breeding, research, DNA analysis, generation of herbicide, or other registration data. Grower may not conduct research on Grower's crop produced from Sugarbeet Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.

**f**  To use on crops containing KWS Technology only pesticides labeled for such use and follow current label directions. KWS DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROPS CONTAINING KWS TECHNOLOGY. KWS SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING KWS TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO KWS TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**g**  To keep and provide to KWS and its representatives following KWS's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

  **1.**  copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Rider, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and grower/dealer/retailer/applicator records for seed and chemical purchases and applications and all documentation required on the chemistry product label or by government regulation; and

  **2.**  the identity of, and access to, land farmed by or at the direction of Grower and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**h**  To promptly notify KWS and Monsanto should any Grower Information provided herein change.

### 2. GROWER RECEIVES FROM KWS:

**a**  A limited use license to purchase and to plant Sugarbeet Seed pursuant to the terms of this Rider in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate herbicides over the top of crops as applicable, unless otherwise restricted by law. KWS (or the respective licensor) retains ownership of the KWS Technologies owned by it, including the gene technologies. These licenses do not authorize Grower to plant Sugarbeet Seed in the United States that has been purchased in another country or plant Sugarbeet Seed in another country that has been purchased in the United States.

**b**  A limited use license under applicable U.S. patents, to use KWS Technologies subject to the conditions listed in this Rider.

### 3. GENERAL TERMS:

**a  Term:**  This Rider will remain in effect until either Grower or KWS chooses to terminate the Rider, as provided below.

**b  Modification:**  KWS may unilaterally revise the terms and conditions of this Rider, including the Agreement and TUG incorporated herein, from time to time. Grower shall verify the currently effective terms of this Rider at least annually before February 1 at agcelerate.com. KWS or Monsanto will notify Grower of any amended terms, including information regarding new and existing KWS Technologies and any additions or deletions to the U.S. patents licensed under this Rider. If Grower has provided KWS or Monsanto an e-mail address in conjunction with the Agreement or this Rider, KWS or Monsanto may send Rider amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of KWS Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Rider.

**c  Transferability:**  Grower may not transfer its rights or obligations to anyone else without the written consent of KWS.  If Grower's rights or obligations are transferred with KWS's consent or by operation of law, this Rider is binding on the person or entity receiving the transferred rights or obligations.

**d  Binding Effect:**  If any provision of this Rider is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e  Termination:**  Grower may terminate this Rider effective immediately by delivering written notice to KWS. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. KWS may terminate this Rider for any reason, in whole or in part, by delivering written notice to Grower. Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Sugarbeet Seed for a single commercial crop) as to Sugarbeet Seed previously purchased or used by Grower.  If Grower breaches the terms of this Rider, KWS may terminate effective immediately Grower's rights under this Rider.  Grower will not be entitled to obtain a future limited-use license from KWS unless KWS provides Grower with specific written notice expressly recognizing the breach and termination of this Rider and granting a new limited-use license.  Grower expressly acknowledges that Grower's submission of a new Monsanto Technology Stewardship Agreement or Rider and KWS's or Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect.  If Grower is found by any court to have breached any term of this Rider and/or to have infringed one or more of the Sugarbeet Patent Rights, Grower agrees that, among other things, KWS shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Sugarbeet Seed for sale.  Additionally, Grower agrees that any such finding of infringement by Grower shall entitle KWS to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f  Attorneys' Fees:  If Grower is found by any court to have infringed one or more of the Sugarbeet Patent Rights or otherwise to have breached any term of this Rider, Grower agrees to pay KWS, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.**

**g  Governing Law and Forum:**  This Rider and the parties' relationship shall be governed by the laws of the State of Minnesota and the United States (without regard to the choice of law rules).  Any dispute arising out of or relating to this Rider, the parties' relationship, KWS technologies, or the Sugarbeet Seed shall be commenced and maintained exclusively in the state or federal courts of Minnesota.  Grower waives any objection to venue or inconvenience of forum and voluntarily submits to the jurisdiction of these courts.

**h  Waiver:**  The failure of KWS or any owners of patents to exercise one or more of its rights under this Rider on one or more occasions shall not be deemed a waiver on the part of KWS or such patent owner to exercise such right(s) on any subsequent occasion.

**i  Entire Agreement:**  This Agreement and Rider, along with provisions in the TUG and/or on package labels and the terms of the KWS Seed and Feed Use Agreement, if applicable, which are incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Sugarbeet Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by KWS or Monsanto.

**4.  GROWER CLAIMS AND REMEDIES:**

**a  Notice requirement:**  As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against KWS and/or any seller of Sugarbeet Seed regarding performance or non-performance of KWS Technologies or Sugarbeet Seed, Grower must provide KWS a written, prompt, and timely notice (regarding performance or non-performance of the KWS Technologies) and to the seller of any Sugarbeet Seed (regarding performance or non-performance of the Sugarbeet Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted.  The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the KWS Technology and/or the Sugarbeet Seed.  The notice shall include a statement setting forth the nature of the claim, name of the KWS Technology, and Sugarbeet Seed product.  Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b  Limited Warranty and Disclaimer of Warranties:**  KWS warrants the KWS Technology licensed hereunder only as specifically set forth on the seed container and/or package label and warrants that the KWS Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Sugarbeets contained in planting Sugarbeet Seed that has been purchased from KWS and seed companies licensed by KWS or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, KWS MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN KWS.

**c  Grower's Exclusive Limited Remedy:**  THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF KWS OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SUGARBEET SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SUGARBEET SEED INVOLVED OR, AT THE ELECTION OF KWS OR THE SEED SELLER, THE REPLACEMENT OF THE SUGARBEET SEED. IN NO EVENT SHALL KWS OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**h  Waiver:**  The failure of KWS or any owners of patents to exercise one or more of its rights under this Rider on one or more occasions shall not be deemed a waiver on the part of KWS or such patent owner to exercise such right(s) on any subsequent occasion.

**i  Entire Agreement:**  This Agreement and Rider, along with provisions in the TUG and/or on package labels and the terms of the KWS Seed and Feed Use Agreement, if applicable, which are incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Sugarbeet Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by KWS or Monsanto.

**4.  GROWER CLAIMS AND REMEDIES:**

**a  Notice requirement:**  As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against KWS and/or any seller of Sugarbeet Seed regarding performance or non-performance of KWS Technologies or Sugarbeet Seed, Grower must provide KWS a written, prompt, and timely notice (regarding performance or non-performance of the KWS Technologies) and to the seller of any Sugarbeet Seed (regarding performance or non-performance of the Sugarbeet Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted.  The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the KWS Technology and/or the Sugarbeet Seed.  The notice shall include a statement setting forth the nature of the claim, name of the KWS Technology, and Sugarbeet Seed product.  Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b  Limited Warranty and Disclaimer of Warranties:**  KWS warrants the KWS Technology licensed hereunder only as specifically set forth on the seed container and/or package label and warrants that the KWS Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Sugarbeets contained in planting Sugarbeet Seed that has been purchased from KWS and seed companies licensed by KWS or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, KWS MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN KWS.

**c  Grower's Exclusive Limited Remedy:**  THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF KWS OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SUGARBEET SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SUGARBEET SEED INVOLVED OR, AT THE ELECTION OF KWS OR THE SEED SELLER, THE REPLACEMENT OF THE SUGARBEET SEED. IN NO EVENT SHALL KWS OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies.  We look forward to working with you in the future.
If you have any questions regarding the KWS Technologies or this license, please call 1-800-768-6387.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate. Glyphosate herbicides will kill crops that are not tolerant to glyphosate.
Roundup Ready 2 Technology® and Roundup Ready® are registered trademarks of Bayer Group. All other trademarks are the property of their respective owners. ©2018 Bayer Group.

# Attachment 14

# 2001 MONSANTO TECHNOLOGY AGREEMENT *North Central/Plains*

## FARM INFORMATION

Please complete this section with your farm business information. The individuals and entities bound by the terms of this Agreement shall include the farm business listed below as well as all individuals or entities affiliated with, related to or having an ownership in such farm business. Your name must be filled in and must match the signature below.

☐ Dr.   ☒ Mr.   ☐ Mrs.   ☐ Ms.

**What is your role on the farm?**
*(Check One)*

Farm Business Name
J O H N   C   S W A N S O N

Your Name (First/Middle/Last)
P O   B O X   5 3 3

Business Address
S I N C L A I R V I L L E         N Y   1 4 7 8 2

Business City                                    State    Zip

7 1 6   9 6 2 - 4 7 4 5

Area Code    Business Phone              Area Code    FAX

E-mail Address

☐ Owner
☐ Owner/Oper.
☐ Operator
☐ Farm Mgr.
☐ Farmer/Dealer
☐ Other

*Describe*

**FORM NUMBER**
020415379

## CROP INFORMATION FOR THE 2001 GROWING SEASON

Please fill in the planned acres and type of seed you are interested in for the 2001 growing season, so we can keep you updated on important product information. (This section is NOT a purchase commitment or contract.)

**TOTAL Crop Acres Planned for 2001**
*(All Varieties)*

| Crop | Acres |
|------|-------|
| Soybeans | 0 acres |
| Corn | 126 acres |
| Rice | 0 acres |
| Wheat | 0 acres |
| Sugarbeets | 0 acres |
| Canola | 0 acres |

**TOTAL Planned Technology Acres for 2001**

| Technology | Acres |
|------|-------|
| Roundup Ready* Soybeans | 0 acres |
| YieldGard* Insect Protected Corn | 0 acres |
| Roundup Ready Corn | 50 acres |
| YieldGard/Roundup Ready Corn | 0 acres |
| Roundup Ready Sugarbeets | 0 acres |
| Roundup Ready Canola | 0 acres |

## PRIMARY AG CHEMICAL RETAILER

Business Name
A G N A 7

Area Code    Phone              City                          State

## CROP CONSULTANT INFORMATION

Business Name

Contact Name (First/Middle/Last)

Mailing Address

City                                    State    Zip

Area Code    Business Phone              Area Code    FAX

L0422922

## PLEASE SEND ME ADDITIONAL TECHNOLOGY CARDS

Upon completion and submission of this page, you will receive a Technology Card with your name and individual Technology ID number. If more than one individual will be purchasing under this Agreement, you may request additional cards. These cards should be presented when purchasing MONSANTO gene technologies and for redeeming benefits offered under Roundup Rewards.

☐ Please send me _____ additional cards.

## SIGNATURE & DATE REQUIRED

I acknowledge that I have read and understand the terms and conditions of this Agreement, including the Monsanto Technology Use Guide and the provisions related to the Disclaimer of Warranties and Exclusive Remedy. If you do not agree to these terms, you should return the unopened bags of seed to your dealer. The undersigned acknowledges that he/she has the authority to bind the individuals and/or entities subject to this Agreement.

*John C. Swanson*                    11-7-2001

Must be signed by the customer listed above.          Date

MONSANTO COPY

# 2001 MONSANTO TECHNOLOGY AGREEMENT

We appreciate your interest in Monsanto's advanced technologies and the exciting benefits they offer. This Monsanto Technology Agreement covers Roundup Ready® soybeans, YieldGard® corn, Roundup Ready® corn, Roundup Ready® corn with YieldGard®, Roundup Ready® sugarbeets and Roundup Ready® canola.

For your convenience, this Agreement remains in effect until either you or Monsanto choose to terminate the Agreement. Once you enroll, information regarding new and existing technologies and any new terms will be mailed to you each year. Continuing to use Monsanto's technologies after receipt of these new terms constitutes your agreement to be bound by the terms. Additionally, by completing this Agreement, you are automatically enrolled in the value package called Roundup Rewards™, designed to bring increased benefits to you.

## YOU RECEIVE:
- Opportunity to purchase and plant seed containing these technologies under this Agreement.
- Opportunity to participate in Roundup Rewards for applicable crop(s).

## YOU UNDERSTAND:
- These Monsanto gene technologies are protected under U.S. patent law. Monsanto licenses the grower, under applicable patents* owned or licensed by Monsanto, to use these technologies under the conditions listed below. This Agreement only covers the United States, and does not authorize planting of seed in the United States which has been purchased in another country or planting of seed in another country which has been purchased in the United States.
- Grain/commodities harvested from Roundup Ready corn, Roundup Ready corn with YieldGard, Roundup Ready canola and Roundup Ready sugarbeets are approved for U.S. food and feed use, but not yet approved in certain export markets where approval is not likely to be received before the end of 2001. As a result, the grower is restricted from introducing such grain/commodities into channels of trade where the potential for export to such markets exists. The grower must channel such grain/commodities for feeding on farm, use in domestic feed lots or other uses in domestic markets only. Growers should refer to Monsanto's Technology Use Guide for information on crop stewardship regarding the potential movement of pollen to neighboring crops*. *For assistance in locating domestic outlets for corn grain/commodities, view the ASTA web site at www.amseed.org or contact Monsanto at 1-800-768-6387.*
- The gene technologies referenced in this Agreement can only be used in locations where the products have been approved for use by all required governmental agencies.

## YOU AGREE:
- To use the seed containing Monsanto gene technologies solely for planting a single commercial crop.
- Not to supply any of this seed to any other person or entity for planting, and not to save any crop produced from this seed for replanting, or supply seed produced from this seed to anyone for replanting.
- Neither to use this seed nor to provide it to anyone else to use for crop breeding, research, generation of herbicide registration data or seed production.
- To use in Roundup Ready crops only a Roundup® brand or other herbicide which has been registered for use in the particular Roundup Ready crop approved by all required governmental agencies. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY CROP(S). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY CROP(S). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THAT COMPANY.
- To purchase seed containing these gene technologies only from a seed company with required technology license(s) from Monsanto and to pay the applicable Technology Fee for the particular product being purchased.
- To implement an Insect Resistance Management program as specified in the applicable YieldGard corn sections of the Technology Use Guide and to comply with Insect Resistance Management programs and research.*
- To channel grain produced to domestic use as necessary to prevent movement to markets where the grain is not yet approved for import.

## GENERAL CONDITIONS:
The grower's rights may not be transferred to anyone else without written consent of Monsanto. If the grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights.

If the grower violates the terms of this Agreement, in addition to other remedies available to the technology provider(s), the grower's rights under this Agreement will terminate immediately and the grower forfeits any right to plant an Agreement in the future and that violation may result in infringement of one or more of the patents that relate to that product. The grower agrees that the technology provider(s) are entitled to recover their full amount of legal fees and other costs of enforcing this Agreement. If the Agreement is terminated, the grower will no longer have a right under this Agreement to purchase seed containing these technologies, however, any obligations that arose before termination will continue in effect. In the event that the grower saves, supplies, sells or acquires seed for planting in violation of this Agreement and license restriction, in addition to all remedies for patent infringement and/or other remedies available to the technology provider(s), the grower agrees that damages will include a claim for liquidated damages that shall be equal to the gross revenue from the seed for grain production (calculated based upon the Chicago Board of Trade price for the applicable grain/ commodity as of August 1st of the year in question and the USDA stated U.S. average yield for such crop for the year in question). Grower consents to Monsanto review of Farm Service Agency crop reporting information including Forms 578 and corresponding aerial photographs and dealer/retailer invoices for seed and chemical transactions.

Grower acknowledges that grower has received a copy of Monsanto's Technology Use Guide and has read and agrees to abide by and be bound by the terms of this Guide.

Monsanto retains ownership of the licensed genes (for example the Roundup Ready gene), and the gene technologies, and the grower receives the right to use the licensed genes and technology as specified in this Agreement.

Grower is deemed to have accepted the terms of the following LIMIT OF WARRANTY AND LIABILITY upon signing this Agreement and/or opening a bag of seed containing Monsanto gene technology, which terms may not be varied by any oral or written agreement.

If grower does not agree to be bound by the following conditions of purchase or use, he/she should return the unopened bags to his/her seed dealer.

## NOTICE REQUIREMENT:
As a condition precedent to the grower, or any other person with an interest in grower's crop, asserting any controversy, claim, action, or dispute against Monsanto and/or any seller of seed containing Monsanto's gene technologies regarding performance or non-performance of the gene technologies or the seed in which it is contained, the grower must provide prompt and timely notice to Monsanto (regarding performance or non-performance of the gene technologies) and/or the seller of any seed (regarding performance or non-performance of the seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. For purposes of this Agreement, such notice shall be insufficient if it is provided more than 15 days after the issue(s) regarding performance or non-performance of the gene technology and/or the seed in which it is contained is first observed. The notice shall include a statement setting forth the nature of the claim, and the technology and/or seed variety in question.

Monsanto warrants that the Monsanto gene technology licensed hereunder will perform as set forth in the Monsanto Technology Use Guide when used in accordance with directions. This warranty applies only to Monsanto gene technology contained in planting seed that has been purchased from a seed company licensed by Monsanto, or such seed company's authorized dealers or distributors, and planted from the original sealed bag. EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED. THERE IS NO IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE OR MERCHANTABILITY.

THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF A PRODUCT CONTAINING MONSANTO'S GENE TECHNOLOGY (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, OTHER TORT OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF SUCH PRODUCT INVOLVED, OR, AT THE ELECTION OF MONSANTO OR ANY SELLER, THE REPLACEMENT OF SUCH QUANTITY, OR IF NOT ACQUIRED BY PURCHASE, REPLACEMENT OF SUCH QUANTITY. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES.

THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF MISSOURI AND THE UNITED STATES (OTHER THAN THE CHOICE OF LAW RULES). THE PARTIES CONSENT TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, STATE OF MISSOURI, FOR ALL DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THE USE OF THE SEED OR THE TECHNOLOGIES AS PROVIDED THROUGH THIS AGREEMENT OR ITS RELATED PARTS.

If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Thank you for choosing our advanced technologies. We look forward to working with you in the future.

If you have any questions regarding the technologies from Monsanto, please call the Monsanto Customer Relations Center at: 1-800-ROUNDUP.

PLEASE MAIL THE SIGNED 2001 MONSANTO TECHNOLOGY AGREEMENT TO: Monsanto Grower Licensing, P.O. Box 3469, Monticello, MN 55565

*Refer to the applicable section of the Monsanto Technology Use Guide, which is part of this Agreement, for specifics relating to these terms. If you have not received a copy of the Monsanto Technology Use Guide, contact Monsanto at 1-800-768-6387.*

The licensed U.S. patents include: for YieldGard® corn - 5,484,956, 5,500,365, 5,352,605, 5,538,877, 5,538,880, 5,359,142, 5,322,938, 5,424,412, and 5,424,200; for Roundup Ready® corn - 5,554,798, 5,451,513, 5,196,525, 5,424,412 and 5,424,200; for Roundup Ready® corn with YieldGard® - all of the aforementioned; and 5,728,925; for Roundup Ready® soybeans - 4,940,835, 5,188,642, 5,352,605, 5,633,435, 5,530,196, 5,717,084, 5,728,925 and 5,804,425; for Roundup Ready® cotton - 5,004,863, 5,159,135, 5,633,435, 5,352,605, 5,188,642, 4,940,835, 5,717,084, 5,728,925, and 5,804,425; for Boligard® cotton - 5,530,196, 5,008,742, 5,880,275, 5,004,863, 5,159,135, 5,684,640, 5,500,365, 5,424,200, 5,359,142, 5,352,605, 5,530,196 and 5,164,316; for Boligard® with Roundup Ready® cotton - 5,530,196, 5,858,742, 5,880,275, 5,004,863, 5,159,135, 5,684,640, 5,508,365, 5,424,200, 5,359,142, 5,322,938, 5,196,525, 5,188,642, 5,164,316, 4,940,835, 5,717,084, 5,728,925 and 5,804,425; for Roundup Ready® canola - 5,188,642, 5,717,084, 5,728,925, 5,633,435, 4,940,835, 5,188,642, 5,717,084, 5,728,925 and 5,804,425; for Roundup Ready® sugarbeets - 5,378,619, 5,462,175, 5,776,760, 5,627,061, 5,633,435, 5,164,316, 5,196,525, 5,322,938, 5,359,142, 5,424,200, 5,352,605, 5,530,196, 4,940,835, 5,188,642, 5,717,084, 5,728,925 and 5,804,425.

*SERIES READ-UP PESTICIDE LABEL DIRECTIONS. Roundup® brand herbicides will kill crops that do not contain the Roundup Ready® gene.*
*Roundup®, Roundup Ready®, Boligard®, YieldGard®, Roundup Rewards,™ and the Vine Symbol are trademarks of Monsanto Company. ©2000 Monsanto Company. MAG-00-051-2003*