# Exhibit B



# 2020 TECHNOLOGY STEWARDSHIP AGREEMENT
*(Limited Use License)*

**Form Number** 20000001

Please mail this signed 2020 Technology Stewardship Agreement to: DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679
**FOR FASTER AGREEMENT APPROVAL, COMPLETE THE FORM ELECTRONICALLY AT AGCELERATE.COM.**

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Technology Stewardship Agreement (TSA) you must be the operator/grower for all fields that will grow plants from Seed (as defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, and all individuals and entities having an ownership interest in any entities for which you obtain Seed, and that Monsanto Company, a member of the Bayer Group, ("Monsanto") or a court has not barred any of those individuals or entities from obtaining this limited-use license or accessing Seed. Your name must be filled in and must match the signature below. This Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's headquarters in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

**Grower's Full Legal Name** (First/Middle/Last)   Dr.   Mr.   Mrs.   Ms.   Suffix (Sr, Jr, II, III)   **Farm Business Name**

**Grower's Mailing Address**   **Farm Physical Address**

**Grower's City**   **State**   **Zip**   **Farm City**   **State**   **Zip**

**Office Phone** (include area code)   **Fax** (include area code)   **Last Four of Social Security #** X X X - X X -   **Role:**  Operator   Owner/Operator   Farm Manager   Other

**Cell Phone** (include area code)   **Email**

If the above information changes, Grower agrees to promptly update this information via AgCelerate.com or by calling 1-800-768-6387, option 3.

## SEED SUPPLIERS

**Business Name**   **Area Code**   **Phone**

**City**   **State**   **Zip**

**Business Name**   **Area Code**   **Phone**

**City**   **State**   **Zip**

---

This Technology Stewardship Agreement ("Agreement") is entered into between you ("Grower") and Monsanto Company and consists of the terms on this page and on the reverse side of this page and any applicable Riders.

This Agreement grants Grower a limited license to use the following technologies and products in accordance with the terms of this Agreement:

**Canola Products**
Roundup Ready® Spring Canola
Roundup Ready® Winter Canola
TruFlex™ Canola with
  Roundup Ready® Technology
TruFlex™ Canola with
  Roundup Ready® and LibertyLink®
  Technologies*
DEKALB® LibertyLink® Canola*

**Corn Products**
Roundup Ready® Corn 2
DroughtGard® Hybrids with
  Roundup Ready® Corn 2
DroughtGard® Hybrids with
  VT Double PRO® Corn
VT Double PRO® Corn
VT Double PRO® RIB Complete®
  Corn Blend
DroughtGard® Hybrids with VT Double
  PRO® RIB Complete® Corn Blend

VT Triple PRO® Corn
DroughtGard® Hybrids with
  VT Triple PRO® Corn
VT Triple PRO® RIB Complete®
  Corn Blend
DroughtGard® Hybrids with VT Triple
  PRO® RIB Complete® Corn Blend
Trecepta™ Corn
Trecepta™ RIB Complete® Corn Blend
SmartStax® Corn
SmartStax® RIB Complete® Corn Blend
Performance Series® Sweet Corn

**Cotton Products**
Bollgard II® Cotton
Bollgard II® with Roundup Ready®
  Flex Cotton
Roundup Ready® Flex Cotton
Bollgard II® XtendFlex® Cotton
Bollgard® 3 XtendFlex® Cotton
XtendFlex® Cotton

**Soybean Products**
Roundup Ready 2 Xtend® Soybeans
Roundup Ready 2 Yield® Soybeans
Vistive® Gold Soybeans with
  Roundup Ready 2 Yield®
  Technology
XtendFlex® Soybeans**

**Wheat Products**
WestBred® Single Use
  Wheat Varieties

This Agreement also grants Grower a limited license to use Monsanto patented germplasm and Monsanto Plant Variety Protection rights and any future seed technologies developed, licensed or owned by Monsanto that are made available to Grower ("Monsanto Technologies"). Seed containing Monsanto Technologies is referred to herein as "Seed". The licensed U.S. patents, and/or Plant Variety Protection (PVP) certificates and/or WestBred® single use wheat varieties for Monsanto Technologies can be found at the following web page: www.monsantotechnology.com and/or on the product label.

**This Agreement includes an Alfalfa Rider and a Sugarbeet Rider, attached hereto, which is between Grower and Forage Genetics International, LLC ("FGI") and KWS SAAT SE ("KWS"), respectively. The Alfalfa Rider grants Grower a limited license to use Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology. The Sugarbeet Rider grants Grower a limited license to use Roundup Ready® Sugarbeets.**

This Agreement also contains Grower's stewardship responsibilities and requirements associated with the use of Seed and Monsanto Technologies. **In addition, this Agreement provides that any Cotton-related claims by Grower are subject to binding arbitration, as described in Section 4e.**

*For canola products containing the LibertyLink® trait, Grower must hold a valid and current BASF Liberty and Trait Agreement before Grower purchase such products. Product names may change.

**This product has received full approval for planting in the United States and is pending approval for import into certain export markets. Availability is subject to Monsanto's decision to commercialize and the conditions of such commercialization.

### 1. GROWER AGREES:

**a** To acquire Seed only from authorized seed companies in the United States with technology license(s) from Monsanto for the applicable Monsanto Technology(ies) or from a licensed company's dealer authorized to sell such licensed Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of this Agreement, the Technology Use Guide ("TUG") and, if applicable, the appropriate Insect Resistance Management Grower Guide ("IRM Grower Guide"), as each may be unilaterally amended by Monsanto from time to time, which TUG and IRM Grower Guide are incorporated into and are a part of this Agreement, and to read before planting and strictly follow the requirements of the applicable seed bag and/or tag; to implement an Insect Resistance Management ("IRM") program, if applicable; and to cooperate and comply with these and any additional IRM/Integrated Pest Management ("IPM") programs Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Agreement, and Grower may lose its limited use license to use these products if Grower fails to comply with this Agreement, including by failing to follow the IRM program required by this Agreement. Monsanto further advises Grower to follow the recommendations and best management practices provided in the TUG, IRM Grower Guide and seed bag and/or tag label. Grower may obtain additional copies of the TUG or IRM Grower Guide or IPM information by contacting Monsanto at 1-800-768-6387 or by going to tug.bayer.com.

**c** To pay all applicable royalties and technology fees for the use of the Monsanto Technologies and applicable fees due Monsanto that are part of, associated with the Seed purchase price or that are invoiced for the Seed. If Grower fails to pay Monsanto or any wholly owned Monsanto subsidiaries for costs of Seed, Monsanto Technologies, and/or royalties, Grower agrees to pay Monsanto default late fees at the rate of 18% per annum (or the maximum allowed by law, whichever is less) plus reasonable attorneys' fees, court costs and all other costs of collection. Monsanto or any affiliate has the right of set-off.

**d** To use Seed solely for a single planting of a commercial crop in the United States.

**e** Not to transfer any Seed to any other person or entity for planting, and not to export any Seed.

**f** Not to save or clean any crop produced from Seed for planting, and not to supply Seed produced from Seed to anyone for planting. Except to the extent specifically permitted by a valid TSA, the planting of any crop or Seed produced from Seed shall constitute infringement of Monsanto's U.S. patents.

**g** Not to plant and/or clean Seed for seed production unless, and only if, Grower has entered into a valid, written Seed production agreement with a seed company that is licensed by Monsanto to produce Seed (a "Licensee"), which agreement requires Grower to either physically deliver to the Licensee, sell for non-seed purposes or use for non-seed purposes all of the Seed produced; and not to purchase or otherwise obtain from the Licensee any of the Seed produced unless, after physical delivery by Grower to the Licensee, that Seed has been conditioned, packaged and delivered by the Licensee to Grower in the same manner as Seed sold by the Licensee to growers who have not entered into a Seed production agreement.

**h** Not to plant any Seed, or any Seed produced from Seed, for crop breeding, research, molecular analysis or generation of herbicide or other registration data. Grower may not conduct research on Grower's crop produced from Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. Monsanto makes available separate license agreements to academic institutions for research.

**i** To use on crops containing Monsanto Technology only pesticides labeled for such use and follow current label directions. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY COMPANIES OTHER THAN MONSANTO, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROP(S) CONTAINING MONSANTO TECHNOLOGY. MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING MONSANTO TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO MONSANTO TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES OTHER THAN MONSANTO.

**j** To accept and continue the obligations of this Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to timely notify in writing purchasers or lessees of land owned by Grower that has been planted on it that the Monsanto Technology is subject to this Agreement and they must have or obtain their own Technology Stewardship Agreement to harvest or use, transfer or sell the harvested crop.

*[The Agreement continues on the reverse side of this page.]*


**GROWER SIGNATURE AND DATE REQUIRED**

Name _____   Date _____

*Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower*

**k** To keep and provide Monsanto and its representatives following Monsanto's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

1. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Agreement, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and grower/dealer/retailer/applicator records for seed and chemical purchases and applications and all documentation required on the chemistry product label or by government regulation; and

2. the identity of, and access to, land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**l** To allow Monsanto to obtain Grower's internet service provider records to validate Grower's electronic signature, if applicable.

**m** To promptly notify Monsanto should any Grower Information provided to Monsanto herein change.

**n** To direct crops or material produced from Seed only to appropriate grain handlers and/or markets to prevent movement to markets where the grain has not yet received regulatory approval for import and to notify such grain handlers that its crop has not yet received that approval. Grower acknowledges that any crop or material produced from Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted, and Grower purchases the Seed with that knowledge.

## 2. GROWER RECEIVES:

**a** A limited use license to purchase and to plant Seed pursuant to the terms of this Agreement in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate, dicamba or glufosinate herbicides over the top of crops as applicable, unless otherwise restricted by law. Monsanto (or the respective licensor) retains ownership of the Monsanto Technologies owned by it, including the gene technologies and varieties. These licenses do not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents (other than the Dow AgroSciences Patent Rights), to use Monsanto Technologies subject to the conditions listed in this Agreement and with respect to alfalfa and/or sugarbeet Seed, the conditions listed in the Alfalfa Rider and/or Sugarbeet Rider. Dow AgroSciences LLC and Agrigenetics, Inc. (collectively "Dow AgroSciences") licenses Grower under its applicable U.S. patents (the "Dow AgroSciences Patent Rights") to use Dow AgroSciences' Event TC1507 and Event DAS 59122-7 to the extent either is present in any SmartStax® Seed obtained by Grower pursuant to this Agreement, with Monsanto being authorized to act on Dow AgroSciences' behalf for this Agreement, subject to the conditions listed in this Agreement.

**c** A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop labeled for use on those crops to control volunteer corn with Roundup Ready® 2 Technology in Grower's crops for the 2020 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix for use on glyphosate-tolerant soybean, cotton, or canola crops.

## 3. GENERAL TERMS:

**a Term:** This Agreement will remain in effect until either Grower or Monsanto chooses to terminate the Agreement, as provided below.

**b Modification:** Monsanto may unilaterally revise the terms and conditions of this Agreement, including the TUG, IRM Grower Guide, or seed bag, label and/or tag incorporated herein, from time to time. Grower shall verify the currently effective terms of this Agreement at least annually before February 1 at agcelerate.com. Monsanto will notify Grower of any amended terms. If Grower has provided Monsanto an e-mail address in conjunction with this Agreement, Monsanto may send Agreement amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of Monsanto Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Agreement.

**c Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of Monsanto. If Grower's rights or obligations are transferred without Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights or obligations. Monsanto may transfer its rights or obligations to any of its corporate affiliates without the consent of Grower.

**d Binding Effect:** If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e Termination:** Grower may terminate this Agreement effective immediately by delivering written notice to Monsanto. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. Monsanto may terminate this Agreement for any reason, in whole or in part, by delivering written notice to Grower.

Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Seed for a single commercial crop) as to Seed previously purchased or used by Grower.

If Grower breaches the terms of this Agreement, Monsanto may terminate effective immediately Grower's rights under this Agreement. Grower will not be entitled to obtain a future limited-use license from Monsanto unless Monsanto provides Grower with specific written notice expressly recognizing the breach and termination of this Agreement and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Technology Stewardship Agreement and Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Agreement and/or to have infringed one or more of the U.S. patents or PVPs, Grower agrees that, among other things, Monsanto and Dow AgroSciences, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle Monsanto and Dow AgroSciences, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. The parties agree that patent infringement damages are difficult to calculate, and agree that for cotton and soybean Seed that has been saved and planted, patent damages shall be reasonable royalties in the amount of $250 per infringing unit of soybean Seed, $1,000 per infringing unit of herbicide tolerant cotton Seed and $2,000 per infringing unit of insect protected/herbicide tolerant cotton Seed. The parties agree that the royalty damage may, like other terms of this license, be modified (increased) in subsequent updates. Patent infringement damages for other infringing activities (including but not limited to patent infringement pertaining to Seed other than cotton or soybean Seed) may be separately calculated.

**f Attorneys' Fees:** If Grower is found by any court to have infringed one or more of the U.S. patents or PVPs covering Monsanto Technologies or otherwise to have breached this Agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) and Dow AgroSciences, as appropriate, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.

**g Governing Law:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**h Waiver:** The failure of Monsanto or any owners of patents or PVPs to exercise one or more of its rights under this Agreement on one or more occasions shall not be deemed a waiver on the part of Monsanto or such patent or PVP owner to exercise such right(s) on any subsequent occasion.

**i Entire Agreement:** This Agreement, along with provisions in the TUG, IRM Grower Guide, and/or on the seed bag and/or tag, all of which are hereby expressly incorporated into this Agreement, encompasses the entire agreement of the parties, and supersedes all previous understandings and agreements between the parties, whether oral or written. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by Monsanto.

**j Privacy:** Monsanto and its affiliates may collect, use and disclose personal information, including the Grower Information provided on Page 1 and any information related to the performance of this Agreement, such as information about the use of Monsanto products and services, preferences and feedback, and any communications with Monsanto, to assist Monsanto in establishing and maintaining a business relationship with Grower, including, for example, to: (i) better understand Grower's needs and preferences; (ii) enable Monsanto to operate and manage its businesses and operations (including research and development of new and existing products and services and offering incentives to retailers to make products and services available); and (iii) periodically send marketing materials, news/updates, and other information about certain products, services, events, and other matters that may be of interest to you. For more information about how Monsanto handles personal information, please read Monsanto's Privacy Statement, which may be updated from time to time in accordance with its terms, at https://www.cropscience.bayer.us/privacy-statement.

## 4. GROWER CLAIMS AND REMEDIES:

**a Notice requirement:** As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed regarding performance or non-performance of Monsanto Technologies or Seed, Grower must provide a written, prompt, and timely notice to Monsanto (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b Limited Warranty and Disclaimer of Warranties:** Monsanto warrants the Monsanto Technologies licensed hereunder only to the extent specifically set forth on the seed bag and/or tag, and warrants that the Monsanto Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED, INCLUDING ANY WARRANTY OF THE NON-INFRINGEMENT OF THIRD PARTY PATENTS AND IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN MONSANTO OR PARTIES AUTHORIZED BY MONSANTO.

**c Grower's Exclusive Limited Remedy:** THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**d Forum Selection for Non-Cotton-Related Claims Made by Grower and All Other Claims:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI (ANY LAWSUIT MUST BE FILED, IF IN FEDERAL COURT, IN ST. LOUIS, MO, OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO), FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI. THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON-RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES. THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS MONSANTO AND ANY CURRENT OR FUTURE U.S.-BASED WHOLLY-OWNED SUBSIDIARIES OR AFFILIATES OF MONSANTO.

**e Binding Arbitration for Cotton-Related Claims Made By Grower:** Any claim, action or dispute made or asserted by a Grower (or any other person or entity claiming an interest in Grower's cotton crop, hereafter "Grower") against Monsanto, or any person or entity involved in the production, development, distribution, and/or sale of the Seed containing any Monsanto Technology ("seller"), arising out of and/or in connection with this Agreement or the sale or performance of cotton Seed containing Monsanto Technology must be resolved by binding arbitration. The foregoing requirement to arbitrate specifically excludes any claim, action or dispute involving the infringement, validity, or enforceability of a patent or that otherwise arises under the U.S. patent laws. As a condition precedent to asserting any claim, action, or dispute regarding the quality of Monsanto cotton Seed or the agronomic performance of any Monsanto Technology in cotton Seed, Grower must provide notice to Monsanto pursuant to Section 4a of this Agreement. In the event that a claim is not resolved within 30 days after notice is supplied, any party may initiate arbitration. The parties acknowledge that this transaction involves interstate commerce, and agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq., and administered under the Administered Arbitration Rules established by the International Institute for Conflict Prevention and Resolution, Inc. ("CPR"). GROWER MAY ONLY BRING A CLAIM IN ARBITRATION IN GROWER'S INDIVIDUAL CAPACITY AND GROWER WAIVES ANY RIGHT TO DO SO AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OR PUTATIVE CLASS. The arbitration hearing shall be conducted in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. Grower and Monsanto/sellers shall each pay one half of the CPR filing fee and one half of CPR's administrative and arbitrator fees and expenses as they are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all CPR fees in the final award. The arbitration proceedings and results shall remain confidential and shall not be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award or as otherwise required by law.

The 2020 Technology Use Guide (TUG) is available at tug.bayer.com.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding Monsanto Technologies or this license, please call 1-800-768-6387.

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. It is a violation of federal and state law to use any pesticide product other than in accordance with its labeling. NOT ALL formulations of dicamba or glyphosate are approved for in-crop use with Roundup Ready 2 Xtend® soybeans. ONLY USE FORMULATIONS THAT ARE SPECIFICALLY LABELED FOR SUCH USES AND APPROVED FOR SUCH USE IN THE STATE OF APPLICATION. Contact the U.S. EPA and your state pesticide regulatory agency with any questions about the approval status of dicamba herbicide products for in-crop use with Roundup Ready 2 Xtend® soybeans or cotton with XtendFlex® Technology.

Commercialization of XtendFlex® soybeans is dependent on multiple factors, including successful conclusion of the regulatory process. The information presented herein is provided for educational purposes only, and is not and shall not be construed as an offer to sell. Soybeans with XtendFlex® Technology contain genes that confer tolerance to glyphosate, glufosinate and dicamba. Glyphosate will kill crops that are not tolerant to glyphosate. Dicamba will kill crops that are not tolerant to dicamba. Glufosinate will kill crops that are not tolerant to glufosinate. Contact your seed brand dealer or refer to the Technology Use Guide for recommended weed control programs.

Roundup Ready® 2 Technology contains genes that confer tolerance to glyphosate. Roundup Ready 2 Xtend® soybeans contain genes that confer tolerance to glyphosate and dicamba. Cotton with XtendFlex® Technology contains genes that confer tolerance to glyphosate, glufosinate and dicamba. Glyphosate will kill crops that are not tolerant to glyphosate. Dicamba will kill crops that are not tolerant to dicamba. Glufosinate will kill crops that are not tolerant to glufosinate. Contact your seed brand dealer or refer to the Technology Use Guide for recommended weed control programs.

Insect control technology provided by Vip3A is utilized under license from Syngenta Crop Protection AG. Herculex® is a registered trademark of Dow AgroSciences LLC. Agrisure Viptera® is a registered trademark of a Syngenta group company. LibertyLink® and LibertyLink® and the Water Droplet Design® are trademarks of BASF Corporation. Respect the Refuge and Corn Design® and Respect the Refuge® are registered trademarks of National Corn Growers Association. Bayer, the Bayer Cross, Bollgard II®, Bollgard®, DEKALB®, DroughtGard®, Performance Series®, Respect the Refuge and Cotton Design®, RIB Complete®, Roundup PowerMAX®, Roundup Ready 2 Xtend®, Roundup Ready 2 Yield®, Roundup Ready®, SmartStax®, Trecepta® TruFlex™, VT Double PRO®, VT Triple PRO®, WestBred®, XtendFlex® and XtendFlex® are trademarks of Bayer Group. ©2019 Bayer Group. All rights reserved. [19-00804pgd] 5A4N199344

Distribution: White to Monsanto, Yellow to Dealer, Pink to Grower

# 2020 ALFALFA RIDER
## TERMS AND CONDITIONS

The following terms and conditions of the Alfalfa Rider (the "Rider") supplement the Technology Stewardship Agreement ("TSA" or the "Agreement"), are enforceable under that Agreement as well as independently and separately enforceable from the Agreement, and are applicable to Grower's purchase or use of Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology. This Rider is entered into between Grower and Forage Genetics International, LLC ("FGI") and consists of the terms and conditions set forth below. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.

This Rider grants Grower a limited license to use the following technologies in accordance with the terms of this Rider: Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology, patented alfalfa germplasm and Plant Variety Protection rights owned or exclusively licensed to FGI and any future seed technologies developed, licensed or owned by FGI that are made available to Grower ("FGI Technologies"), with Monsanto Company, a member of the Bayer Group ("Monsanto"), authorized to act on FGI's behalf. Seed containing FGI Technologies is collectively referred to herein as "Alfalfa Seed". The licensed U.S. patents and/or PVP certificates for FGI Technologies can be found at the following web page: monsantotechnology.com and/or on the product label.

This Rider also contains Grower's stewardship responsibilities and requirements associated with the use of Alfalfa Seed and FGI Technologies.

### 1. GROWER AGREES:

**a** To acquire Alfalfa Seed only from authorized seed companies in the United States with technology license(s) from FGI for the applicable FGI Technology(ies) or from a licensed company's dealer authorized to sell such licensed Alfalfa Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of the Technology Use Guide ("TUG") and, if applicable, the appropriate Insect Resistance Management Grower Guide ("IRM Grower Guide") and seed bag tag, as each may be amended from time to time, which TUG, IRM Grower Guide and seed bag tag are incorporated into and are a part of this Rider; to implement an Insect Resistance Management ("IRM") program, if applicable; and to cooperate and comply with these and any additional IRM/Integrated Pest Management ("IPM") programs FGI or Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Rider, and Grower may lose its limited use license to use these products if Grower fails to follow the IRM program required by this Rider. FGI further advises Grower to follow the recommendations provided in the TUG, IRM Grower Guide and seed bag tag. Grower may obtain additional copies of the TUG or IRM Grower Guide or IPM information by contacting Monsanto at 1-800-768-6387 or by going to tug.bayer.com.

**c** To pay all applicable royalties and technology fees for the use of the FGI Technologies or the Alfalfa Seed, as well as applicable fees due FGI that are part of, associated with, or invoiced as part of the Alfalfa Seed purchase price. If Grower fails to pay FGI or any wholly owned FGI subsidiaries, for costs of Alfalfa Seed, FGI Technologies, and/or royalties, Grower agrees to pay FGI default late fees at the rate of 18% per annum (or the maximum allowed by law, whichever is less) plus reasonable attorneys' fees, court costs and all other costs of collection. FGI or any affiliate has the right of set-off.

**d** To use Alfalfa Seed solely for a commercial crop in the United States as provided below. Grower may use a single planting of Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology for multiple cuttings.

**e** Only to plant HarvXtra® Alfalfa with Roundup Ready® Technology in the United States, with the following states subject to execution of an additional FGI Seed and Feed Use Agreement: Arizona, California, Colorado, Idaho, Montana, Nevada, New Mexico, Oregon, Utah, Washington and Wyoming (collectively the "Western States").

**f** That all planting of HarvXtra® Alfalfa with Roundup Ready® Technology in the Western States is permissible only upon separate execution by the Grower of a HarvXtra® Alfalfa with Roundup Ready® Technology Seed and Feed Use Agreement ("FGI Seed and Feed Use Agreement") that includes provisions limiting HarvXtra® Alfalfa with Roundup Ready® Technology seed and crops or hay products produced from HarvXtra® Alfalfa with Roundup Ready® Technology to only United States domestic use.

**g** All terms of the FGI Seed and Feed Use Agreement are incorporated into and made enforceable under this Rider.

**h** Not to transfer any Alfalfa Seed to any other person or entity for planting, and not to export any Alfalfa Seed.

**i** Not to save or clean any crop produced from Alfalfa Seed for planting, and not to supply seed produced from Alfalfa Seed to anyone for planting. Except to the extent specifically permitted by a valid TSA, the planting of any crop or Seed produced from Seed shall constitute infringement of FGI's and/or Monsanto's U.S. patents.

**j** Not to plant and/or clean Alfalfa Seed for seed production unless, and only if, Grower has entered into a valid, written Alfalfa Seed production agreement with a seed company that is licensed by FGI to produce Alfalfa Seed (a "Licensee"), which agreement requires Grower to either physically deliver to the Licensee, sell for non-seed purposes or use for non-seed purposes all of the Seed produced; and not to purchase or otherwise obtain from the Licensee any of the Seed produced unless, after physical delivery by Grower to the Licensee, that Seed has been conditioned, packaged and delivered by the Licensee to Grower in the same manner as Seed sold by the Licensee to growers who have not entered into a Seed production agreement.

**k** Not to plant any Alfalfa Seed, or any seed produced from Alfalfa Seed, for crop breeding, research, molecular analysis or generation of herbicide or other registration data. Grower may not conduct research on Grower's crop produced from Alfalfa Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use. FGI makes available separate license agreements to academic institutions for research.

**l** To use on crops containing FGI Technology only pesticides labeled for such use and follow current label directions. FGI DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROPS CONTAINING FGI TECHNOLOGY. FGI SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING FGI TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO FGI TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**m** To accept and continue the obligations of this Rider on any new land purchased or leased by Grower that has Alfalfa Seed planted on it by a previous owner or possessor of the land; and to timely notify in writing purchasers or lessees of land owned by Grower that has Alfalfa Seed planted on it that the FGI Technology is subject to this Rider and they must have or obtain their own Technology Stewardship Agreement, Rider and FGI Seed and Feed Use Agreement, if applicable.

**n** To keep and provide to FGI and its representatives following FGI's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

1. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Rider, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, grower/dealer/retailer/applicator records for seed and chemical purchases, and applications and all documentation required on the chemistry product label or by government regulation; and

2. the identity of, and access to, land farmed by or at the direction of Grower (including refuge areas) and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**o** To allow FGI to obtain Grower's internet service provider ("ISP") records to validate Grower's electronic signature, if applicable.

**p** To promptly notify FGI or Monsanto should any Grower Information provided herein change.

**q** To direct any crops or hay products produced from HarvXtra® Alfalfa with Roundup Ready® Technology only to United States domestic use, except where FGI expressly grants permission in writing. Grower further agrees that it will only sell or convey such crops or hay products to persons or entities that agree they will not ship such crops or hay products outside the United States, except where FGI expressly grants permission in writing.

**r** Grower acknowledges that any crop or hay product produced from Alfalfa Seed can only be exported to, or used, processed or sold in countries where all necessary regulatory approvals have been granted, and Grower purchases the Alfalfa Seed with that knowledge.

**s** Until FGI expressly grants permission in writing (which will be withheld pending necessary import approvals), not to export, or to sell or convey to any person or entity that intends to export, Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology seed or crops or hay products produced from such seed to export countries where all necessary regulatory approvals have not been granted. In addition, due to the unique cropping practices Grower agrees not to plant Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology in Imperial County, California, pending import approvals and until FGI grants express permission in writing for such planting. Roundup Ready® Alfalfa and HarvXtra® Alfalfa with Roundup Ready® Technology seed may not be planted for the production of sprouts.

### 2. GROWER RECEIVES FROM FGI:

**a** A limited use license to purchase and to plant Alfalfa Seed pursuant to the terms of this Rider in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate herbicides over the top of crops as applicable, unless otherwise restricted by law. FGI (or the respective licensor) retains ownership of the FGI Technologies owned by it, including the gene technologies and varieties. These licenses do not authorize Grower to plant Alfalfa Seed in the United States that has been purchased in another country or plant Alfalfa Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents, to use FGI Technologies subject to the conditions listed in this Rider.

**c** A limited use license to prepare and apply on glyphosate-tolerant alfalfa (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop labeled for use on those crops to control volunteer corn with Roundup Ready® 2 Technology in Grower's crops for the 2020 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix for use on glyphosate-tolerant alfalfa.

### 3. GENERAL TERMS:

**a Term:** This Rider will remain in effect until either Grower or FGI chooses to terminate the Rider, as provided below.

**b Modification:** FGI or Monsanto may unilaterally revise the terms and conditions of this Rider, including the Agreement and TUG incorporated herein, from time to time. Grower shall verify the currently effective terms of this Rider at least annually before February 1 at agcelerate.com. FGI or Monsanto will notify Grower of any amended terms. If Grower has provided FGI or Monsanto an e-mail address in conjunction with the Agreement or this Rider, FGI or Monsanto may send Rider amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of FGI Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Rider.

**c Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of FGI. If Grower's rights or obligations are transferred with FGI's consent or by operation of law, this Rider is binding on the person or entity receiving the transferred rights or obligations.

**d Binding Effect:** If any provision of this Rider is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e Termination:** Grower may terminate this Rider effective immediately by delivering written notice to FGI. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. FGI may terminate this Rider for any reason, in whole or in part, by delivering written notice to Grower. Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Alfalfa Seed for a single commercial crop) as to Alfalfa Seed previously purchased or used by Grower. If Grower breaches the terms of this Rider, FGI may terminate effective immediately Grower's rights under this Rider. Grower will not be entitled to obtain a future limited-use license from FGI unless FGI provides Grower with specific written notice expressly recognizing the breach and termination of this Rider and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Technology Stewardship Agreement or Rider and FGI's or Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Rider and/or to have infringed one or more of the U.S. patents or PVPs covering Monsanto Technologies or FGI Technologies, Grower agrees that, among other things, FGI, and Monsanto, as appropriate, shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Alfalfa Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle FGI, and Monsanto, as appropriate, to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f Attorneys' Fees:** If Grower is found by any court to have infringed one or more of the U.S. patents or PVPs covering Monsanto Technologies or FGI Technologies, or otherwise has breached any term of this Rider, Grower agrees to pay FGI and Monsanto, as appropriate, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.

**g Governing Law:** This Rider and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules).

**h Waiver:** The failure of FGI or Monsanto or any owners of patents or PVPs to exercise one or more of its rights under this Agreement on one or more occasions shall not be deemed a waiver on the part of FGI or Monsanto or such patent owner to exercise such right(s) on any subsequent occasion.

**i Entire Agreement:** This Agreement and Rider, along with provisions in the TUG and/or on bag tags and the terms of the FGI Seed and Feed Use Agreement, if applicable, all of which are hereby expressly incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Alfalfa Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by FGI or Monsanto.

### 4. GROWER CLAIMS AND REMEDIES:

**a Notice requirement:** As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against FGI and/or any seller of Alfalfa Seed regarding performance or non-performance of FGI Technologies or Alfalfa Seed, Grower must provide a written, prompt, and timely notice to FGI (regarding performance or non-performance of the FGI Technologies) and to the seller of any Alfalfa Seed (regarding performance or non-performance of the Alfalfa Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the FGI Technology and/or the Alfalfa Seed. The notice shall include a statement setting forth the nature of the claim, name of the FGI Technology, and Alfalfa Seed products. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b Limited Warranty and Disclaimer of Warranties:** FGI warrants the FGI Technology licensed hereunder as set forth on the seed bag and/or tag to the extent specifically warranted thereon, or, to the extent specifically warranted therein, that the FGI Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Alfalfa or HarvXtra® Alfalfa with Roundup Ready® Technology contained in planting Alfalfa Seed that has been purchased from FGI and seed companies licensed by FGI or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, FGI MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN FGI.

**c Grower's Exclusive Limited Remedy:** THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF FGI OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF ALFALFA SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE ALFALFA SEED INVOLVED OR, AT THE ELECTION OF FGI OR THE SEED SELLER, THE REPLACEMENT OF THE ALFALFA SEED. IN NO EVENT SHALL FGI OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

**d Forum Selection for Claims Made by Grower and All Other Claims:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI (ANY LAWSUIT MUST BE FILED, IF IN FEDERAL COURT, IN ST. LOUIS, MO, OR, IF IN STATE COURT, IN ST. LOUIS COUNTY, MO), FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND/OR THE USE OF THE ALFALFA SEED OR THE FGI TECHNOLOGIES. THE PARTIES WAIVE ANY OBJECTION TO VENUE IN THE EASTERN DIVISION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, INCLUDING THOSE BASED, IN WHOLE OR IN PART, ON THE DIVISIONAL VENUE LOCAL RULE(S) OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI. THE PARTIES SPECIFICALLY AGREE THAT THIS SECTION COVERS FGI, ITS CURRENT OR FUTURE AFFILIATES AND ANY CURRENT OR FUTURE U.S.-BASED WHOLLY-OWNED SUBSIDIARIES OF FGI.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the FGI Technologies or this license, please call 1-800-768-6387.

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Roundup Ready® crops contain genes that confer tolerance to glyphosate. Glyphosate herbicides will kill crops not tolerant to glyphosate. Roundup Ready® is a registered trademark of Bayer Group. HarvXtra® is a registered trademark of Forage Genetics International, LLC. All other trademarks are the property of their respective owners. ©2019 Bayer Group 5A4N199344

# 2020 SUGARBEET RIDER

## TERMS AND CONDITIONS

The following terms and conditions of the Sugarbeet Rider (the "Rider") supplement the Technology Stewardship Agreement ("TSA" or the "Agreement"), are enforceable under that Agreement as well as independently and separately enforceable from the Agreement, and are applicable to Grower's purchase or use of Roundup Ready® Sugarbeets. This Rider is entered into between Grower and KWS SAAT SE ("KWS") and consists of the terms and conditions set forth below. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement.

This Rider grants Grower a limited license to use Roundup Ready® Sugarbeets in accordance with the terms of this Rider ("KWS Technologies"), with respect to which KWS has authorized Monsanto Company, a member of the Bayer Group ("Monsanto"), to act on KWS's behalf in accordance with the parties' commercial services agreement, that are made available to Grower. Seed containing KWS Technologies is collectively referred to herein as "Sugarbeet Seed". The licensed U.S. patents for KWS Technologies can be found at the following web page: monsantotechnology.com and/or on the product label.

This Rider also contains Grower's stewardship responsibilities and requirements associated with the use of Sugarbeet Seed and KWS Technologies.

### 1. GROWER AGREES:

**a** To acquire Sugarbeet Seed only from authorized seed companies in the United States with technology license(s) from KWS for the applicable KWS Technology(ies) or from a licensed company's representative authorized to sell such licensed Sugarbeet Seed in the United States.

**b** To obtain and read before planting and strictly follow the applicable requirements of the Technology Use Guide ("TUG") and seed package label, as each may be amended from time to time, which TUG and seed package label are incorporated into and are a part of this Rider; and to cooperate and comply with these and any additional stewardship programs KWS or Monsanto communicates or makes available to Grower. Further, Grower acknowledges that compliance with the foregoing stewardship requirements is a fundamental term of this Rider, and Grower may lose its limited use license to use these products if Grower fails to follow the stewardship guidelines required by this Rider. KWS further advises Grower to follow the recommendations provided in the TUG and seed package label. Grower may obtain additional copies of the TUG by contacting Monsanto at 1-800-768-6387 or by going to tug.bayer.com.

**c** To use Sugarbeet Seed solely for a commercial crop in the United States as provided below. Grower may use a single planting of Roundup Ready® Sugarbeets to be processed for sugar, for energy production, or for animal feed.

**d** Not to transfer any Sugarbeet Seed to any other person or entity for planting, and not to export any Sugarbeet Seed.

**e** Not to plant any Sugarbeet Seed, or any seed produced from Sugarbeet Seed, for crop breeding, research, molecular analysis, generation of herbicide, or other registration data. Grower may not conduct research on Grower's crop produced from Sugarbeet Seed other than to make agronomic comparisons and conduct yield testing for Grower's own use.

**f** To use on crops containing KWS Technology only pesticides labeled for such use and follow current label directions. KWS DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, INCLUDING BUT NOT LIMITED TO THOSE THAT ARE LABELED FOR USE IN CROPS CONTAINING KWS TECHNOLOGY. KWS SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN CROP(S) CONTAINING KWS TECHNOLOGY. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES, OR THE IMPACT TO KWS TECHNOLOGY FROM THE USE OF SUCH PRODUCTS, SHOULD BE DIRECTED TO THOSE COMPANIES.

**g** To keep and provide to KWS and its representatives following KWS's actual (or attempted) oral communication, and no later than seven (7) days after the date of its written or electronic request:

1. copies of all records, receipts, or other documents that could be relevant to Grower's performance of this Rider, including but not limited to, Summary Acreage History Report, Producer Farm Data Report, Form 578 (producer print), Farm and Tract Detail Listing and corresponding aerial photographs, Risk Management Agency claim documentation, and grower/dealer/retailer/applicator records for seed and chemical purchases and applications and all documentation required on the chemistry product label or by government regulation; and

2. the identity of, and access to, land farmed by or at the direction of Grower and bins, wagons, or seed storage containers used or under the control or direction of Grower, for purposes of examining and taking samples of crops, crop residue or seeds located therein.

**h** To promptly notify KWS and Monsanto should any Grower Information provided herein change.

### 2. GROWER RECEIVES FROM KWS:

**a** A limited use license to purchase and to plant Sugarbeet Seed pursuant to the terms of this Rider in the United States of America, comprised of the 50 states and the District of Columbia, except in any state or county where the products do not have all the necessary approvals and to apply labeled glyphosate herbicides over the top of crops as applicable, unless otherwise restricted by law. KWS (or the respective licensor) retains ownership of the KWS Technologies owned by it, including the gene technologies. These licenses do not authorize Grower to plant Sugarbeet Seed in the United States that has been purchased in another country or plant Sugarbeet Seed in another country that has been purchased in the United States.

**b** A limited use license under applicable U.S. patents, to use KWS Technologies subject to the conditions listed in this Rider.

### 3. GENERAL TERMS:

**a Term:** This Rider will remain in effect until either Grower or KWS chooses to terminate the Rider, as provided below.

**b Modification:** KWS may unilaterally revise the terms and conditions of this Rider, including the Agreement and TUG incorporated herein, from time to time. Grower shall verify the currently effective terms of this Rider at least annually before February 1 at agcelerate.com. KWS or Monsanto will notify Grower of any amended terms. If Grower has provided KWS or Monsanto an e-mail address in conjunction with the Agreement or this Rider, KWS or Monsanto may send Rider amendments and new stewardship information to Grower by e-mail or mail. Grower's continued use of KWS Technologies after receipt of any amended terms and/or the posting of amended terms at agcelerate.com constitutes Grower's agreement to be bound by the amended terms of this Rider.

**c Transferability:** Grower may not transfer its rights or obligations to anyone else without the written consent of KWS. If Grower's rights or obligations are transferred with KWS's consent or by operation of law, this Rider is binding on the person or entity receiving the transferred rights or obligations.

**d Binding Effect:** If any provision of this Rider is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**e Termination:** Grower may terminate this Rider effective immediately by delivering written notice to KWS. Grower must deliver the notice of termination to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679. KWS may terminate this Rider for any reason, in whole or in part, by delivering written notice to Grower. Upon termination, Grower's responsibilities and the other terms herein shall survive (such as but not limited to Grower's obligation to use Sugarbeet Seed for a single commercial crop) as to Sugarbeet Seed previously purchased or used by Grower. If Grower breaches the terms of this Rider, KWS may terminate effective immediately Grower's rights under this Rider. Grower will not be entitled to obtain a future limited-use license from KWS unless KWS provides Grower with specific written notice expressly recognizing the breach and termination of this Rider and granting a new limited-use license. Grower expressly acknowledges that Grower's submission of a new Technology Stewardship Agreement or Rider and KWS's or Monsanto's issuance of a new license number shall not satisfy the specific written notice reference above and that any such action shall have no legal effect. If Grower is found by any court to have breached any term of this Rider and/or to have infringed one or more of the Sugarbeet Patent Rights, Grower agrees that, among other things, KWS shall be entitled to preliminary and permanent injunctions enjoining Grower and any individual and/or entity acting on Grower's behalf or in concert therewith from making, using, selling, or offering Sugarbeet Seed for sale. Additionally, Grower agrees that any such finding of infringement by Grower shall entitle KWS to patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et. seq. Grower will also be liable for all breach of contract damages.

**f Attorneys' Fees:** If Grower is found by any court to have infringed one or more of the Sugarbeet Patent Rights or otherwise to have breached any term of this Rider, Grower agrees to pay KWS, their attorneys' fees and costs related to the case plus any other expenses incurred in the investigation of the breach and/or infringement.

**g Governing Law and Forum:** This Rider and the parties' relationship shall be governed by the laws of the State of Minnesota and the United States (without regard to the choice of law rules). Any dispute arising out of or relating to this Rider, the parties' relationship, KWS technologies, or the Sugarbeet Seed shall be commenced and maintained exclusively in the state or federal courts of Minnesota. Grower waives any objection to venue or inconvenience of forum and voluntarily submits to the jurisdiction of these courts.

**h Waiver:** The failure of KWS or any owners of patents to exercise one or more of its rights under this Rider on one or more occasions shall not be deemed a waiver on the part of KWS or such patent owner to exercise such right(s) on any subsequent occasion.

**i Entire Agreement:** This Agreement and Rider, along with provisions in the TUG and/or on package labels, all of which are hereby expressly incorporated herein, encompass the entire agreement of the parties, and supersede all previous understandings and agreements between the parties, whether oral or written. Grower hereby acknowledges and represents that Grower has not relied on any representation, assertion, guarantee, warranty, collateral contract or other assurance, except those set out in this Agreement and Rider, made by or on behalf of any other party or any other person or entity whatsoever, prior to Grower's signing of this Agreement and Rider or purchasing Sugarbeet Seed pursuant to the license granted hereunder. Grower also agrees that such provisions (the terms, warranties, and disclaimers and limitations as to warranties, damages, and remedies) are terms and conditions of sale and cannot be modified or amended at any time except in writing signed by KWS or Monsanto.

### 4. GROWER CLAIMS AND REMEDIES:

**a Notice requirement:** As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against KWS and/or any seller of Sugarbeet Seed regarding performance or non-performance of KWS Technologies or Sugarbeet Seed, Grower must provide a written, prompt, and timely notice to KWS (regarding performance or non-performance of the KWS Technologies) and to the seller of any Sugarbeet Seed (regarding performance or non-performance of the Sugarbeet Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after Grower first observes the issue(s) regarding performance or non-performance of the KWS Technology and/or the Sugarbeet Seed. The notice shall include a statement setting forth the nature of the claim, name of the KWS Technology, and Sugarbeet Seed product. Grower must deliver the notice to DRC Data Services, Attn: AgCelerate Agreements, PO Box 221679, Charlotte, NC 28222-1679.

**b Limited Warranty and Disclaimer of Warranties:** KWS warrants the KWS Technology licensed hereunder only as specifically set forth on the seed container and/or package label and warrants that the KWS Technologies licensed hereunder will perform only as specifically set forth in the TUG when used in accordance with directions. This warranty applies only to Roundup Ready® Sugarbeets contained in planting Sugarbeet Seed that has been purchased from KWS and seed companies licensed by KWS or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, KWS MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF THIRD PARTY PATENTS. THIS WARRANTY IS VOID IF THE SEED IS REPACKAGED BY ANY PARTY OTHER THAN KWS.

**c Grower's Exclusive Limited Remedy:** THE EXCLUSIVE REMEDY OF GROWER AND THE LIMIT OF THE LIABILITY OF KWS OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SUGARBEET SEED (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY GROWER FOR THE QUANTITY OF THE SUGARBEET SEED INVOLVED OR, AT THE ELECTION OF KWS OR THE SEED SELLER, THE REPLACEMENT OF THE SUGARBEET SEED. IN NO EVENT SHALL KWS OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the KWS Technologies or this license, please call 1-800-768-6387.

**ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS.** Roundup Ready® crops contain genes that confer tolerance to glyphosate. Glyphosate herbicides will kill crops that are not tolerant to glyphosate.
Roundup Ready® is a registered trademark of Bayer Group. All other trademarks are the property of their respective owners. ©2019 Bayer Group 5A4N199344